THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| ALLAN L. REAGAN | § | CASE NO. 20-11161-TMD |
| | § | |
| DEBTOR. | § | CHAPTER 11 |

**LIMITED OBJECTIONS TO PLAN OF REORGANIZATION FOR SMALL BUSINESS UNDER CHAPTER 11**

TO THE HONORABLE TONY M. DAVIS,
UNITED STATES BANKRUPTCY JUDGE:

Now comes Michael G. Colvard, Sub Chapter V Trustee (herein "Trustee") within the Allan L. Reagan (herein "Reagans" or "Debtor") Small Business Chapter 11 case, to file this a Limited Objection (the "Objection") to the Small Business Chapter 11 Plan of Reorganization (the "Plan") , and would show unto the court as follows:

I. **BACKGROUND**

1.1    Reagan filed a Chapter 11 small business case on October 22, 2020 [Dkt. No. 1]. Trustee was appointed on October 27, 2020 [Dkt. No. 8].

1.2    Reagan filed its Plan of Reorganization for Small Business Under Chapter 11 on January 20, 2021 [Dkt. No. 54]. The Order Setting Confirmation Hearing for March 1, 2021 at 9:30 a.m. was entered January 31, 2021 [Dkt. No. 59].

1.3    The Plan provides for treatment of creditors within three distinct classes including Class 1 of Ford Motor Credit and Wells Fargo Auto Finance – secured by vehicle liens, Class 2 – all allowed unsecured claims, and Class 3 – Insiders/affiliates.

1.4    The Plan attaches as Exhibit A – Financial Projections (the "Projections"), providing Debtor's assumed financial projections from March 31, 2021 – March 31, 2026 (the

"Projection Period") containing Debtor's estimate of future "disposable income" and "Division of Community Property" – along with Debtor's "Notes" to the Projections; and, attaching Exhibit B – Liquidation Analysis, showing purported liquidation values of $2,606,118.00.

1.5  Article II of the Plan ¶¶ 2.01 - 2.03 explains the status of Debtors holdings within (i) Flix Brewhower ("Flix"), consisting of ten theaters which were opened and operating between 2011 – 2021 all of which closed during the COVID pandemic and which have been unable to successfully reopen due to the pandemic and lack of new releases; (ii) 3401 Hoteliers, LP, which closed following sustained losses attributable to the pandemic; and, (iii) Aramcor, Inc., the management company for Debtor's real estate and business entities – which contributed $96,000.00 to Debtor prepetition monthly income, but which has been undermined through closures of Flix and other entities.

1.6  Paragraphs 2.04-2.05 of the Plan indicate that Debtor will utilize net income from remaining businesses to fund the Plan. Those businesses include: (i) Southwestern Retail Properties, L.P.; (ii) Southwestern Retail Properties, II, LP; (iii) Southwestern Retail Properties, III LP; (v) Round Rock Business Park, LP; (vi) Prairie Point Estates, Inc.; and, (vii) 100 Trinity LLC. Debtor explains that guaranty agreements for lease and loan obligations, coupled with loss of Flix revenue, diminished shopping center revenue, loss of hotel income and loan/lease defaults resulted in the Subchapter V case filing.

1.7  The Reagan Plan proposes the following treatment to allowed claims within Classes 1-3:

    1.  Class 1 – <u>Ford Motor Credit</u> (Claim No. 17 - $60,782.65) and <u>Wells Fargo Auto Finance</u> (no claim filed), designated unimpaired to be paid per existing pre-petition loan agreements.

    2.    Class 2 – <u>Unsecured Claims</u> – to be paid their pro-rata shares of "plan payments."

    3.    Class 3 – <u>Insiders or affiliates</u> – to receive no payments under the Plan.

In addition, the Plan proposes to pay administrative claims on the Effective Date or entry of Order allowing administrative expenses or per agreement. Allowed claims are to be paid in equally monthly installments over five years after the petition date with interest at 12% per annum.

    1.8    Reagan filed two MORs within the Chapter 11 case on December 21, 2020 and January 21, 2021 covering periods from the filing date to December 20, 2020 [Dkt. Nos. 39 and 54], showing cash on hand as of December 2020 of $342,621.02, cash receipts of $14,908.96 and disbursements of $25,123.97, for a net cash flow of $10,275.01 for December 2020, and $6,416.61 in cash receipts, $15,144.69 in disbursements and net cash flow of $31,271.58 in November 2020 – evidencing monthly average of approximately $27,000.00 in net income and $20,000.00 in average monthly expenses within the post-petition period.

    1.9    Reagan advised that all executory contracts not assumed/rejected prior to confirmation will be assumed – but neglects to specify what existing contracts may exist (Plan, Article VII [Dkt. No. 54]).

    1.10    Twenty claims were filed prior to the February 16, 2021 bar date totaling $59,847,126.60 – most of which, except for Ford Motor Credit – appear to be based upon unliquidated guarantees of loan/lease obligations executed by Reagan in relation to various business ventures, Debtor's Schedules list one priority claim being Williamson County – a claim of $0.00, but which filed Claim No. 15 in the amount of $17,906.94; three secured creditors, including Ford Motor, Claim No. 17 in the amount of $60,782.69, Wells Fargo Auto, and Interactive Broker, LLC, neither of which filed a claim but both scheduled as not disputed

(Amended Schedule D, p. 24 – Dkt. No. 56), Interactive's claim is scheduled at $1,007,526.61 with a collateral value of $3,376,431.63 consisting of marketable securities. Debtor's Schedules show $2,068,245.54 in unsecured debt (Debtor's Schedule E/F, Part 4, Dkt. No. 17) without inclusion of unliquidated obligations. Debtor's Schedules list forty-four unsecured claims – with twenty-eight unsecured creditor claims arising through guarantee of loans/leases, with 21 of those guarantee obligations designated as either contingent, disputed or unliquidated, and revealing no claim amount (Debtor's Schedule E/F ¶ 4.01 – 4.14 – Dkt. No. 17). Creditors whose claims are not scheduled as disputed, contingent or unliquidated, are not required to file a proof of claim under R. 3003(b)(1) FED. R. BANKR. P. – and, subject to the claim objection, are deemed "allowed" claims to be paid or otherwise satisfied within the bankruptcy case. The unsecured creditors designated within Debtor's Schedule as disputed, contingent, or unliquidated are required to file a proof of claim to have an allowed claim. R. 3003(c) FED. R. BANKR. P.

1.11 Debtor's Plan anticipates $3,367,131.00 in Plan payments over the five year post-confirmation period – and contemplates use of 100% of community income less reasonable costs for support/maintenance and/or for business operations/preservation for use as disposable income within the Plan Payment Period (Plan, ¶ 2.07, Dkt. No. 54).

## II. ARGUMENT/ AUTHORITY

2.1 BANKRUPTCY CODE § 1191(a) provides that the court shall confirm a plan only if all the requirements under § 1129(a), other than paragraph (15) of § 1129 are met. Because § 1129(a)(15) no longer applies, individual debtors are not specifically required to file post-confirmation monthly reports in a Subchapter V case to the U.S. Trustee's Office. Further, § 1129(a)(8) and (10) are not applicable if a plan is confirmed under § 1191(b). Consequently if all other § 1129(a) requirements are met including acceptance by all impaired classes under § 1129(a),

the court is required to confirm a consensual plan; and if requirements of § 1191(b) are satisfied, including requirements that plan not discriminate and is fair and equitable, the Court may confirm a nonconsensual plan. *In re Pearl Res. LLC,* 2020 Bankr. LEXIS 2683 (Bankr. S.D. Tex. 2020). Where the Subchapter V debtor can not obtain full consent for the Plan § 1191(b) sets the cramdown standards, replacing requirements under § 1129(b). *In re Pearl Res., @* 29.

    2.2    BANKRUPTCY CODE § 1191(c) specifies that the provisions of a plan are to be fair and equitable, with respect to each class of claims, and includes the requirement that the plan provide for all projected "disposable income" received by the Debtor to be applied to make payments under the plan. Compliance with the projected disposable income requirement (or "best efforts") is a mandatory condition for cramdown confirmation under § 1191(b). A GUIDE TO SMALL BUSINESS REORGANIZATION ACT OF 2019, p. 55, n. 205, Paul W. Bonapfel, U.S. Bankruptcy Judge, N.D. Ga., February 2020. *In re Pearl Res., @* 65.

    2.3    BANKRUPTCY CODE § 1191(d) defines "disposable income" and authorizes plan confirmation if all requirements of § 1129(a) are satisfied – except for § 1129(a)(8)(10) and (15) which are inapplicable. Included within § 1129(a) compliance requirements is § 1129(a)(7)(A)(ii) setting forth a liquidation test requiring that the creditor is to receive property of a value which is not less than the creditor would receive upon liquidation.

    2.4    BANKRUPTCY CODE § 1191(d) specifies that the term "disposable income" means income received by the debtor which is not reasonably necessary to be expended for: (A) maintenance, support of the debtor or dependent; (B) a domestic support obligation; or (C) for payment of expenditures necessary for continuation, preservation, or operation of the debtor's business. The definition of disposable income is substantially the same definition as in § 1325(b)(E) – except for permitted deductions for charitable contributions – however § 1191(d)

does not incorporate a means test in the calculation of disposable income. The test for determining "reasonable and necessary" expenses is the same as in Chapter 12 and pre 13 means Chapter 13 cases. *In re Pearl Res.,* @ 70. Consequently Debtor must allocate all disposable income available after "reasonable and necessary expenditures" to a "cramdown" plan and the amounts allocated must exceed the liquidation value from non-exempt assets. Debtor's projections present anticipated revenue generated over post-confirmation payment periods – but does not reveal "actual revenue" to be ascertained from actual post-confirmation performance. Nor does the Plan propose adjustments to disposable income which would reflect actual "disposable income" earned by Debtor over the Plan Payment Period. Further the Projections do not include any revenue from Flix operations and does not require proceeds from capital liquidation to be included within "disposable income."

  2.5 BANKRUPTCY CODE § 1186(a) provides if a plan is confirmed under § 1191(b) – property of the estate includes, in addition to property specified within § 541, <u>all property the debtor</u> acquires after the case is commenced [emphasis added] – but before the case is closed, dismissed or converted and § 1186(b) provides that debtor shall remain in possession of all property of the estate following plan confirmation until plan completion. All property of the estate and all post-confirmation income is to remain property of the post-confirmation estate.

  2.6 If a plan is confirmed under § 1191(b), the plan payments are to be submitted to the Sub V Trustee who is to make plan payments under § 1194(b). Consequently, post-confirmation payment procedures setting forth dates of payment and dates for disbursement as required duties of the Sub V Trustee as disbursing agent are required. In addition compensation for any professionals retained, as well as the Sub V Trustee's compensation must be provided within the Plan.

2.7     BANKRUPTCY CODE § 1191(c)(3)(B) requires the Plan provide adequate remedies to protect holders of claims, in the event debtor fails to make the required payments. One explicate remedy referenced is the liquidation of non-exempt assets as set forth within § 1191(c)(3)(B) – intended to protect holders of claims in the event Plan payments are not made. Rights to Debtor's property must be preserved and unsecured creditors' rights must include the opportunity to urge default remedies before the Bankruptcy Court, including rights to convert the case to a Chapter 7 or for the post-confirmation Trustee to liquidate assets. Article XII of the Plan provides for default and rights of the creditors having allowed claims upon default. However, the Plan does not appear to include liquidation of non-exempt assets in the event payments are not made as required under § 1191(c)(3)(B).

2.8     BANKRUPTCY CODE § 1190(1)(B) and (C) specifies that a Plan shall include a liquidation analysis and projections with regard to debtor's ability to make payments under the plan.

2.9     Trustee's limited objections to the Plan are:

A.      The Plan anticipates $3,267,132.00 in disposable income over the Plan Payment Period – without providing for adjustments to disposable income derived from post-confirmation actual operations as required under § 1191(c)(2)(A). Further, the Plan Projections anticipate capital within several Debtor entities, to be reinvested – rather than made available to creditors. The Projections contemplate: (i) Round Rock Business Park, LP – tenant improvements/capital expenditures of $125,000.00 per year; (ii) Southwestern Retail Properties, LP – tenant improvements of $150,000.00 per year; (iii) Prairie Point Estates, Inc. – Prairie Point and 100 Trinity have

       funding/loan agreements to provide an additional $1.5 Million in project funding within the Plan Payment Period; (iv) 100 Trinity LLC – Trinity is to provide additional funding to Prairie Point – to be repaid in 2023- with Projections indicating Trinity will "reinvest the repaid loan proceeds;" and, (v) other minority investments – Debtor does not forecast income from those entities to be include within Plan payments. Section 1190(2) requires a plan to provide "all or such portion of total earnings or other future income of the debtor to the supervision and control of the trustee as is necessary for the execution of the plan. *In re Pearl Resources, LLC,* @ 17-18.

B.    The Plan proposes treatment of only two of the secured creditors Ford and Wells Fargo Auto, without reference to the secured claim of the Interactive Brokerer in the amount of $1,007,526.61. Class 1 of the Plan neglects to include all allowed secured claimants.

C.    BANKRUPTCY CODE § 1191(c)(2) requires Reagan to provide all "disposable income" into the Plan. The Plan neglects to provide an analysis of all disposable income (as indicated in ¶ B above) – or confirm that all disposable income is contributed into the Plan – including "actual income" earned post-confirmation. The Plan references cash and securities indicating that securities will be liquidated – but does not appear to deal with all of the marketable securities – specifically the $3.376 Million in marketable securities held as collateral for the Interactive Broker loan.

D.    The Debtor's Projections claim "living expenses" amounts of approximately $200,000.00 per year including $30,000 for medical,

        $12,000.00 in household/pool expenses, $12,000.00 for "lawn services," $12,000.00 for domestic help, and $1,200.00 for gifts, some of which clearly exceed the "reasonable and necessary" limitations under § 1191(b).

E.    The Plan neglects to provide adequate remedies in the event of default as required under § 1191(c)(3)(B). While Article XII provide that a creditor may issue notice of default and upon a failure to cure the right to exercise remedies, the default remedies do not include "liquidation" as specified under § 1191(c)(1)(B) and does not indicate Sub V Trustee's rights, powers, duties upon default – which should include liquidation rights.

F.    The Plan neglects to provide for post-confirmation Sub V Trustee fees – including specified monthly disbursement fees – and reasonable Sub V attorney's fees subject to court approval, if a plan is confirmed under § 1191(b) as a non-consensual plan – requiring Trustee to make distributions. And, if Trustee is required to file post-confirmation pleadings or seek post-confirmation relief, Sub V Trustee rights to retain professionals and should be stated and provisions for attorney's fees must be provided within the Plan.

G.    The Plan does not specify Debtor's post-confirmation duties, responsibilities, powers, or authority of a Sub V Trustee if a plan is a non-consensual plan confirmed under § 1191(b) – or provide a process for Sub V Trustee to make distributions under § 1191(a), to withhold funds pending claims allowance/liquidation, to report distributions/payments, to account

for unclaimed funds, to receive periodic reports, to retain professionals or to appear and be heard on post-confirmation matters.

H. Bankruptcy Code § 1186(a) requires all debtor's property to remain property of the estate until all plan payments have been made if a plan is confirmed under § 1191(b). Plan ¶ 10.01 providing that all assets shall vest in the Reorganized Debtor – conflicts with § 1191(b), specifying that property of the estate does not revest until all payments are made, if a plan confirmed under § 1191(b).

I. Paragraph 3.04 of the Plan appears to provide that creditor treatment may be modified post-confirmation – potentially causing unfair and discriminatory treatment, stating "notwithstanding any provisions set forth within the Plan, Debtor and a creditor may enter into any agreements after confirmation. . . ." Post-confirmation alteration of creditor treatment under a confirmed plan may result in discrimination between treatment of creditors within the same class.

J. The Plan contains no reporting requirements if a plan is confirmed under § 1191(b) –providing reasonable and necessary information to the post-confirmation Sub V Trustee/Distributing Agent regarding plan compliance requirements, i.e., monthly financial reports, bank statements and confirming Debtor's post-confirmation plan performances/compliances.

K. The definition of "disposable income" within the Projections (Plan Projections ¶ B.a – Dkt. No. 54, p. 22) appears inconsistent with requirements of § 1191(d), specifying all Debtor's income from wages,

        interests, dividends and distributions less tax withholdings, retirement savings, healthcare provisions, the Debtor and spouse's reasonable living expenses and payments necessary for the continuation, preservations or operations of Debtor's businesses. Compared to § 1191(d) specifying "income revenue by debtor" less what is "reasonably necessary to be expensed" for the maintenance and support of Debtor and amounts necessary for the continuation, preservation or operation of debtor's businesses. Debtor's "disposable income" definition appears to be overly broad, including unspecified tax withholdings, retirement savings and healthcare provisions.

L.    The Debtor's liquidation analysis reveals values between $2,223,103.00 as the low and $2,606,118.00 as the high liquidation values. Debtor's Schedules designates $11,445,592.82 in non-exempt asset value, consisting of: (i) cash or funds in accounts of approximately $160,000.00; (ii) bonds, mutual funds on publically traded stock of $1,536,299.00 and non-publically traded stock with a value in excess of $10 Million. The discrepancy between the "liquidation value" of $2.2-2.6 Million versus the scheduled values of $11.4 Million, including scheduled $1.7 Million in cash and marketable securities,[1] appears unreasonable. Debtor's cash/security value of $1.7 Million – less projected liquidation value of $2.2 – $2.6 Million leave only $500,00.00 - $900,000.00 in value for Debtor's other non-exempt "non-publically trades" that's – including interests in various

---

[1] Debtor's Schedules show $1.518 Million in securities held by Interactive Brokers – and also show $3.037 Million held by Interactive Brokers (Compare Schedule A/B.18 and Schedule D.2.2 (Amended Schedules, Dkt. No. 56)).

business interests valued in excess of $10 Million within Debtor's Schedules. Also – the Liquidation Analysis fails to explain the discrepancy between Debtor's Schedules A/B.18 – showing $1,518,715.82 in Interactive Broker account and Schedule D.2.2 showing $3,037 Million in the same account.

2.9 Trustee is not opposed to confirmation of the Plan – with changes consistent with Code provisions requiring the Plan to be modified to include: (i) Class 1 "secured creditor" – modifications to include all secured creditors; (ii) requiring Reagan to contribute all "disposable income" into the Plan; (iii) adjustments to projected amounts for maintenance and support; (iv) expand remedies for default to include liquidation; (v) details for Debtor's and Sub V Trustee's post-confirmation rights, powers, duties and compensation; (vi) requirement for property remaining property of the estate and not revesting in Debtor until all Plan payment requirements are met; (vii) specified Trustee duties as distributing agent if Plan is confirmed under § 1129(b), and requiring Debtor to turn over all disposable income and establishing Plan payment procedures; (viii) provide post-confirmation reporting to the Sub V Trustee containing reasonable and necessary financial information to implement Plan terms, including monthly income/expense statements, balance sheets, bank statements, tax returns and post-confirmation investor contribution if confirmed under § 1191(b); (ix) requiring adjustments to Projections to include all disposable income and providing required data to ensure the Plan meets the liquidation test including analysis of liquidation values; and, (x) reexamination of liquidation analysis – to indicate value more consistent with actual liquidation values and, revised projections to show Plan distribution in excess of revised liquidation values.

## PRAYER

WHEREFORE PREMISES CONSIDERED, Trustee prays that the Court confirm the Plan with Trustee's requested modifications, to be consistent with Code requirements, and for such other relief at law and equity to which he may be justly entitled.

Respectfully Submitted,

**MARTIN & DROUGHT, P.C.**
Weston Centre
112 East Pecan Street, Suite 1616
San Antonio, Texas 78205
Telephone: (210) 227-7591
Facsimile: (210) 227-7924
E-Mail: mcolvard@mdtlaw.com

By: /s/Michael G. Colvard
    Michael G. Colvard
    State Bar No. 04629200

**SUBCHAPTER V TRUSTEE**

## CERTIFICATE OF SERVICE

I hereby certify that on February 19, 2021, a true and correct copy of the foregoing document was served on the parties listed below via the Court's ECF System and via E-Mail.

David M Blau on behalf of Creditor Merle Hay Investors LLC
dblau@clarkhill.com
Clark Hill PLC
151 S. Old Woodward Ave.
Suite 200
Birmingham, MI 48009

David S Catuogno on behalf of Creditor Wyndham Franchisor, LLC
david.catuogno@klgates.com, caitlin.conklin@klgates.com;aidan.nowak@klgates.com
K&L Gates, LLP
One Newark Center, Tenth Floor
1085 Raymond Boulevard
Newark, New Jersey 07102

Caitlin C. Conklin on behalf of Creditor Wyndham Franchisor, LLC
caitlin.conklin@klgates.com, joy.vanderweert@klgates.com
One Newark Center, Tenth Floor

1085 Raymond Boulevard
Newark, New Jersey 07102

Harrel L. Davis, III on behalf of Creditor ROP Artcraft, LLC
hdavis@eplawyers.com, vrust@eplawyers.com;vpena@eplawyers.com
Gordon Davis Johnson & Shane P.C.
4695 N. Mesa Street
El Paso, TX 79912

Robert J. Diehl, Jr. on behalf of Creditor Comerica Bank
RDiehl@bodmanlaw.com
Bodman PLC
6th Floor at Ford Field
1901 St. Antoine Street
Detroit, MI 48226

Daniel M. Eliades on behalf of Creditor Wyndham Franchisor, LLC
Daniel.eliades@klgates.com, caitlin.conklin@klgates.com;travis.powers@klgates.com
One Newark Center, Tenth Floor
1085 Raymond Boulevard
Newark, New Jersey 07102

Michael Flume on behalf of Creditor The Bank of Austin
mflume@flumelaw.net, mmonge@flumelaw.net;sflume@flumelaw.net
Flume Law Firm, LLP
1020 N.E. Loop 410, Suite 530
San Antonio, TX 78209

Tara LeDay on behalf of Creditor Williamson County
tleday@ecf.courtdrive.com;pbowers@mvbalaw.com;vcovington@mvbalaw.com;bankruptcy@mvbalaw.com;alocklin@mvbalaw.com
P.O. Box 1269
Round Rock, TX 78680-

Stephen K. Lecholop, II on behalf of Creditor Lone Star National Bank
slecholop@rpsalaw.com, amartinez@rpsalaw.com;lchapa@rpsalaw.com
Rosenthal Pauerstein Sandoloski Agather LLP
755 East Mulberry, Suite 200
San Antonio, TX 78212

Peter Lindborg on behalf of Creditor Village @ La Orilla LLC
plindborg@lmllp.com
550 N. Brand Blvd., Suite 1830
Glendale, CA 91203

Louis D. Lopez on behalf of Interested Party Flix Entertainment LLC
llopez@fclaw.com
Fennemore Craig, P.C.
2394 E. Camelback Rd., Suite 600
Phoenix, AZ 85016

Kell C. Mercer on behalf of Interested Party Janet Reagan
kell.mercer@mercer-law-pc.com
Kell C. Mercer, P.C.
1602 E. Cesar Chavez Street
Austin, TX 78701

John R O'Connor on behalf of Interested Party Flix Entertainment LLC
joconnor@sfgh.com
Sugar Felsenthal Grais & Helsinger LLP
30 N. LaSalle St., Suite 3000
Chicago, IL 60602

William T. Peckham on behalf of Creditor Mikeska, Monahan & Peckham
wpeckham@peckhamlawaustin.com, calexander@peckhamlawaustin.com
1104 Nueces St., Suite 104
Austin, TX 78701-2106

Ross A Plourde on behalf of Creditor 83rd Street Development, LLC
ross.plourde@mcafeetaft.com, Annette.strother@mcafeetaft.com
McAfee & Taft
211 North Robinson, 8th Floor
Oklahoma City, OK 73102-7103

Noel J Ravenscroft on behalf of Creditor Comerica Bank
Nravenscroft@bodmanlaw.com
Bodman PLC
6th Floor at Ford Field
1901 St. Antoine Street
Detroit, MI 48226

Mark Curtis Taylor on behalf of Debtor Allan L. Reagan
mark.taylor@wallerlaw.com,
tammy.greenblum@wallerlaw.com;annmarie.jezisek@wallerlaw.com
Waller Lansden Dortch & Davis, LLP
100 Congress Avenue, Suite 1800
Austin, TX 78701

United States Trustee - AU12
ustpregion07.au.ecf@usdoj.gov
903 San Jacinto Blvd., Room 230

...

Austin, TX 78702

Stephen Wilcox on behalf of Creditor Ford Motor Credit Company LLC
swilcox@wilcoxlaw.net, krw77@sbcglobal.net;kraudry@wilcoxlaw.net
Wilcox Law, PLLC
P.O. Box 201849
Arlington, TX 76006

Jaimee L Witten on behalf of Creditor Comerica Bank
JWitten@bodmanlaw.com
Bodman PLC
6th Floor at Ford Field
1901 St. Antoine Street
Detroit, MI 48226

Bruce John Zabarauskas on behalf of Creditor Wells Fargo as Trustee for the benefit of the Holders of COMM 2014-UBS6 Mortgage Trust Commercial Mortgage Pass-Through Certificfates, Series 2014-UBS6
bruce.zabarauskas@tklaw.com, tonya.loera@tklaw.com
Thompson & Knight, LLP
1722 Routh Street, Suite 1500
Dallas, TX 75201

/s/ Michael G. Colvard
Michael G. Colvard