THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| ALLAN L. REAGAN | § | CASE NO. 20-11161-TMD |
| | § | |
| DEBTOR. | § | CHAPTER 11 |

**LIMITED OBJECTIONS TO FIRST AMENDED PLAN OF REORGANIZATION FOR SMALL BUSINESS UNDER CHAPTER 11**

TO THE HONORABLE TONY M. DAVIS,
UNITED STATES BANKRUPTCY JUDGE:

Now comes Michael G. Colvard, Sub Chapter V Trustee (herein "Trustee") within the Allan L. Reagan (herein "Reagan" or "Debtor") Small Business Chapter 11 case, to file this a Limited Objection (the "Objection") to the First Amended Small Business Chapter 11 Plan of Reorganization (the "Amended Plan") , and would show unto the court as follows:

### I.  BACKGROUND

1.1 Reagan filed a Chapter 11 small business case on October 22, 2020 [Dkt. No. 1]. Trustee was appointed on October 27, 2020 [Dkt. No. 8].

1.2 Reagan filed its Plan of Reorganization for Small Business Under Chapter 11 on January 20, 2021 [Dkt. No. 54]. The Order Setting Confirmation Hearing for March 1, 2021 at 9:30 a.m. was entered January 31, 2021 [Dkt. No. 59].

1.3 Reagan filed the First Amended Plan on March 9, 2021 [Dkt. No. 89].

1.4 The Amended Plan provides for treatment of creditors within four distinct classes including Class 1 of Ford Motor Credit and Wells Fargo Auto Finance – secured by vehicle liens, Class 2 – the claim of Interactive Brokers, LLC, Class 3 – all allowed unsecured claims, and Class 4 – Insiders/affiliates.

1.5 The Amended Plan attaches as Exhibit A – Financial Projections (the "Projections"), providing Debtor's assumed financial projections from March 31, 2021 – March 31, 2026 (the "Projection Period") containing Debtor's estimate of future "disposable income" and "Division of Community Property" – along with Debtor's "Notes" to the Projections; and, attaching Exhibit B – Liquidation Analysis, showing purported liquidation value of $2,606,118.00.

1.6 Article II of the Amended Plan ¶¶ 2.01 - 2.03 explains the status of Debtors holdings within: (i) Flix Brewhower ("Flix"), consisting of ten theaters which were opened and operating between 2011 – 2021 all of which closed during the COVID pandemic and which have been unable to successfully reopen due to the pandemic and lack of new releases; (ii) 3401 Hoteliers, LP, which closed following sustained losses attributable to the pandemic; and, (iii) Aramcor, Inc., the management company for Debtor's real estate and business entities – which contributed $96,000.00 to Debtor in prepetition monthly income, but which has been undermined through closures of Flix and other entities.

1.7 Paragraphs 3.01-3.07 of the Amended Plan indicate that Debtor will utilize net income from businesses operations other than Flix, to fund the Amended Plan which include "all community income."[1] Those businesses include: (i) Southwestern Retail Properties, L.P.; (ii) Southwestern Retail Properties, II, LP; (iii) Southwestern Retail Properties, III LP; (v) Round Rock Business Park, LP; (vi) Prairie Point Estates, Inc.; and, (vii) 100 Trinity LLC. Debtor explains that guaranty agreements for lease and loan obligations, coupled with loss of Flix revenue, diminished shopping center revenue, loss of hotel income and loan/lease defaults resulted in the Subchapter V case filing.

---

[1] Debtor's reference to "all community income" includes projected community income set forth within the Projections for both Reagan and wife – opposed to "actual" community income which may be actually earned within the post-confirmation payment period - and excludes potential Flix income obligations – as well as capital stock.

1.8     The Amended Plan proposes the following treatment to allowed claims within Classes 1-4:

1. Class 1 – <u>Ford Motor Credit</u> (Claim No. 17 - $60,782.65) and <u>Wells Fargo Auto Finance</u> (no claim filed), designated unimpaired to be paid per existing pre-petition loan agreements.

2. Class 2 – <u>Interactive Brokers, LLC</u> (did not file claim) – secured claim to be paid per terms of agreement and appears unimpaired.

3. Class 3 – <u>Unsecured Claims</u> – to be paid their pro-rata shares of "plan payments."

4. Class 4 – <u>Insiders or affiliates</u> – to receive no payments under the Amended Plan.

In addition, the Amended Plan proposes to pay administrative claims on the Effective Date or entry of Order allowing administrative expenses or per agreement. Allowed unsecured claims are to be paid in quarterly installments over five years after the petition date.

1.9     Reagan filed two MORs within the Chapter 11 case on December 21, 2020 and January 21, 2021 covering periods from the filing date to December 20, 2020 [Dkt. Nos. 39 and 54], showing cash on hand as of December 2020 of $342,621.02, cash receipts of $14,908.96 and disbursements of $25,123.97, for a net cash flow of <$10,275.01> in December 2020, and $46,416.61 in cash receipts, $15,144.69 in disbursements and net cash flow of $31,271.58 in November 2020 – evidencing monthly averages of approximately $27,000.00 in income, and $20,000.00 in average monthly expenses within the post-petition period.

1.10     Reagan advised that all executory contracts not assumed/rejected prior to confirmation will be assumed – and is to file a list of assumed contracts prior to Plan confirmation (Amended Plan, Article VII [Dkt. No. 89]).

1.11     Twenty claims were filed prior to the February 16, 2021 bar date totaling $59,847,126.60 – most of which, except for Ford Motor Credit – appear to be based upon unliquidated guarantees of loan/lease obligations executed by Reagan in relation to various business ventures.  Debtor's Schedules list one priority claim being Williamson County – stating a claim of $0.00, (but which filed Claim No. 15 in the amount of $17,906.94); three secured creditors, including: (i) Ford Motor, Claim No. 17 in the amount of $60,782.69, (ii) Wells Fargo Auto, and (iii) Interactive Broker, LLC, none of which filed Proofs of Claims, but both scheduled as undisputed (Amended Schedule D, p. 24 – Dkt. No. 56).  Interactive's claim scheduled at $1,007,526.61, reveals a collateral value of $3,376,431.63, consisting of marketable securities. Debtor's Schedules lists $2,068,245.54 in unsecured debt (Debtor's Schedule E/F, Part 4, Dkt. No. 17) without inclusion of unliquidated obligations.  Debtor's Schedules list forty-four unsecured claims – with twenty-eight unsecured creditor claims consisting of guarantee of loans/leases, and 21 of those guarantee obligations designated as either contingent, disputed or unliquidated, revealing no claim amount (Debtor's Schedule E/F ¶ 4.01 – 4.14 – Dkt. No. 17).  Creditors whose claims are not scheduled as disputed, contingent or unliquidated, are not required to file a proof of claim under R. 3003(b)(1) FED. R. BANKR. P. – and, subject to the claim objection, are deemed "allowed" claims to be paid or otherwise satisfied within the bankruptcy case.  The unsecured creditors designated within Debtor's Schedule as disputed, contingent, or unliquidated are required to file a proof of claim to have an allowed claim.  R. 3003(c) FED. R. BANKR. P.

1.12    Debtor's Plan anticipates $3,110,935.00 in "projected" disposable income over the five year post-confirmation period – and contemplates use of 100% of "community income" less, reasonable/necessary costs for support/maintenance and/or for business operations/preservation, as the projected amount of "disposable income" payable under the Amended Plan payment period (Amended Plan, ¶ 2.07, Dkt. No. 89).

1.13    The Amended Plan attaches a liquidation analysis utilizing one-half the marital community asset liquidation value – revealing the "Liquidation Value" does not include Reagan's wife's ½ community interest in property owned within the marital estate. In addition it appears the Liquidation Value does not include the capital stock of entities[2] within which Reagan owns interests, rather, the "Liquidation Value" is based upon the projected revenue and earning value of such entity without regard to capital stock value. Nor is the "capital stock" proceeds resulting from sale or disposition to included within "disposable income."

## II.    ARGUMENT/ AUTHORITY

2.1    BANKRUPTCY CODE § 1191(a) provides that the court shall confirm a plan only if all the requirements under § 1129(a), other than paragraph (15) of § 1129 are met. Because § 1129(a)(15) no longer applies, individual debtors are not specifically required to file post-confirmation monthly reports in a Subchapter V case to the U.S. Trustee's Office. Further, § 1129(a)(8) and (10) are not applicable if a plan is confirmed under § 1191(b). Consequently if all other § 1129(a) requirements are met including acceptance by all impaired classes under § 1129(a), the court is required to confirm a consensual plan; and if requirements of § 1191(b) are satisfied,

---

[2] For example, 100 Trinity LLC ("Trinity") is an entity within which Reagan owes interest. The business of Trinity is investments, which includes notes issued to Reagan related companies – one of which his Prairie Point Estates, Inc. The Prairie Point note is subject to repayment within the Amended Plan payment period – but the note payment is classified as "capital stock" not to be included within the proposed Liquidation Value of the "Disposable Income" – rather capital stock is to be reinvested – and its "value" for liquidation analysis determined by income generated rather than sale value or fair market value.

including requirements that plan not discriminate and is fair and equitable, the Court may confirm a nonconsensual plan. *In re Pearl Res. LLC,* 2020 Bankr. LEXIS 2683 (Bankr. S.D. Tex. 2020). Where the Subchapter V debtor can not obtain full consent for the Plan § 1191(b) sets the cramdown standards, replacing requirements under § 1129(b). *In re Pearl Res.,* @ 29.

      2.2      BANKRUPTCY CODE § 1191(c) specifies that the provisions of a plan are to be fair and equitable, with respect to each class of claims, and includes the requirement that the plan provide for all projected "disposable income" received by the Debtor to be applied to make payments under the plan. Compliance with the projected disposable income requirement (or "best efforts") is a mandatory condition for cramdown confirmation under § 1191(b). A GUIDE TO SMALL BUSINESS REORGANIZATION ACT OF 2019, p. 55, n. 205, Paul W. Bonapfel, U.S. Bankruptcy Judge, N.D. Ga., February 2020. *In re Pearl Res.,* @ 65. Compliance in this case requires a fair and equitable assessment of all assets that could contribute to "disposable income" including future Flix income as well as income from disposition of capital stock.

      2.3      BANKRUPTCY CODE § 1191(d) defines "disposable income" and authorizes plan confirmation if all requirements of § 1129(a) are satisfied – except for § 1129(a)(8)(10) and (15) which are inapplicable. Included within § 1129(a) compliance requirements is § 1129(a)(7)(A)(ii) setting forth a liquidation test requiring that the creditor is to receive property of a value which is not less than the creditor would receive upon liquidation. Here, Debtor's liquidation analysis excludes: (i) ½ of estate assets – wife's interest; (ii) Flix future income; (iii) capital stock recovery; and, (iv) income in revenue above "projected income" within the Plan Projections.

      2.4      BANKRUPTCY CODE § 1191(d) specifies that the term "disposable income" means income received by the debtor which is not reasonably necessary to be expended for: (A) maintenance, support of the debtor or dependent; (B) a domestic support obligation; or (C) for

payment of expenditures necessary for continuation, preservation, or operation of the debtor's business. The definition of disposable income is substantially the same definition as in § 1325(b)(E) – except for permitted deductions for charitable contributions – however § 1191(d) does not incorporate a "means test" in the calculation of disposable income. The test for determining "reasonable and necessary" expenses is the same as in Chapter 12 and pre 13 means Chapter 13 cases. *In re Pearl Res.,* @ 70. Consequently Debtor must allocate all disposable income available after "reasonable and necessary expenditures" to a "cramdown" plan and the amounts allocated must exceed the liquidation value from non-exempt assets. Debtor's projections present anticipated revenue generated over post-confirmation payment periods – but does not reveal "actual revenue" to be ascertained from actual post-confirmation performance. Nor does the Plan propose adjustments to disposable income which would reflect actual "disposable income" earned by Debtor over the Plan Payment Period. Further the Projections do not include revenue from Flix operations and does not require proceeds from capital liquidation to be included within "disposable income."

  2.5  BANKRUPTCY CODE § 1186(a) provides if a plan is confirmed under § 1191(b) – property of the estate includes, in addition to property specified within § 541, <u>all property the debtor</u> acquires after the case is commenced [emphasis added] – but before the case is closed, dismissed or converted and § 1186(b) provides that debtor shall remain in possession of all property of the estate following plan confirmation until plan completion. All property of the estate and all post-confirmation income is to remain property of the post-confirmation estate.

  2.6  If a plan is confirmed under § 1191(b), the plan payments are to be submitted to the Sub V Trustee who is to make plan payments under § 1194(b). Consequently, post-confirmation payment procedures setting forth dates of payment and dates for disbursement as required duties

of the Sub V Trustee as disbursing agent are required. In addition compensation for any professionals retained, as well as the Sub V Trustee's compensation must be provided within the Plan.

2.7 BANKRUPTCY CODE § 1191(c)(3)(B) requires the Plan provide adequate remedies to protect holders of claims, in the event debtor fails to make the required payments. One explicate remedy referenced is the liquidation of non-exempt assets as set forth within § 1191(c)(3)(B) – intended to protect holders of claims in the event Plan payments are not made. Rights to Debtor's property must be preserved and unsecured creditors' rights must include the opportunity to urge default remedies before the Bankruptcy Court, including rights to convert the case to a Chapter 7 or for the post-confirmation Trustee to liquidate assets. Article XII of the Plan provides for default and rights of the creditors having allowed claims upon default. However, the Plan does not appear to include liquidation of non-exempt assets in the event payments are not made as required under § 1191(c)(3)(B).

2.8 BANKRUPTCY CODE § 1190(1)(B) and (C) specifies that a Plan shall include a liquidation analysis and projections with regard to debtor's ability to make payments under the plan.

2.9 Trustee's limited objections to the Plan are:

A. The Plan anticipates $3,267,132.00 in disposable income over the Plan Payment Period – without providing for adjustments to disposable income derived from post-confirmation actual operations as required under § 1191(c)(2)(A). Further, the Plan Projections anticipate capital stock within several Debtor entities, to be reinvested – rather than made available to creditors. The Projections contemplate: (i) Round Rock Business Park, LP

– tenant improvements/capital expenditures of $125,000.00 per year; (ii) Southwestern Retail Properties, LP – tenant improvements of $150,000.00 per year; (iii) Prairie Point Estates, Inc. – Prairie Point and 100 Trinity have funding/loan agreements to provide an additional $1.5 Million in project funding within the Plan Payment Period; (iv) 100 Trinity LLC – Trinity is to provide additional funding to Prairie Point – to be repaid in 2023- with Projections indicating Trinity will "reinvest the repaid loan proceeds;" and, (v) other minority investments – Debtor does not forecast income from those entities to be include within Plan payments but omits capital stock recovery from "disposal income," thereby compromising future Disposable Income. Section 1190(2) requires a plan to provide "all or such portion of total earnings or other future income of the debtor to the supervision and control of the trustee as is necessary for the execution of the plan. *In re Pearl Resources, LLC,* @ 17-18. In addition to revenue the Amended Plan anticipate income from liquidation of ½ investment accounts, recoveries from Hoteliers (See, Amended Plan ¶ 3.070); and investor distributions. Reagan's pre-petition income was significantly higher than the projected income shown within the Projections – a significant portion of pre-petition which was attributable to Flix operations. However, the Projections exclude Flix income due to "uncertainties of reopening" and continued operations and excludes "capital recoveries" from projected disposable income. Debtor's "best effort" requirements mandates all debtor's disposable income be contributable for plan provisions – consequently, projections

excluding income from Flix operations or income from capital recovery payment or deducting substantial capital expenditures from "Disposable Income" falls short of Reagan's "best efforts" requirements. The Amended Plan specifies that the means necessary for Plan execution includes the continuation of <u>all Debtor's businesses</u>. (Amended Plan, ¶ 3.02) – including Flix operations – consequently, provisions for inclusion of Flix and other income sources is required. Further substantial capital reinvestments that reduce "Disposable Income" is not indicative of Debtor's "best efforts."

B. BANKRUPTCY CODE § 1191(c)(2) requires Reagan to provide all "disposable income" into the Amended Plan. The Amended Plan neglects to provide an analysis of all disposable income – or confirm that all disposable income is contributed into the Plan – including "actual income" earned post-confirmation. The Amended Plan references cash and securities indicating that securities will be liquidated – but does not appear to deal with all of the marketable securities – specifically the $3.376 Million in marketable securities held as collateral for the Interactive Broker loan. Good faith requirements under 11 U.S.C. § 1129(a)(3) and "disposable income" requisites of § 1191(d) specify all "income received by Debtor" to be contributed to the Plan.

C. The Debtor's Projections claim "living expenses" amounts of approximately $200,000.00 per year, including $30,000 for medical, $12,000.00 in household/pool expenses, $12,000.00 for "lawn services,"

$12,000.00 for domestic help, and $1,200.00 for gifts, some of which clearly exceed the "reasonable and necessary" limitations under § 1191(b).

D. The Amended Plan neglects to provide adequate remedies in the event of default as required under § 1191(c)(3)(B). While Article XII provide that a creditor may issue notice of default and upon a failure to cure the right to exercise remedies, the default remedies do not include "liquidation" as specified under § 1191(c)(1)(B) and does not indicate Sub V Trustee's rights, powers, duties upon default – which should include liquidation rights.

E. The Amended Plan does not specify Debtor's post-confirmation duties, responsibilities, powers, or reporting requirements or state the authority of a Sub V Trustee if a plan is a non-consensual plan confirmed under § 1191(b) – or provide a process for Sub V Trustee to make distributions under § 1191(a), to withhold funds pending claims allowance/liquidation, to report distributions/payments, to account for unclaimed funds, to receive periodic reports, to retain professionals or to appear and be heard on post-confirmation matters.

F. Bankruptcy Code § 1186(a) requires all debtor's property to remain property of the estate until all plan payments have been made, if a plan is confirmed under § 1191(b). The Amended Plan ¶ 10.01 states that all assets shall vest in the Reorganized Debtor – conflicts with § 1191(b), specifying that property of the estate does not revest until all payments are made, if a

      plan confirmed under § 1191(b). Paragraph 10.01 of the Amended Plan does not satisfy requirements under 11 U.S.C. 1186(a).

G.   Paragraph 3.04 of the Amended Plan appears to provide that creditor treatment may be modified post-confirmation – potentially causing unfair and discriminatory treatment, stating "notwithstanding any provisions set forth within the Plan, Debtor and a creditor may enter into any agreements after confirmation. . . ." Post-confirmation alteration of creditor treatment under a confirmed plan may result in discrimination between treatment of creditors within the same class.

H.   The Amended Plan contains no reporting requirements if a plan is confirmed under § 1191(b) –providing reasonable and necessary information to the post-confirmation Sub V Trustee/Distributing Agent regarding plan compliance requirements, i.e., monthly financial reports, bank statements and confirming Debtor's post-confirmation plan performance/compliance.

I.   The definition of "disposable income" within the Projections (Plan Projections ¶ B.a – Dkt. No. 54, p. 22) appears inconsistent with requirements of § 1191(d), specifying all Debtor's income from wages, interests, dividends and distributions less tax withholdings, retirement savings, healthcare provisions, the Debtor and spouse's reasonable living expenses and payments necessary for the continuation, preservations or operations of Debtor's businesses. Compared to § 1191(d) specifying "income revenue by debtor" less what is "reasonably necessary to be

        expensed" for the maintenance and support of Debtor and amounts necessary for the continuation, preservation or operation of debtor's businesses. Debtor's "disposable income" definition appears to be overly broad, including unspecified tax withholdings, retirement savings and healthcare provisions. More specifically § 1191(c) does not contain provisions allowing deductions for retirement savings from "disposable income."

J.    The Debtor's liquidation analysis reveals values between $2,223,103.00 as a low, and $2,606,118.00 as the high liquidation values. Debtor's Schedules designates $11,445,592.82 in non-exempt asset value, consisting of: (i) cash or funds in accounts of approximately $160,000.00; (ii) bonds, mutual funds on publically traded stock of $1,536,299.00 and non-publically traded stock with a value in excess of $10 Million. The discrepancy between the "liquidation value" of $2.2-2.6 Million versus the scheduled values of $11.4 Million, including scheduled $1.7 Million in cash and marketable securities,[3] appears unreasonable. Debtor's cash/security value shown within Debtor's Schedules of $1.7 Million – less projected liquidation value of $2.2 – $2.6 Million leave only $500,00.00 - $900,000.00, in remaining value attributable to Debtor's other non-exempt "non-publically traded business" – including interests in various business interests which are valued in excess of $10 Million within Debtor's Schedules. Also – the Liquidation Analysis fails to explain the discrepancy between Debtor's

---

[3] Debtor's Schedules show $1.518 Million in securities held by Interactive Brokers – and also show $3.037 Million held by Interactive Brokers [Compare Schedule A/B.18 and Schedule D.2.2] (Amended Schedules, Dkt. No. 56).

Schedules A/B.18 – showing $1,518,715.82 in Interactive Broker account and Schedule D.2.2 showing $3,037 Million within Interactive same accounts.

2.9  Trustee is not opposed to confirmation of the Plan – with changes consistent with Code provisions requiring the Plan to be modified to include: (i) requiring Reagan to contribute all "disposable income" into the Plan; (ii) adjustments to projected amounts for maintenance and support; (iii) expand remedies for default to include liquidation; (iv) details for Debtor's and Sub V Trustee's post-confirmation rights, powers, duties and compensation; (v) requirement that property of the estate remain property of the estate and not revesting in Debtor until all Plan payment requirements are met; (vi) specified Trustee duties as distributing agent if Plan is confirmed under § 1129(b), and requiring Debtor to turn over all disposable income and establishing Plan payment procedures; (vii) provide post-confirmation reporting to the Sub V Trustee containing reasonable and necessary financial information to implement Plan terms, including monthly income/expense statements, balance sheets, bank statements, tax returns and post-confirmation investor contribution if confirmed under § 1191(b); (viii) requiring adjustments to Projections to include all disposable income and providing required data to ensure the Plan meets the liquidation test including analysis of liquidation values; and, (ix) reexamination of liquidation analysis – to indicate value more consistent with actual liquidation values and, revised projections to show Plan distribution in excess of revised liquidation values.

## PRAYER

WHEREFORE PREMISES CONSIDERED, Trustee prays that the Court confirm the Amended Plan with Trustee's requested modifications, to be consistent with Code requirements, and for such other relief at law and equity to which he may be justly entitled.

        Respectfully Submitted,

        **MARTIN & DROUGHT, P.C.**
        Weston Centre
        112 East Pecan Street, Suite 1616
        San Antonio, Texas 78205
        Telephone: (210) 227-7591
        Facsimile: (210) 227-7924
        E-Mail: mcolvard@mdtlaw.com

        By: /s/Michael G. Colvard
           Michael G. Colvard
           State Bar No. 04629200

        **SUBCHAPTER V TRUSTEE**

### CERTIFICATE OF SERVICE

      I hereby certify that on March 12, 2021, a true and correct copy of the foregoing document was served on the parties listed below via the Court's ECF System and via E-Mail.

David M Blau on behalf of Creditor Merle Hay Investors LLC
dblau@clarkhill.com
Clark Hill PLC
151 S. Old Woodward Ave.
Suite 200
Birmingham, MI 48009

David S Catuogno on behalf of Creditor Wyndham Franchisor, LLC
david.catuogno@klgates.com, caitlin.conklin@klgates.com;aidan.nowak@klgates.com
K&L Gates, LLP
One Newark Center, Tenth Floor
1085 Raymond Boulevard
Newark, New Jersey 07102

Caitlin C. Conklin on behalf of Creditor Wyndham Franchisor, LLC
caitlin.conklin@klgates.com, joy.vanderweert@klgates.com
One Newark Center, Tenth Floor
1085 Raymond Boulevard
Newark, New Jersey 07102

Harrel L. Davis, III on behalf of Creditor ROP Artcraft, LLC
hdavis@eplawyers.com, vrust@eplawyers.com;vpena@eplawyers.com
Gordon Davis Johnson & Shane P.C.
4695 N. Mesa Street
El Paso, TX 79912

Robert J. Diehl, Jr. on behalf of Creditor Comerica Bank
RDiehl@bodmanlaw.com
Bodman PLC
6th Floor at Ford Field
1901 St. Antoine Street
Detroit, MI 48226

Daniel M. Eliades on behalf of Creditor Wyndham Franchisor, LLC
Daniel.eliades@klgates.com, caitlin.conklin@klgates.com;travis.powers@klgates.com
One Newark Center, Tenth Floor
1085 Raymond Boulevard
Newark, New Jersey 07102

Michael Flume on behalf of Creditor The Bank of Austin
mflume@flumelaw.net, mmonge@flumelaw.net;sflume@flumelaw.net
Flume Law Firm, LLP
1020 N.E. Loop 410, Suite 530
San Antonio, TX 78209

Tara LeDay on behalf of Creditor Williamson County
tleday@ecf.courtdrive.com;pbowers@mvbalaw.com;vcovington@mvbalaw.com;bankruptcy@mvbalaw.com;alocklin@mvbalaw.com
P.O. Box 1269
Round Rock, TX 78680-

Stephen K. Lecholop, II on behalf of Creditor Lone Star National Bank
slecholop@rpsalaw.com, amartinez@rpsalaw.com;lchapa@rpsalaw.com
Rosenthal Pauerstein Sandoloski Agather LLP
755 East Mulberry, Suite 200
San Antonio, TX 78212

Peter Lindborg on behalf of Creditor Village @ La Orilla LLC
plindborg@lmllp.com
550 N. Brand Blvd., Suite 1830
Glendale, CA 91203

Louis D. Lopez on behalf of Interested Party Flix Entertainment LLC
llopez@fclaw.com
Fennemore Craig, P.C.
2394 E. Camelback Rd., Suite 600
Phoenix, AZ 85016

Kell C. Mercer on behalf of Interested Party Janet Reagan
kell.mercer@mercer-law-pc.com
Kell C. Mercer, P.C.
1602 E. Cesar Chavez Street
Austin, TX 78701

John R O'Connor on behalf of Interested Party Flix Entertainment LLC
joconnor@sfgh.com
Sugar Felsenthal Grais & Helsinger LLP
30 N. LaSalle St., Suite 3000
Chicago, IL 60602

William T. Peckham on behalf of Creditor Mikeska, Monahan & Peckham
wpeckham@peckhamlawaustin.com, calexander@peckhamlawaustin.com
1104 Nueces St., Suite 104
Austin, TX 78701-2106

Ross A Plourde on behalf of Creditor 83rd Street Development, LLC
ross.plourde@mcafeetaft.com, Annette.strother@mcafeetaft.com
McAfee & Taft
211 North Robinson, 8th Floor
Oklahoma City, OK 73102-7103

Noel J Ravenscroft on behalf of Creditor Comerica Bank
Nravenscroft@bodmanlaw.com
Bodman PLC
6th Floor at Ford Field
1901 St. Antoine Street
Detroit, MI 48226

Mark Curtis Taylor on behalf of Debtor Allan L. Reagan
mark.taylor@wallerlaw.com,
tammy.greenblum@wallerlaw.com;annmarie.jezisek@wallerlaw.com
Waller Lansden Dortch & Davis, LLP
100 Congress Avenue, Suite 1800
Austin, TX 78701

United States Trustee - AU12
ustpregion07.au.ecf@usdoj.gov
903 San Jacinto Blvd., Room 230
Austin, TX 78702

Stephen Wilcox on behalf of Creditor Ford Motor Credit Company LLC
swilcox@wilcoxlaw.net, krw77@sbcglobal.net;kraudry@wilcoxlaw.net
Wilcox Law, PLLC
P.O. Box 201849
Arlington, TX 76006

Jaimee L Witten on behalf of Creditor Comerica Bank
JWitten@bodmanlaw.com
Bodman PLC
6th Floor at Ford Field
1901 St. Antoine Street
Detroit, MI 48226

Bruce John Zabarauskas on behalf of Creditor Wells Fargo as Trustee for the benefit of the Holders of COMM 2014-UBS6 Mortgage Trust Commercial Mortgage Pass-Through Certificates, Series 2014-UBS6
bruce.zabarauskas@tklaw.com, tonya.loera@tklaw.com
Thompson & Knight, LLP
1722 Routh Street, Suite 1500
Dallas, TX 75201

/s/ Michael G. Colvard
Michael G. Colvard