IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| ALLAN L. REAGAN, | § | Case No. 20-11161-tmd |
| | § | Chapter 11 |
| Debtor. | § | |

**RESPONSE TO DEBTOR'S OBJECTION TO**
**PROOF OF CLAIM NO. 11 OF ROP ARTCRAFT LLC**

TO THE HONORABLE TONY M. DAVIS, UNITED STATES BANKRUPTCY JUDGE:

Comes now ROP Artcraft LLC ("ROP"), an unsecured creditor herein, by and through its attorneys of record, and files this, its Response to Debtor's Objection to Proof of Claim No. 11 of ROP Artcraft LLC (the "Response"), and would show the Court as follows:

**I.**
**Background Facts**

1. ROP is an unsecured creditor and party-in-interest in this proceeding. Specifically, ROP is the owner and holder of the following instruments:

   a) A Commercial Real Estate Lease dated February 14, 2018 by and between Flix Brewhouse TX V LLC (Tenant) and ROP Artcraft LLC (Landlord)

   (the "Lease").

2. The Debtor guaranteed the Tenant's performance under the Lease by executing and delivering to ROP his Personal Guaranty dated February 5, 2018. Attached hereto as Exhibit 1 is a true and correct copy of the Debtor's Personal Guaranty. Under Texas law, it is a guaranty of payment, not of collection.

3. Beginning in March 2020, the Tenant defaulted under the terms of the Lease and stopped paying the rent due under the Lease.

4. On or about September 30, 2020, the Lease was amended by a First Amendment to Commercial Real Estate Lease whereby ROP agreed to a rent deferment agreement with Tenant. Tenant failed to meet its obligations under the rent deferment agreement and all past due rent and other

payments became immediately due and payable. Since it is a guaranty of payment, the Debtor was and is obligated on the amounts due from the Tenant as of the Petition Date.

5. On July 30, 2020, ROP's attorneys made formal written demand upon the Debtor to honor his obligations under the Guaranty Agreement and pay the sums due under the Lease. Mr. Reagan failed and refused to pay the sums due under the Lease and instead filed the instant Chapter 11 proceeding on October 22, 2020.

6. After all lawful payments, offsets and credits have been applied, the just and true amount due under the Lease as of the date of filing this Chapter 11 is $493,701.80, which sum represents past due rent, CAM, insurance and property taxes.

7. On January 12, 2021, ROP filed its Proof of Claim No. 11 reflecting that as of the date of filing this Chapter 11, the Debtor, pursuant to his Guaranty Agreement, owed ROP the total amount of $3,750,801.80, which sum represents the past due rent, CAM, insurance and property taxes due in the amount of $493,701.80 plus $3,275,100.00 for three years' future rent due under the Lease. It is this claim that the Debtor now objects to.

## II.
## Argument & Authorities

8. The Bankruptcy Code defines "claim" as (A) right to payment, whether or not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured. § 101(5).

9. Flix Brewhouse (the Tenant) has ceased operating having closed all of its theaters nationwide. As the Debtor has often reported to ROP, Flix Brewhouse does not have the funds to reopen and continue operating, even if ROP (and the other landlords) forgave or deferred unpaid rent.

In fact, Flix Brewhouse has proposed that ROP fund the reopening of the ROP theater and/or that ROP take over the operations and retain Flix Brewhouse as the operator.

10. It is clear that Flix Brewhouse cannot, and will not, pay the rents and other charges due to ROP as of the petition date and that the Debtor is liable to ROP on his Guaranty Agreement in the amount of $3,750,801.80.

**WHEREFORE, PREMISES CONSIDERED**, ROP Artcraft LLC respectfully requests that this Court enter an order denying the Debtor's Objection to Proof of Claim No. 11 of ROP Artcraft LLC, allowing ROP Artcraft LLC a general unsecured claim in the amount of $3,750,801.80, as well as award it such further relief to which it may show itself justly entitled.

Dated this the 16th day of April, 2021.

Respectfully submitted,

**GORDON DAVIS JOHNSON & SHANE P.C.**
4695 N. Mesa Street
El Paso, Texas 79912
(915) 545-1133
(915) 545-4433 (Fax)

By: /s/ Harrel L. Davis
Harrel L. Davis III
State Bar No. 05567560
hdavis@eplawyers.com
Attorneys for ROP Artcraft LLC

**CERTIFICATE OF SERVICE**

I certify that on the 16th day of April, 2021, a true and correct copy of the above and foregoing was served upon the following parties via electronic means as listed on the court's ECF noticing system or by regular first-class mail:

Mark C. Taylor
Waller Landsen Dortch & Davis, LLP
100 Congress Ave., Ste. 1800
Austin, Texas 78704
Mark.Taylor@wallerlaw.com

Michael G. Colvard
Trustee
Martin & Drought, PC
112 E. Pecan St., Ste. 1616
San Antonio, Texas 78205
mcolvard@mdtlaw.com

/s/ Harrel L. Davis
Harrel L. Davis

{9632.41/HDAV/06813668.1}

# EXHIBIT G-2

## PERSONAL GUARANTY

The undersigned, ALLAN L. REAGAN, whose address is 585 River Run, Leander, Texas 78641, in consideration of the leasing of the leased premises described in that certain Lease dated the 5th day of February, 2018, between ROP ARTCRAFT LLC a Texas Limited Liability Company, as Landlord, and Flix Brewhouse Texas V LLC, a Texas limited liability company, as Tenant ("Lease"), does hereby covenant and agree as follows:

The undersigned does hereby guarantee the full, faithful and timely payment and performance by Tenant of all Tenant's covenants and obligations under or pursuant to the Lease, to the extent applicable until the earlier to occur of: (1) the 36th month of the Base Term of the Lease, or (2) the delivery by Tenant's parent of independently audited financial statements showing net equity of at least $35 million, excluding for this purpose the effects upon net equity as of the balance sheet date of (a) capitalized real estate leases and (b) equity-based incentive compensation, provides such equity incentives, if exercised, remain on Tenant's balance sheet, and further subject to no current even of default or prior "persistent default," defined as three or more instances over the Term wherein Landlord has declared Tenant in default under the Lease (the "Guaranty Term"). If Tenant shall default at any time in the payment of any rent or the performance of any covenant or obligation applicable to the Guaranty Term (the "Guaranteed Obligations"), then the undersigned, at its expense, shall on demand of Landlord fully and promptly, and well and truly, pay all such Guaranteed Obligations, and in addition shall on Landlord's demand pay to Landlord any and all sums due to Landlord, including (without limitation) all interest on past due Guaranteed Obligations and all expenses (including reasonable attorneys' fees and litigation costs), that may arise in consequence of any such default by Tenant. The undersigned hereby waives all requirements of notice of the acceptance of this Guaranty and all requirements of notice of breach or nonperformance by Tenant.

A.  The obligations of the undersigned hereunder are independent of the obligations of Tenant. A separate action or actions may, at Landlord's option, be brought and prosecuted against the undersigned, whether or not any action is first or subsequently brought against Tenant, or whether or not Tenant is joined in any such action, and the undersigned may be joined in any action or proceeding commenced by Landlord against Tenant arising out of, in connection with or based upon the Lease. The undersigned waives any right to require Landlord to proceed against Tenant or pursue any other remedy in Landlord's power whatsoever, any right to complain of delay in the enforcement of Landlord's rights under the Lease, and any demand by Landlord and/or prior action by Landlord of any nature whatsoever against Tenant, or otherwise.

B.  This Guaranty shall remain and continue in full force and effect and shall not be discharged in whole or in part notwithstanding (whether prior or subsequent to the execution hereof) any alteration, renewal, extension, modification, amendment or assignment of, or subletting, concession, franchising, licensing or permitting under the Lease, except as set forth in Paragraph F below. The undersigned hereby waives notice of any of the foregoing and agrees that the liability of the undersigned hereunder shall be based upon the obligations of Tenant set forth in the Lease as the same may be altered, renewed, extended, modified, amended or assigned. For

{9632.41/TJOH/06568368.19}

Landlord ___/A/___   205   Tenant ___

EXHIBIT 1

the purpose of this Guaranty and the obligations and liabilities of the undersigned hereunder, "Tenant" shall be deemed to include any and all concessionaires, licensees, franchisees, department operators, assignees, subtenants, permittees or others directly or indirectly operating or conducting a business in or from the leased premises, as fully as if any of the same were the named Tenant under the Lease.

C. The undersigned's obligations hereunder shall remain fully binding although Landlord may have waived one or more defaults by Tenant, extended the time of performance by Tenant, released, returned or misapplied other collateral at any time given as security for Tenant's obligations (including other guaranties) and/or released Tenant from the performance of its obligations under the Lease.

D. This Guaranty shall remain in full force and effect notwithstanding the institution by or against Tenant, of bankruptcy, reorganization, readjustment, receivership or insolvency proceedings of any nature, or the disaffirmance of the Lease in any such proceedings or otherwise.

E. Provided that Tenant is not in default in the payment of Guaranteed Obligations upon the last day of the Guaranty Term, Landlord irrevocably agrees that this Guaranty shall terminate in its entirety. In the event that Tenant consummates a Permitted Transfer pursuant to Section 11.4 of the Lease, and provided that an acceptable replacement Guaranty is entered into by a Substitute Guarantor which meets the Release Threshold as established in Section 11.5 of the Lease, this Guaranty shall terminate with respect to all liability under the Lease except to the extent, if any, of Guaranteed Obligations which remain unpaid for the period ending on the day before the effective date of the Permitted Transfer.

F. This Guaranty shall be applicable to and binding upon the heirs, executors, administrators, representatives, successors and assigns of Landlord, Tenant and the undersigned. Landlord may, without notice, assign this Guaranty in whole or in part.

E. In the event that Landlord should institute any suit against the undersigned for violation of or to enforce any of the covenants or conditions of this Guaranty or to enforce any right of Landlord hereunder, or should the undersigned institute any suit against Landlord arising out of or in connection with this Guaranty, or should either party institute a suit against the other for a declaration of rights hereunder, or should either party intervene in any suit in which the other is a party to enforce or protect its interest or rights hereunder, the prevailing party in any such suit shall be entitled to the fees of its attorney(s) in the reasonable amount thereof, to be determined by the court and taxed as a part of the costs therein.

F. It is understood that the Lease and the Exhibits, Addenda and Rider(s), if any, attached thereto, are intended to set forth all the covenants, promises, agreements, conditions and understandings between Landlord and Tenant, and it hereby is expressly acknowledged and agreed that this Guaranty is not executed in reliance on any covenants, promises, agreements, conditions or understandings between Landlord and Tenant, or made to or with the undersigned, either oral or written, other than those contained in the Lease and the Exhibits, Addenda and Rider(s) attached thereto. All capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Lease.

{9632.41/TJOH/0656836̸8.19}

Landlord _____    206    Tenant _____

G. The execution of this Guaranty prior to execution of the Lease shall not invalidate this Guaranty or lessen the obligations of Guarantor(s) hereunder.

H. This Guaranty is made pursuant to, and shall be interpreted and applied in accordance with, the laws of the State of Texas and Guarantor irrevocably submits himself to the jurisdiction of the state and federal courts located in Texas for any action involving the enforcement of this Guaranty and further irrevocably waives: (1) any objection he has to the venue of such an action in the state of Texas, and (2) the right to trial by jury in such an action.

I. The undersigned shall furnish to Landlord financial statements and other information reasonably requested by Landlord reflecting Guarantor's current financial condition, within 30 days after the expiration of each calendar year during the Guaranty Term.

IN WITNESS WHEREOF, the undersigned has executed this Guaranty this 5th day of February, 2018.

WITNESSES:

_____     _____
                              ALLAN L. REAGAN

_____     _____
                              Social Security Number

## ACKNOWLEDGMENT

STATE OF _____ )
                  ) ss.
COUNTY OF _____ )

On this /4th day of February, 2018, before me personally appeared Allan L. Reagan, to me known to be the person described in and who executed the foregoing instrument and acknowledged before me that they executed the same as their free act and deed.

KELLY FAHRENKRUG
NOTARY PUBLIC
STATE OF TEXAS
COMM. EXP. 5/3/21
NOTARY ID 13111363-1

Sign Name: _____
Print Name: Kelly Fahrenkrug
Notary Public, State of Texas
County of Williamson
My Commission Expires: 5/3/21
Acting in the County of Williamson

{9632.41/TJOH/06568368.19}

Landlord __AF__          207          Tenant _____