# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

IN RE:                                          Case No. 20-11161-TMD
                                                Chapter 11
ALLAN L. REAGAN,

    DEBTOR.

_____/

## COMERICA BANK'S RESPONSE TO DEBTOR'S
## OBJECTION TO PROOF OF CLAIM NO. 14 OF COMERICA BANK

    Comerica Bank responds to Debtor's Objection to Proof of Claim No. 14 of Comerica Bank ("Objection") as follows:

### Background

    1.    On October 22, 2020 ("Petition Date"), Allan L. Reagan ("Debtor") filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 101, et seq. (as amended, "Bankruptcy Code").

    2.    Without limitation, Debtor is indebted to Comerica Bank under four guaranties (each a "Guaranty" and collectively, the "Guaranties"), dated January 20, 2015, December 30, 2016, March 14, 2019, and March 13, 2020, respectively.  The Guaranties are attached as **Exhibit A**.

    3.    Under the U.S. Small Business Administration Unconditional Guaranties dated January 20, 2015 and December 30, 2016, Debtor guaranteed payment of all amounts due under a $2,833,000 promissory note dated January 20, 2015 ("Flix Indiana SBA Note") by Flix Brewhouse Indiana LLC ("Flix Indiana") and a $2,195,000 promissory note dated December 30, 2016 ("Flix NM SBA Note") by Flix Brewhouse NM LLC ("Flix NM").

4.      Under the Guaranty dated March 14, 2019, Debtor guaranteed payment of all existing and future obligations to Comerica Bank of Flix Brewhouse LLC ("Flix Brewhouse").

5.      Under the Guaranty dated March 13, 2020, Debtor guaranteed payment of all existing and future obligations to Comerica Bank of Flix Brewhouse Holdco LLC ("Flix Holdco"). Debtor's total obligation under this Guaranty is limited to fifty percent (50%) of the aggregate unpaid principal amount of the indebtedness owed by Flix Holdco to Comerica Bank plus all accrued and unpaid interest thereon and all costs and expenses of collecting the same, including, without limit, reasonable attorney fees.

6.      As of the Petition Date, without limitation, the obligations guaranteed by Debtor include the following:

(a) Principal of $6,406,291.71 and interest of $62,099.02 under an Installment Note dated March 13, 2020 in the original principal amount of $6,607,143 ("Flix Holdco Note");

(b) Principal of $604,363.22 and interest of $963.45 under an Installment Note dated March 14, 2019 in the original principal amount of $775,579 ("Flix Brewhouse Note");

(c) Principal of $1,589,598.96 and interest of $4,455.84 under the Flix NM SBA Note; and

(d) Principal of $1,428,153.90 and interest of $4,102.34 under the Flix Indiana SBA Note.

7.      As of the Petition Date, and contrary to the Objection, the following defaults existed under the loan documents: (a) Flix Holdco failed to make the monthly payments due under the Flix Holdco Note on September 1, 2020[1] and October 1, 2020; (b) Flix Holdco failed to comply with the financial covenants identified in Sections 3(a), (b) and (c) of the Letter Agreement dated

---

[1] A partial September 2020 payment was made.

March 13, 2020 for the fiscal quarter ending June 30, 2020; (c) Debtor becoming the subject of a voluntary proceeding in bankruptcy; and (d) under the loan documents between Comerica Bank and Flix Brewhouse, Flix NM, and Flix Indiana, a default on any other loan with Comerica Bank (i.e. the Flix Holdco Note) is a default under the respective borrower's obligations so the prepetition defaults under the Flix Holdco Note were prepetition defaults under Flix Brewhouse Note, Flix NM SBA Note, and the Flix Indiana SBA Note.  See **Exhibit B – December 21, 2020 and November 2, 2020 Default Letters.**

8.      Furthermore, the following post-petition defaults occurred and are continuing under the loan documents: (a) Holdco failed to make principal and interest payments due on the first of November and December 2020, and the first of January, February, March, and April 2021; (b) Flix Brewhouse failed to make principal and interest payments due on the first of January, February, March, and April 2021; and (c) each of Flix NM and Flix Indiana failed to make principal and interest payments due on the first of February, March, and April 2021 under their respective SBA Notes.[2]  See Exhibit B.

9.      Under each of the Guaranties, Debtor waived his right (if any) to any notice of default, demand for payment, or notice of acceleration. See Exhibit A.

10.     As of the Petition Date, Debtor was indebted to Comerica Bank in an amount not less than $6,865,833.07 as evidenced by Comerica Bank's amended Proof of Claim No. 14-3 ("Proof of Claim").

---

[2]   The U.S. Small Business Administration is currently making monthly payments directly to Comerica Bank in the amount of $9,000 each on behalf of Flix NM and Flix Indiana for each of the SBA Notes, which is a partial payment that covers monthly interest and a portion of principal.

11.    On March 22, 2021, Debtor filed his Objection to Comerica Bank's Proof of Claim alleging that the obligations described above were current as of the Petition Date, and as a result, the Proof of Claim is contingent or in the alternative should be estimated.

12.    As shown in this response, Debtor's Objection is factually inaccurate and fails to present evidence which rebuts the Proof of Claim's presumption of validity.

## <u>Argument</u>

13.    11 U.S.C. § 502(a) states that a proof of claim filed under 11 U.S.C. § 501 is deemed allowed unless an objection is made by a party in interest.  Fed. R. Bankr. P. 3001(f) provides that a proof of claim executed and filed in accordance with the bankruptcy rules shall constitute prima facie evidence of the validity and amount of the claim.  A debtor seeking disallowance of a proof of claim must present evidence which rebuts the presumption of prima facie validity. *In re Congress, LLC*, 529 B.R. 213, 219 (Bankr. W.D. Tex. 2015); see *also Cavu/Rock Props. Project I, LLC v. Gold Star Constr., Inc*., 516 B.R. 414, 422 (Bankr. W.D. Tex. 2014). The burden then shifts back to the claimant to produce evidence meeting the objection and establishing its claim. A claimant must establish its claim by a preponderance of the evidence. The evidentiary presumption notwithstanding, the burden of persuasion remains with the claimant.

14.    A debt is noncontingent if all events giving rise to liability occurred prepetition. Only if a liability relies on some future extrinsic event which may never occur will the debt be held to be contingent. See *In re All Media Properties, Inc*., 5 B.R. 126, 133 (Bankr. S.D. Tex. 1980), aff'd, 646 F.2d 193 (5th Cir. 1981); 2 L. King, Collier on Bankruptcy P 109.06[2][b] (15th ed. rev. 1997); *In re Knight*, 55 F.3d at 236; *In re Nicholes*, 184 B.R. 82, 88 (9th Cir. B.A.P. 1995); *Brockenbrough v. Commissioner*, 61 B.R. 685, 686-687 (W.D. Va. 1986).

15.     Here, Debtor's threadbare assertion that the "underlying debt was current" is not only factually inaccurate, but without supportive evidence is insufficient to shift the burden of proof to Comerica Bank.

16.     Additionally, Debtor's statement that guaranty obligations are typically considered contingent "particularly when the underlying obligation has not matured or accelerated" is not supported by the case law identified in Debtor's Objection.  To the contrary, *In re Clore*, 547 B.R. 915 (Bankr. C.D. Ill. 2016); *In re Kreisler*, 407 B.R. 321 (Bankr. N.D. Ill. 2009); and *Matter of Fox*, 64 B.R. 148 (Bankr. S.D.N.Y. 1986) are consistent with and support Comerica Bank's position that a guarantor's obligation to pay is triggered upon a default by the primary obligor and a creditor's claim is noncontingent if such triggering event occurred prepetition.

17.     As illustrated above, the liabilities owed to Comerica Bank that are guaranteed by Debtor were in default prepetition and continue to be in default post-petition.

18.     Debtor's obligations under the Guaranties are not reliant upon some future extrinsic event which may never occur because the defaults, which give rise to Debtor's obligations under the Guaranties, occurred prepetition.

19.     The obligation of Debtor to pay existed as of the Petition Date, no outside event is necessary to bring the obligation into existence, but rather the obligation may only be extinguished by payment. This does not render such debt contingent.  See *In re All Media Properties, Inc.*, 5 B.R. at 133.

20.     As such, Comerica Bank's Proof of Claim is not contingent, estimation for purposes of allowance is not applicable, and the Proof of Claim must be allowed as filed.

**RELIEF REQUESTED**

Comerica Bank respectfully requests that Debtor's Objection be denied and that the Court grant such other and further relief as it deems just.

**BODMAN PLC**

By: */s/  Robert J. Diehl, Jr.*
Robert J. Diehl, Jr. (P31264)
*Admitted Pro Hac Vice*
Attorneys for Comerica Bank
1901 St. Antoine Street
6th Floor at Ford Field
Detroit, Michigan 48226
Phone: (313) 393-7597
Email: rdiehl@bodmanlaw.com

Dated: April 21, 2021

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document has been served upon all parties that are registered or otherwise entitled to receive electronic notice through the Court's ECF system on April 21, 2021.

*/s/  Robert J. Diehl, Jr.*
Robert J. Diehl, Jr. (P31264)

# EXHIBIT A





**U.S. Small Business Administration**

## UNCONDITIONAL GUARANTEE

| SBA Loan # | 72243850-01 |
|---|---|
| SBA Loan Name | Flix Brewhouse Indiana LLC |
| Guarantor | Allan L. Reagan |
| Borrower | FLIX BREWHOUSE INDIANA LLC, an Indiana limited liability company |
| Lender | Comerica Bank |
| Date | January 20, 2015 |
| Note Amount | $2,833,000.00 |

1.  GUARANTEE:

Guarantor unconditionally guarantees payment to Lender of all amounts owing under the Note. This Guarantee remains in effect until the Note is paid in full. Guarantor must pay all amounts due under the Note when Lender makes written demand upon Guarantor. Lender is not required to seek payment from any other source before demanding payment from Guarantor.

2.  NOTE:

The "Note" is the promissory note dated January 20, 2015, in the principal amount of Two Million Eight Hundred Thirty Three Thousand and No/100 Dollars, from Borrower to Lender. It includes any assumption, renewal, substitution, or replacement of the Note, and multiple notes under a line of credit.

3.  DEFINITIONS:

"Collateral" means any property taken as security for payment of the Note or any guarantee of the Note.
"Loan" means the loan evidenced by the Note.
"Loan Documents" means the documents related to the Loan signed by Borrower, Guarantor or any other guarantor, or anyone who pledges Collateral.
"SBA" means the Small Business Administration, an Agency of the United States of America.

SBA Form 148 (10/98) Previous editions obsolete.

Page 1/5

4.    LENDER'S GENERAL POWERS:

Lender may take any of the following actions at any time, without notice, without Guarantor's consent, and without making demand upon Guarantor:

A. Modify the terms of the Note or any other Loan Document except to increase the amounts due under the Note;
B. Refrain from taking any action on the Note, the Collateral, or any guarantee;
C. Release any Borrower or any guarantor of the Note;
D. Compromise or settle with the Borrower or any guarantor of the Note;
E. Substitute or release any of the Collateral, whether or not Lender receives anything in return;
F. Foreclose upon or otherwise obtain, and dispose of, any Collateral at public or private sale, with or without advertisement;
G. Bid or buy at any sale of Collateral by Lender or any other lienholder, at any price Lender chooses; and
H. Exercise any rights it has, including those in the Note and other Loan Documents.

These actions will not release or reduce the obligations of Guarantor or create any rights or claims against Lender.

5.    FEDERAL LAW:

When SBA is the holder, the Note and this Guarantee will be construed and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents , giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Guarantee, Guarantor may not claim or assert any local or state law against SBA to deny any obligation, defeat any claim of SBA, or preempt federal law.

6.    RIGHTS, NOTICES, AND DEFENSES THAT GUARANTOR WAIVES:

To the extent permitted by law,

A. Guarantor waives all rights to:
    1)  Require presentment, protest, or demand upon Borrower;
    2)  Redeem any Collateral before or after Lender disposes of it;
    3)  Have any disposition of Collateral advertised; and
    4)  Require a valuation of Collateral before or after Lender disposes of it.

B. Guarantor waives any notice of:
    1)  Any default under the Note;
    2)  Presentment, dishonor, protest, or demand;
    3)  Execution of the Note;
    4)  Any action or inaction on the Note or Collateral, such as disbursements, payment, nonpayment, acceleration, intent to accelerate, assignment, collection activity, and incurring enforcement expenses;
    5)  Any change in the financial condition or business operations of Borrower or any guarantor;
    6)  Any changes in the terms of the Note or other Loan Documents, except increases in the amounts due under the Note; and
    7)  The time or place of any sale or other disposition of Collateral.

C. Guarantor waives defenses based upon any claim that:
    1)  Lender failed to obtain any guarantee;
    2)  Lender failed to obtain, perfect, or maintain a security interest in any property offered or taken as Collateral;
    3)  Lender or others improperly valued or inspected the Collateral;
    4)  The Collateral changed in value, or was neglected, lost, destroyed, or underinsured;



SBA Form 148 (10/98) Previous editions obsolete.

5) Lender impaired the Collateral;
6) Lender did not dispose of any of the Collateral;
7) Lender did not conduct a commercially reasonable sale;
8) Lender did not obtain the fair market value of the Collateral;
9) Lender did not make or perfect a claim upon the death or disability of Borrower or any guarantor of the Note;
10) The financial condition of Borrower or any guarantor was overstated or has adversely changed;
11) Lender made errors or omissions in Loan Documents or administration of the Loan;
12) Lender did not seek payment from the Borrower, any other guarantors, or any Collateral before demanding payment from Guarantor:
13) Lender impaired Guarantor's suretyship rights;
14) Lender modified the Note terms, other than to increase amounts due under the Note. If Lender modifies the Note to increase the amounts due under the Note without Guarantor's consent, Guarantor will not be liable for the increased amounts and related interest and expenses, but remains liable for all other amounts;
15) Borrower has avoided liability on the Note; or
16) Lender has taken an action allowed under the Note, this Guarantee, or other Loan Documents.

7.  DUTIES AS TO COLLATERAL:

Guarantor will preserve the Collateral pledged by Guarantor to secure this Guarantee. Lender has no duty to preserve or dispose of any Collateral.

8.  SUCCESSORS AND ASSIGNS:

Under this Guarantee, Guarantor includes heirs and successors, and Lender includes its successors and assigns.

9.  GENERAL PROVISIONS:

A. ENFORCEMENT EXPENSES. Guarantor promises to pay all expenses Lender incurs to enforce this Guarantee, including, but not limited to, attorney's fees and costs.
B. SBA NOT A CO-GUARANTOR. Guarantor's liability will continue even if SBA pays Lender. SBA is not a co-guarantor with Guarantor. Guarantor has no right of contribution from SBA.
C. SUBROGATION RIGHTS. Guarantor has no subrogation rights as to the Note or the Collateral until the Note is paid in full.
D. JOINT AND SEVERAL LIABILITY. All individuals and entities signing as Guarantor are jointly and severally liable.
E. DOCUMENT SIGNING. Guarantor must sign all documents necessary at any time to comply with the Loan Documents and to enable Lender to acquire, perfect, or maintain Lender's liens on Collateral.
F. FINANCIAL STATEMENTS. Guarantor must give Lender financial statements as Lender requires.
G. LENDER'S RIGHTS CUMULATIVE, NOT WAIVED. Lender may exercise any of its rights separately or together, as many times as it chooses. Lender may delay or forgo enforcing any of its rights without losing or impairing any of them.
H. ORAL STATEMENTS NOT BINDING. Guarantor may not use an oral statement to contradict or alter the written terms of the Note or this Guarantee, or to raise a defense to this Guarantee.
I. SEVERABILITY. If any part of this Guarantee is found to be unenforceable, all other parts will remain in effect.
J. CONSIDERATION. The consideration for this Guarantee is the Loan or any accommodation by Lender as to the Loan.



SBA Form 148 (10/98) Previous editions obsolete.

10.    STATE-SPECIFIC PROVISIONS:

NONE.



SBA Form 148 (10/98) Previous editions obsolete.

11.    GUARANTOR ACKNOWLEDGMENT OF TERMS.

Guarantor acknowledges that Guarantor has read and understands the significance of all terms of the Note and this Guarantee, including all waivers.

12.    GUARANTOR NAME(S) AND SIGNATURE(S):

By signing below, each individual or entity becomes obligated as Guarantor under this Guarantee.

_____
Allan L. Reagan



**U.S. Small Business Administration**

# UNCONDITIONAL GUARANTEE

| SBA Loan # | 90128550-08 |
|---|---|
| SBA Loan Name | Flix Brewhouse NM LLC |
| Guarantor | Allan L. Reagan |
| Borrower | FLIX BREWHOUSE NM LLC, a New Mexico limited liability company |
| Lender | Comerica Bank |
| Date | December 30, 2016 |
| Note Amount | $2,195,000.00 |

1.     GUARANTEE:

Guarantor unconditionally guarantees payment to Lender of all amounts owing under the Note. This Guarantee remains in effect until the Note is paid in full. Guarantor must pay all amounts due under the Note when Lender makes written demand upon Guarantor. Lender is not required to seek payment from any other source before demanding payment from Guarantor.

2.     NOTE:

The "Note" is the promissory note dated December ___, 2016, in the principal amount of Two Million One Hundred Ninety Five Thousand and No/100 Dollars, from Borrower to Lender. It includes any assumption, renewal, substitution, or replacement of the Note, and multiple notes under a line of credit.

3.     DEFINITIONS:

"Collateral" means any property taken as security for payment of the Note or any guarantee of the Note.
"Loan" means the loan evidenced by the Note.
"Loan Documents" means the documents related to the Loan signed by Borrower, Guarantor or any other guarantor, or anyone who pledges Collateral.
"SBA" means the Small Business Administration, an Agency of the United States of America.

SBA Form 148 (10/98) Previous editions obsolete.

4.    LENDER'S GENERAL POWERS:

Lender may take any of the following actions at any time, without notice, without Guarantor's consent, and without making demand upon Guarantor:

A. Modify the terms of the Note or any other Loan Document except to increase the amounts due under the Note;
B. Refrain from taking any action on the Note, the Collateral, or any guarantee;
C. Release any Borrower or any guarantor of the Note;
D. Compromise or settle with the Borrower or any guarantor of the Note;
E. Substitute or release any of the Collateral, whether or not Lender receives anything in return;
F. Foreclose upon or otherwise obtain, and dispose of, any Collateral at public or private sale, with or without advertisement;
G. Bid or buy at any sale of Collateral by Lender or any other lienholder, at any price Lender chooses; and
H. Exercise any rights it has, including those in the Note and other Loan Documents.

These actions will not release or reduce the obligations of Guarantor or create any rights or claims against Lender.

5.    FEDERAL LAW:

When SBA is the holder, the Note and this Guarantee will be construed and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents , giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Guarantee, Guarantor may not claim or assert any local or state law against SBA to deny any obligation, defeat any claim of SBA, or preempt federal law.

6.    RIGHTS, NOTICES, AND DEFENSES THAT GUARANTOR WAIVES:

To the extent permitted by law,

A.  Guarantor waives all rights to:
     1) Require presentment, protest, or demand upon Borrower;
     2) Redeem any Collateral before or after Lender disposes of it;
     3) Have any disposition of Collateral advertised; and
     4) Require a valuation of Collateral before or after Lender disposes of it.

B.  Guarantor waives any notice of:
     1) Any default under the Note;
     2) Presentment, dishonor, protest, or demand;
     3) Execution of the Note;
     4) Any action or inaction on the Note or Collateral, such as disbursements, payment, nonpayment, acceleration, intent to accelerate, assignment, collection activity, and incurring enforcement expenses;
     5) Any change in the financial condition or business operations of Borrower or any guarantor;
     6) Any changes in the terms of the Note or other Loan Documents, except increases in the amounts due under the Note; and
     7) The time or place of any sale or other disposition of Collateral.

C.  Guarantor waives defenses based upon any claim that:
     1) Lender failed to obtain any guarantee;
     2) Lender failed to obtain, perfect, or maintain a security interest in any property offered or taken as Collateral;
     3) Lender or others improperly valued or inspected the Collateral;
     4) The Collateral changed in value, or was neglected, lost, destroyed, or underinsured;

SBA Form 148 (10/98) Previous editions obsolete.

5) Lender impaired the Collateral;
6) Lender did not dispose of any of the Collateral;
7) Lender did not conduct a commercially reasonable sale;
8) Lender did not obtain the fair market value of the Collateral;
9) Lender did not make or perfect a claim upon the death or disability of Borrower or any guarantor of the Note;
10) The financial condition of Borrower or any guarantor was overstated or has adversely changed;
11) Lender made errors or omissions in Loan Documents or administration of the Loan;
12) Lender did not seek payment from the Borrower, any other guarantors, or any Collateral before demanding payment from Guarantor:
13) Lender impaired Guarantor's suretyship rights;
14) Lender modified the Note terms, other than to increase amounts due under the Note. If Lender modifies the Note to increase the amounts due under the Note without Guarantor's consent, Guarantor will not be liable for the increased amounts and related interest and expenses, but remains liable for all other amounts;
15) Borrower has avoided liability on the Note; or
16) Lender has taken an action allowed under the Note, this Guarantee, or other Loan Documents.

7.    DUTIES AS TO COLLATERAL:

Guarantor will preserve the Collateral pledged by Guarantor to secure this Guarantee. Lender has no duty to preserve or dispose of any Collateral.

8.    SUCCESSORS AND ASSIGNS:

Under this Guarantee, Guarantor includes heirs and successors, and Lender includes its successors and assigns.

9.    GENERAL PROVISIONS:

A. ENFORCEMENT EXPENSES. Guarantor promises to pay all expenses Lender incurs to enforce this Guarantee, including, but not limited to, attorney's fees and costs.
B. SBA NOT A CO-GUARANTOR. Guarantor's liability will continue even if SBA pays Lender. SBA is not a co-guarantor with Guarantor. Guarantor has no right of contribution from SBA.
C. SUBROGATION RIGHTS. Guarantor has no subrogation rights as to the Note or the Collateral until the Note is paid in full.
D. JOINT AND SEVERAL LIABILITY. All individuals and entities signing as Guarantor are jointly and severally liable.
E. DOCUMENT SIGNING. Guarantor must sign all documents necessary at any time to comply with the Loan Documents and to enable Lender to acquire, perfect, or maintain Lender's liens on Collateral.
F. FINANCIAL STATEMENTS. Guarantor must give Lender financial statements as Lender requires.
G. LENDER'S RIGHTS CUMULATIVE, NOT WAIVED. Lender may exercise any of its rights separately or together, as many times as it chooses. Lender may delay or forgo enforcing any of its rights without losing or impairing any of them.
H. ORAL STATEMENTS NOT BINDING. Guarantor may not use an oral statement to contradict or alter the written terms of the Note or this Guarantee, or to raise a defense to this Guarantee.
I. SEVERABILITY. If any part of this Guarantee is found to be unenforceable, all other parts will remain in effect.
J. CONSIDERATION. The consideration for this Guarantee is the Loan or any accommodation by Lender as to the Loan.

10.    STATE-SPECIFIC PROVISIONS:

NONE.

11. GUARANTOR ACKNOWLEDGMENT OF TERMS.

Guarantor acknowledges that Guarantor has read and understands the significance of all terms of the Note and this Guarantee, including all waivers.

12. GUARANTOR NAME(S) AND SIGNATURE(S):

By signing below, each individual or entity becomes obligated as Guarantor under this Guarantee.



Allan L. Reagan



# GUARANTY

The undersigned, for value received, unconditionally and absolutely guarantee(s) to Comerica Bank ("Bank"), and to the Bank's successors and assigns, payment when due, whether by stated maturity, demand, acceleration or otherwise, of all existing and future Indebtedness (as hereinafter defined) to the Bank of **Flix Brewhouse LLC, a Texas Limited Liability Company**, or any successor in interest, including, without limit, any debtor-in-possession or trustee in bankruptcy which succeeds to the interest of this party or person (jointly and severally the "Borrower"). "Indebtedness" shall mean any and all indebtedness, obligations or liabilities of the Borrower to the Bank, howsoever arising, evidenced or incurred, whether absolute or contingent, direct or indirect, voluntary or involuntary, liquidated or unliquidated, joint or several, and whether or not known to the undersigned at the time of this Guaranty or at the time any future indebtedness is incurred, and whether originally payable to the Bank or to a third party and subsequently acquired by the Bank, including, without limitation, (a) any and all direct indebtedness of the Borrower to the Bank, including indebtedness evidenced by any and all promissory notes; (b) any and all obligations or liabilities of the Borrower to the Bank arising under any guaranty where the Borrower has guaranteed the payment of indebtedness owing to the Bank from a third party; (c) any and all obligations or liabilities of the Borrower to the Bank arising from applications or agreements for the issuance of letters of credit; (d) late charges, loan fees or charges and overdraft indebtedness; (e) any agreement to indemnify the Bank for environmental liability or to clean up hazardous waste; (f) any and all obligations, obligations or liabilities for which the Borrower would otherwise be liable to the Bank were it not for the invalidity, irregularity or unenforceability of them by reason of any bankruptcy, insolvency or other law or order of any kind, or for any other reason, including, without limit, liability for interest and attorneys' fees on, or in connection with, any of the Indebtedness from and after the filing by or against the Borrower of a bankruptcy petition, whether an involuntary or voluntary bankruptcy case, including, without limitation, all attorneys' fees and costs incurred in connection with motions for relief from stay, cash collateral motions, nondischargeability motions, preference liability motions, fraudulent conveyance liability motions, fraudulent transfer liability motions and all other motions brought by Borrower, the undersigned, Bank or third parties in any way relating to Bank's rights with respect to such Borrower, the undersigned, or third party and/or affecting any collateral securing any obligation owed to Bank by Borrower, the undersigned, or any third party, probate proceedings, on appeal or otherwise; (g) any and all amendments, modifications, renewals and/or extensions of any of the above, including, without limit, amendments, modifications, renewals and/or extensions which are evidenced by new or additional instruments, documents or agreements; and (h) all costs of collecting Indebtedness, including, without limit, attorneys' fees and costs. Any reference in this Guaranty to attorneys' fees shall be deemed a reference to reasonable fees, charges, costs and expenses of counsel and paralegals, whether inside or outside counsel is used, and whether or not a suit or action is instituted, and to court costs if a suit or action is instituted, and whether attorneys' fees or court costs are incurred at the trial court level, on appeal, in a bankruptcy, administrative or probate proceeding or otherwise.  All costs and expenses shall be payable immediately by the undersigned when incurred by the Bank, without demand, and until paid shall bear interest at the highest per annum rate applicable to any of the Indebtedness, but not in excess of the maximum rate permitted by law.  Notwithstanding anything to the contrary in this Guaranty, the term "Indebtedness" shall not include any Excluded Swap Obligation (as hereinafter defined). "Excluded Swap Obligation" shall mean any obligation of Borrower to Bank with respect to a "swap," as defined in Section 1a(47) of the Commodity Exchange Act ("CEA"), if and to the extent that the undersigned's guaranteeing of such swap obligation, or the undersigned's granting of a security interest or lien to secure such swap obligation, is or becomes illegal under the CEA, or any rule, regulation or order of the Commodity Futures Trading Commission (or the application or official interpretation of any thereof), by virtue of the undersigned's failure for any reason to constitute an "eligible contract participant," as defined in Section 1a(18) of the CEA and the regulations thereunder, at the time such guarantee or such security interest grant becomes effective with respect to such swap obligation. If any such swap obligation arises under a master agreement governing more than one swap, the foregoing exclusion shall apply only to those swap obligations that are attributable to swaps in respect of which the undersigned's guaranteeing of, or the undersigned's granting of a security interest or lien to secure, such swaps is or becomes illegal.

1.  **LIMITATION:**  The total obligation of the undersigned under this Guaranty is UNLIMITED unless specifically limited in the Additional Provisions of this Guaranty, and this obligation (whether unlimited or limited to the extent specified in the Additional Provisions) shall include, IN ADDITION TO any limited amount of principal guaranteed, all interest on all Indebtedness, and all costs and expenses of any kind incurred by the Bank in collection efforts against the Borrower and/or the undersigned or otherwise incurred by the Bank in any way relating to the Indebtedness or this Guaranty, including without limit attorneys' fees.  With respect to the limitation, if any, stated in the Additional Provisions below on the amount of principal guaranteed under this Guaranty, the undersigned agree(s) that (a) this limitation shall not be a limitation on the amount of Borrower's Indebtedness to the Bank; (b) any payments by the undersigned shall not reduce the maximum liability of the undersigned under this Guaranty unless written notice to that effect is actually received by the Bank at, or prior to, the time of the payment; and (c) the liability of the undersigned to the Bank shall at all times be deemed to be the aggregate liability of the undersigned under this Guaranty and any other guaranties previously or subsequently given to the Bank by the undersigned and not expressly revoked, modified or invalidated in writing.

2.  **NATURE OF GUARANTY:**  This is a continuing Guaranty of payment and not of collection and remains effective whether the Indebtedness is from time to time reduced and later increased or entirely extinguished and later reincurred.  This Guaranty shall remain effective with respect to successive transactions which shall either continue the Indebtedness, increase or decrease it, or from time to time create new Indebtedness after all or any prior Indebtedness has been satisfied, until this Guaranty is terminated in the manner and to the extent provided above.

The undersigned acknowledge(s) and agree(s) that the liabilities created by this Guaranty are direct and are not conditioned upon pursuit by the Bank of any remedy the Bank may have against the Borrower or any person or any security.  No invalidity, irregularity or unenforceability of any part or all of the Indebtedness or any documents evidencing the same, by reason of any bankruptcy, insolvency or other law or order of any kind or for any reason, and no defense or setoff available at any time to the Borrower, shall impair, affect or be a defense or setoff to the obligations of the undersigned under this Guaranty.

The undersigned deliver(s) this Guaranty based solely on the undersigned's independent investigation of (or decision not to investigate) the financial condition of Borrower and is (are) not relying on any information furnished by the Bank. The undersigned assume(s) full responsibility for obtaining any further information concerning the Borrower's financial condition, the status of the Indebtedness or any other matter which the undersigned may deem necessary or appropriate now or later. The undersigned waive(s) any duty on the part of the Bank, and agree(s) that it is not relying upon nor expecting the Bank to disclose to the undersigned any fact now or later known by the Bank, whether relating to the operations or condition of the Borrower, the existence, liabilities or financial condition of any co-guarantor of the Indebtedness, the occurrence of any default with respect to the Indebtedness, or otherwise, notwithstanding any effect these facts may have upon the undersigned's risk under this Guaranty or the undersigned's rights against the Borrower. The undersigned knowingly accept(s) the full range of risk encompassed in this Guaranty, which risk includes, without limit, the possibility that Borrower may incur Indebtedness to the Bank after the financial condition of the Borrower, or the Borrower's ability to pay debts as they mature, has deteriorated. The undersigned represent(s) and warrant(s) that: (a) the Bank has made no representation to the undersigned as to the creditworthiness of the Borrower; and (b) the undersigned has (have) established adequate means of obtaining from the Borrower on a continuing basis financial and other information pertaining to the Borrower's financial condition. The undersigned agree(s) to keep adequately informed of any facts, events or circumstances which might in any way affect the risks of the undersigned under this Guaranty.

3.  **APPLICATION OF PAYMENTS:**  The undersigned authorize(s) the Bank, either before or after termination of this Guaranty, without notice to or demand on the undersigned and without affecting the undersigned's liability under this Guaranty, from time to time to: (a) apply any security and direct the order or manner of sale of it; (b) release or substitute any one or more of the endorsers or any other guarantors of the Indebtedness; and (c) apply payments received by the Bank from the Borrower to any indebtedness of the Borrower to the Bank, in such order as the Bank shall determine in its sole discretion, whether or not this indebtedness is covered by this Guaranty, and the undersigned waive(s) any provision of law regarding application of payments which specifies otherwise.  The undersigned agree(s) to provide to the Bank copies of the undersigned's financial statements upon request.

4.  **SECURITY/SUBORDINATION:**  The undersigned pledge(s), assign(s) and grant(s) to the Bank a security interest in and lien upon and the right of setoff as to any and all property of the undersigned now or later in the possession of the Bank. The undersigned further assign(s) to the Bank as collateral for the obligations of the undersigned under this Guaranty all claims of any nature that the undersigned now or later has (have) against the Borrower (other than any claim under a deed of trust or mortgage covering California real property) with full right on the part of the Bank, in its own name or in the name of the undersigned, to collect and enforce these claims.  The undersigned subordinate(s) any claim of any nature that the undersigned now or later has (have) against the Borrower to and in favor of all Indebtedness and agree(s) not to accept payment or satisfaction of any claim that the undersigned now or later may have against the Borrower without the prior written consent of the Bank. Should any payment, distribution, security, or proceeds, be received by the undersigned upon or with respect to any claim that the undersigned  now or may later have against the Borrower, the undersigned shall immediately deliver the same to the Bank in the form received (except for endorsement or assignment by the undersigned where required by the Bank) for application on the Indebtedness, whether matured or unmatured, and until delivered the same shall be held in trust by the undersigned as the property of the Bank. The undersigned agree(s) that no security now or later held by the Bank for the payment of any Indebtedness, whether from the Borrower, any guarantor, or otherwise, and whether in the nature of a security interest, pledge, lien, assignment, setoff, suretyship, guaranty, indemnity, insurance or otherwise, shall affect in any manner the unconditional obligation of the undersigned under this Guaranty, and the Bank, in its sole discretion, without notice to the undersigned, may release, exchange, enforce and otherwise deal with any security without affecting in any manner the unconditional obligation of the undersigned under this Guaranty.  The undersigned acknowledge(s) and agree(s) that the Bank has no obligation to acquire or perfect any lien on or security interest in any asset(s), whether real or personal, to secure payment of the Indebtedness, and the undersigned is (are) not relying upon any asset(s) in which the Bank has or may have a lien or security interest for payment of the Indebtedness.

5.  **OTHER GUARANTORS:**  If any Indebtedness is guaranteed by two or more guarantors, the obligation of the undersigned shall be several and also joint, each with all and also each with any one or more of the others, and may be enforced at the option of the Bank against each severally, any two or more jointly, or some severally and some jointly. The Bank, in its sole discretion, may release any one or more of the guarantors for any consideration which it deems adequate, and may fail or elect not to prove a claim against the estate of any bankrupt, insolvent, incompetent or deceased guarantor; and after that, without notice to any guarantor, the Bank may extend or renew any or all Indebtedness and may permit the Borrower to incur additional Indebtedness, without affecting in any manner the unconditional obligation of the remaining guarantor(s).  The undersigned acknowledge(s) that the effectiveness of this Guaranty is not conditioned on any or all of the indebtedness being guaranteed by anyone else. This action by the Bank shall not, however, be deemed to affect any right to contribution which may exist among the guarantors.

6.  **TERMINATION:**  Any of the undersigned may terminate their obligation under this Guaranty as to future Indebtedness (except as provided below) by (and only by) delivering written notice of termination to an officer of the Bank and receiving from an officer of the Bank written acknowledgment of delivery; provided, however, the termination shall not be effective until the opening of business on the fifth (5th) day ("effective date") following written acknowledgment of delivery.  Any termination shall not affect in any way the unconditional obligations of the remaining guarantor(s), whether or not the termination is known to the remaining guarantor(s).  Any termination shall not affect in any way the unconditional obligations of the terminating guarantor(s) as to any Indebtedness existing at the effective date of termination or any Indebtedness created after that pursuant to any commitment or agreement of the Bank or pursuant to any Borrower loan with the Bank existing at the effective date of termination (whether advances or readvances by the Bank after the effective date of termination are optional or obligatory), or any modifications, extensions or renewals of any of this Indebtedness, whether in whole or in part, and as to all of this Indebtedness and modifications, extensions or renewals of it, this Guaranty shall continue effective until the same shall have been fully paid.  The Bank has no duty to give notice of termination by any guarantor(s) to any remaining guarantor(s).  The undersigned shall indemnify the Bank against all claims, damages, costs and expenses, including, without limit, attorney fees, incurred by the Bank in connection with any suit, claim or action against the Bank arising out of any

modification or termination of a Borrower loan or any refusal by the Bank to extend additional credit in connection with the termination of this Guaranty.

7.  **REINSTATEMENT:** Notwithstanding any prior revocation, termination, surrender or discharge of this Guaranty (or of any lien, pledge or security interest securing this Guaranty) in whole or in part, the effectiveness of this Guaranty, and of all liens, pledges and security interests securing this Guaranty, shall automatically continue or be reinstated, as the case may be, in the event that any payment received or credit given by the Bank in respect of the Indebtedness is returned, disgorged or rescinded as a preference, impermissible setoff, fraudulent conveyance, diversion of trust funds or otherwise under any applicable state or federal law, including, without limitation, laws pertaining to bankruptcy or insolvency, in which case this Guaranty, and all liens, pledges and security interests securing this Guaranty, shall be enforceable against the undersigned as if the returned, disgorged or rescinded payment or credit had not been received or given by the Bank, and whether or not the Bank relied upon this payment or credit or changed its position as a consequence of it.  In the event of continuation or reinstatement of this Guaranty and the liens, pledges and security interests securing it, the undersigned agree(s) upon demand by the Bank, to execute and deliver to the Bank those documents which the Bank determines are appropriate to further evidence (in the public records or otherwise) this continuation or reinstatement, although the failure of the undersigned to do so shall not affect in any way the reinstatement or continuation.  If the undersigned do(es) not execute and deliver to the Bank upon demand such documents, the Bank and each Bank officer is irrevocably appointed (which appointment is coupled with an interest) the true and lawful attorney of the undersigned (with full power of substitution) to execute and deliver such documents in the name and on behalf of the undersigned.

8.  **WAIVERS:**  The undersigned, to the extent not expressly prohibited by applicable law,  waive(s) any right to require the Bank to: (a) proceed against any person or property, including, without limit, the Borrower; (b) give notice of the terms, time and place of any public or private sale of personal property security held from the Borrower or any other person, or otherwise comply with the provisions of Section 9-611 or 9-621 of the Texas or other applicable Uniform Commercial Code, as the same may be amended, revised or replaced from time to time; or (c) pursue any other remedy in the Bank's power.  The undersigned waive(s) notice of acceptance of this Guaranty and presentment, demand, protest, notice of protest, dishonor, notice of dishonor, notice of default, notice of intent to accelerate or demand payment or notice of acceleration of any Indebtedness, any and all other notices to which the undersigned might otherwise be entitled, and diligence in collecting any Indebtedness, and all rights of a guarantor under Rule 31, Texas Rules of Civil Procedure, Chapter 43 of the Texas Civil Practice and Remedies Code, or Section 17.001 of the Texas Civil Practice and Remedies Code, and agree(s) that the Bank may, once or any number of times, modify the terms of any Indebtedness, compromise, extend, increase, accelerate, renew or forbear to enforce payment of any or all Indebtedness, or permit the Borrower to incur additional Indebtedness, all without notice to the undersigned and without affecting in any manner the unconditional obligation of the undersigned under this Guaranty.

The undersigned unconditionally and irrevocably waive(s) each and every defense and setoff of any nature which, under principles of guaranty or otherwise, would operate to impair or diminish in any way the obligation of the undersigned under this Guaranty, and acknowledge(s) that each such waiver is by this reference incorporated into each security agreement, collateral assignment, pledge and/or other document from the undersigned now or later securing this Guaranty and/or the Indebtedness, and acknowledge(s) that as of the date of this Guaranty no such defense or setoff exists. The undersigned acknowledge(s) that the effectiveness of this Guaranty is subject to no conditions of any kind.

9.  **WAIVER OF SUBROGATION:**  The undersigned waive(s) any and all rights (whether by subrogation, indemnity, reimbursement, or otherwise) to recover from the Borrower any amounts paid by the undersigned pursuant to this Guaranty until the Indebtedness has been irrevocably paid and discharged in full.

10.  **SALE/ASSIGNMENT:**  The undersigned acknowledge(s) that the Bank has the right to sell, assign, transfer, negotiate, or grant participations in all or any part of the Indebtedness and any related obligations, including, without limit, this Guaranty, without notice to the undersigned.  In connection with that right, the Bank may disclose any documents and information which the Bank now has or later acquires relating to the undersigned, this Guaranty or the Borrower in connection with such sale, assignment, transfer, negotiation, or grant, whether furnished by the Borrower, the undersigned or otherwise. The undersigned further agree(s) that the Bank may disclose these documents and information to the Borrower. The undersigned agree(s) that the Bank may provide information relating to this Guaranty or relating to the undersigned to the Bank's parent, affiliates, subsidiaries and service providers.

11.  **GENERAL:**  This Guaranty constitutes the entire agreement of the undersigned and the Bank with respect to the subject matter of this Guaranty.  No waiver, consent, modification or change of the terms of the Guaranty shall bind any of the undersigned or the Bank unless in writing and signed by the waiving party or an authorized officer of the waiving party, and then this waiver, consent, modification or change shall be effective only in the specific instance and for the specific purpose given.  This Guaranty shall inure to the benefit of the Bank and its successors and assigns and shall be binding on the undersigned and the undersigned's heirs, legal representatives, successors and assigns including, without limit, any debtor in possession or trustee in bankruptcy for any of the undersigned.  The undersigned has (have) knowingly and voluntarily entered into this Guaranty in good faith for the purpose of inducing the Bank to extend credit or make other financial accommodations to the Borrower, and the undersigned acknowledge(s) that the terms of this Guaranty are reasonable. If any provision of this Guaranty is unenforceable in whole or in part for any reason, the remaining provisions shall continue to be effective.  THIS GUARANTY SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE INTERNAL LAWS OF THE STATE OF **TEXAS**, WITHOUT REGARD TO CONFLICT OF LAWS PRINCIPLES.

12.  **HEADINGS:**  Headings in this Guaranty are included for the convenience of reference only and shall not constitute a part of this  Guaranty for any purpose.

13.  **ADDITIONAL PROVISIONS** (if any):



GUARANTY_CMA                                                    - 3 -
72109-7-0-S

None

14. JURY TRIAL WAIVER:  THE UNDERSIGNED AND BANK, BY ACCEPTANCE OF THIS GUARANTY, ACKNOWLEDGE THAT THE RIGHT TO TRIAL BY JURY IS A CONSTITUTIONAL ONE, BUT THAT IT MAY BE WAIVED UNDER CERTAIN CIRCUMSTANCES. TO THE EXTENT PERMITTED BY LAW, EACH PARTY, AFTER CONSULTING (OR HAVING HAD THE OPPORTUNITY TO CONSULT) WITH COUNSEL OF THEIR CHOICE, KNOWINGLY AND VOLUNTARILY, AND FOR THEIR MUTUAL BENEFIT WAIVES ANY RIGHT TO TRIAL BY JURY IN THE EVENT OF LITIGATION REGARDING THE PERFORMANCE OR ENFORCEMENT OF, OR IN ANY WAY RELATED TO, THIS GUARANTY OR THE INDEBTEDNESS.

15. THIS WRITTEN LOAN AGREEMENT (AS DEFINED BY SECTION 26.02 OF THE TEXAS BUSINESS AND COMMERCE CODE) REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.  THERE ARE NO UNWRITTEN OR ORAL AGREEMENTS BETWEEN THE PARTIES.

IN WITNESS WHEREOF, the undersigned has (have) signed this Guaranty on _September 22, 2015_.

WITNESS:                                          GUARANTOR:

_____                          _____
Print Name: _____                         (Signature)

                                                  Allan L. Reagan
                                                  (Print Name)
                                                  GUARANTOR'S ADDRESS

                                                  Ste Q11
                                                  Round Rock, TX 78681

STATE OF TEXAS              §
                           §
COUNTY OF _Williamson_      §

This instrument was acknowledged before me on _September 22, 2015_
by _Allan L. Reagan_.

My Commission Expires:                    _____
_____                  Notary Public in and for the State of Texas

SHARON JONES
Notary Public, State of Texas
My Commission Expires
October 01, 2017



# GUARANTY

The undersigned, for value received, unconditionally and absolutely guarantee(s) to Comerica Bank ("Bank"), and to the Bank's successors and assigns, payment when due, whether by stated maturity, demand, acceleration or otherwise, of all existing and future Indebtedness (as hereinafter defined) to the Bank of Flix Brewhouse Holdco LLC, or any successor in interest, including, without limit, any debtor-in-possession or trustee in bankruptcy which succeeds to the interest of this party or person (jointly and severally the "Borrower"). "Indebtedness" shall mean any and all indebtedness, obligations or liabilities of the Borrower to the Bank, howsoever arising, evidenced or incurred, whether absolute or contingent, direct or indirect, voluntary or involuntary, liquidated or unliquidated, joint or several, and whether or not known to the undersigned at the time of this Guaranty or at the time any future indebtedness is incurred, and whether originally payable to the Bank or to a third party and subsequently acquired by the Bank, including, without limitation, (a) any and all direct indebtedness of the Borrower to the Bank, including indebtedness evidenced by any and all promissory notes; (b) any and all obligations or liabilities of the Borrower to the Bank arising under any guaranty where the Borrower has guaranteed the payment of indebtedness owing to the Bank from a third party; (c) any and all obligations or liabilities of the Borrower to the Bank arising from applications or agreements for the issuance of letters of credit; (d) late charges, loan fees or charges and overdraft indebtedness; (e) any agreement to indemnify the Bank for environmental liability or to clean up hazardous waste; (f) any and all indebtedness, obligations or liabilities for which the Borrower would otherwise be liable to the Bank were it not for the invalidity, irregularity or unenforceability of them by reason of any bankruptcy, insolvency or other law or order of any kind, or for any other reason, including, without limit, liability for interest and attorneys' fees on, or in connection with, any of the Indebtedness from and after the filing by or against the Borrower of a bankruptcy petition, whether an involuntary or voluntary bankruptcy case, including, without limitation, all attorneys' fees and costs incurred in connection with motions for relief from stay, cash collateral motions, nondischargeability motions, preference liability motions, fraudulent conveyance liability motions, fraudulent transfer liability motions and all other motions brought by Borrower, the undersigned, Bank or third parties in any way relating to Bank's rights with respect to such Borrower, the undersigned, or third party and/or affecting any collateral securing any obligation owed to Bank by Borrower, the undersigned, or any third party, probate proceedings, on appeal or otherwise; (g) any and all amendments, modifications, renewals and/or extensions of any of the above, including, without limit, amendments, modifications, renewals and/or extensions which are evidenced by new or additional instruments, documents or agreements; and (h) all costs of collecting Indebtedness, including, without limit, attorneys' fees and costs. Any reference in this Guaranty to attorneys' fees shall be deemed a reference to reasonable fees, charges, costs and expenses of counsel and paralegals, whether inside or outside counsel is used, and whether or not a suit or action is instituted, and to court costs if a suit or action is instituted, and whether attorneys' fees or court costs are incurred at the trial court level, on appeal, in a bankruptcy, administrative or probate proceeding or otherwise.  All costs and expenses shall be payable immediately by the undersigned when incurred by the Bank, without demand, and until paid shall bear interest at the highest per annum rate applicable to any of the Indebtedness, but not in excess of the maximum rate permitted by law. Notwithstanding anything to the contrary in this Guaranty, the term "Indebtedness" shall not include any Excluded Swap Obligation (as hereinafter defined). "Excluded Swap Obligation" shall mean any obligation of Borrower to Bank with respect to a "swap," as defined in Section 1a(47) of the Commodity Exchange Act ("CEA"), if and to the extent that the undersigned's guaranteeing of such swap obligation, or the undersigned's granting of a security interest or lien to secure such swap obligation, is or becomes illegal under the CEA, or any rule, regulation or order of the Commodity Futures Trading Commission (or the application or official interpretation of any thereof), by virtue of the undersigned's failure for any reason to constitute an "eligible contract participant," as defined in Section 1a(18) of the CEA and the regulations thereunder, at the time such guarantee or such security interest grant becomes effective with respect to such swap obligation.  If any such swap obligation arises under a master agreement governing more than one swap, the foregoing exclusion shall apply only to those swap obligations that are attributable to swaps in respect of which the undersigned's guaranteeing of, or the undersigned's granting of a security interest or lien to secure, such swaps is or becomes illegal.

1. **LIMITATION:** The total obligation of the undersigned under this Guaranty is **UNLIMITED** unless specifically limited in the Additional Provisions of this Guaranty, and this obligation (whether unlimited or limited to the extent specified in the Additional Provisions) shall include, IN ADDITION TO any limited amount of principal guaranteed, all interest on all Indebtedness, and all costs and expenses of any kind incurred by the Bank in collection efforts against the Borrower and/or the undersigned or otherwise incurred by the Bank in any way relating to the Indebtedness or this Guaranty, including without limit attorneys' fees. With respect to the limitation, if any, stated in the Additional Provisions below on the amount of principal guaranteed under this Guaranty, the undersigned agree(s) that (a) this limitation shall not be a limitation on the amount of Borrower's Indebtedness to the Bank; (b) any payments by the undersigned shall not reduce the maximum liability of the undersigned under this Guaranty unless written notice to that effect is actually received by the Bank at, or prior to, the time of the payment; and (c) the liability of the undersigned to the Bank shall at all times be deemed to be the aggregate liability of the undersigned under this Guaranty and any other guaranties previously or subsequently given to the Bank by the undersigned and not expressly revoked, modified or invalidated in writing.

2. **NATURE OF GUARANTY:** This is a continuing Guaranty of payment and not of collection and remains effective whether the Indebtedness is from time to time reduced and later increased or entirely extinguished and later reincurred. This Guaranty shall remain effective with respect to successive transactions which shall either continue the Indebtedness, increase or decrease it, or from time to time create new Indebtedness after all or any prior Indebtedness has been satisfied, until this Guaranty is terminated in the manner and to the extent provided above.

   The undersigned acknowledge(s) and agree(s) that the liabilities created by this Guaranty are direct and are not conditioned upon pursuit by the Bank of any remedy the Bank may have against the Borrower or any person or any security. No invalidity, irregularity or unenforceability of any part or all of the Indebtedness or any documents evidencing the same, by reason of any bankruptcy, insolvency or other law or order of any kind or for any reason, and no defense or setoff available at any time to the Borrower, shall impair, affect or be a defense or setoff to the obligations of the undersigned under this Guaranty.

   The undersigned deliver(s) this Guaranty based solely on the undersigned's independent investigation of (or decision not to investigate) the financial condition of Borrower and is (are) not relying on any information furnished by the Bank. The undersigned assume(s) full responsibility for obtaining any further information concerning the Borrower's financial condition, the status of the Indebtedness or any other matter which the undersigned may deem necessary or appropriate now or later. The undersigned waive(s) any duty on the part of the Bank, and agree(s) that it is not relying upon nor expecting the Bank to disclose to the undersigned any fact now or later known by the Bank, whether relating to the operations or condition of the Borrower, the existence, liabilities or financial condition of any co-guarantor of the Indebtedness, the occurrence of any default with respect to the Indebtedness, or otherwise, notwithstanding any effect these facts may have upon the undersigned's risk under this Guaranty or the undersigned's rights against the Borrower. The undersigned knowingly accept(s) the full range of risk encompassed in this Guaranty, which risk includes, without limit, the possibility that Borrower may incur Indebtedness to the Bank after the financial condition of the Borrower, or the Borrower's ability to pay debts as they mature, has deteriorated. The undersigned represent(s) and warrant(s) that: (a) the Bank has made no representation to the undersigned as to the creditworthiness of the Borrower; and (b) the undersigned has (have) established adequate means of obtaining from the Borrower on a continuing basis financial and other information pertaining to the Borrower's financial condition. The undersigned agree(s) to keep adequately informed of any facts, events or circumstances which might in any way affect the risks of the undersigned under this Guaranty.

3. **APPLICATION OF PAYMENTS:** The undersigned authorize(s) the Bank, either before or after termination of this Guaranty, without notice to or demand on the undersigned and without affecting the undersigned's liability under this Guaranty, from time to time to: (a) apply any security and direct the order or manner of sale of it; (b) release or substitute any one or more of the endorsers or any other

guarantors of the Indebtedness; and (c) apply payments received by the Bank from the Borrower to any indebtedness of the Borrower to the Bank, in such order as the Bank shall determine in its sole discretion, whether or not this indebtedness is covered by this Guaranty, and the undersigned waive(s) any provision of law regarding application of payments which specifies otherwise.  The undersigned agree(s) to provide to the Bank copies of the undersigned's financial statements upon request.

4.      **SECURITY/SUBORDINATION:**  The undersigned pledge(s), assign(s) and grant(s) to the Bank a security interest in and lien upon and the right of setoff as to any and all property of the undersigned now or later in the possession of the Bank. The undersigned further assign(s) to the Bank as collateral for the obligations of the undersigned under this Guaranty all claims of any nature that the undersigned now or later has (have) against the Borrower (other than any claim under a deed of trust or mortgage covering California real property) with full right on the part of the Bank, in its own name or in the name of the undersigned, to collect and enforce these claims.  The undersigned subordinate(s) any claim of any nature that the undersigned now or later has (have) against the Borrower to and in favor of all Indebtedness and agree(s) not to accept payment or satisfaction of any claim that the undersigned now or later may have against the Borrower without the prior written consent of the Bank. Should any payment, distribution, security, or proceeds, be received by the undersigned upon or with respect to any claim that the undersigned  now or may later have against the Borrower, the undersigned shall immediately deliver the same to the Bank in the form received (except for endorsement or assignment by the undersigned where required by the Bank) for application on the Indebtedness, whether matured or unmatured, and until delivered the same shall be held in trust by the undersigned as the property of the Bank. The undersigned agree(s) that no security now or later held by the Bank for the payment of any Indebtedness, whether from the Borrower, any guarantor, or otherwise, and whether in the nature of a security interest, pledge, lien, assignment, setoff, suretyship, guaranty, indemnity, insurance or otherwise, shall affect in any manner the unconditional obligation of the undersigned under this Guaranty, and the Bank, in its sole discretion, without notice to the undersigned, may release, exchange, enforce and otherwise deal with any security without affecting in any manner the unconditional obligation of the undersigned under this Guaranty. The undersigned acknowledge(s) and agree(s) that the Bank has no obligation to acquire or perfect any lien on or security interest in any asset(s), whether real or personal, to secure payment of the Indebtedness, and the undersigned is (are) not relying upon any asset(s) in which the Bank has or may have a lien or security interest for payment of the Indebtedness.

5.      **OTHER GUARANTORS**:  If any Indebtedness is guaranteed by two or more guarantors, the obligation of the undersigned shall be several and also joint, each with all and also each with any one or more of the others, and may be enforced at the option of the Bank against each severally, any two or more jointly, or some severally and some jointly.  The Bank, in its sole discretion, may release any one or more of the guarantors for any consideration which it deems adequate, and may fail or elect not to prove a claim against the estate of any bankrupt, insolvent, incompetent or deceased guarantor; and after that, without notice to any guarantor, the Bank may extend or renew any or all Indebtedness and may permit the Borrower to incur additional Indebtedness, without affecting in any manner the unconditional obligation of the remaining guarantor(s).   The undersigned acknowledge(s) that the effectiveness of this Guaranty is not conditioned on any or all of the indebtedness being guaranteed by anyone else. This action by the Bank shall not, however, be deemed to affect any right to contribution which may exist among the guarantors.

6.      **TERMINATION**:  Any of the undersigned may terminate their obligation under this Guaranty as to future Indebtedness (except as provided below) by (and only by) delivering written notice of termination to an officer of the Bank and receiving from an officer of the Bank written acknowledgment of delivery; provided, however, the termination shall not be effective until the opening of business on the fifth (5th) day ("effective date") following written acknowledgment of delivery.  Any termination shall not affect in any way the unconditional obligations of the remaining guarantor(s), whether or not the termination is known to the remaining guarantor(s).   Any termination shall not affect in any way the unconditional obligations of the terminating guarantor(s) as to any Indebtedness existing at the effective date of

termination or any Indebtedness created after that pursuant to any commitment or agreement of the Bank or pursuant to any Borrower loan with the Bank existing at the effective date of termination (whether advances or readvances by the Bank after the effective date of termination are optional or obligatory), or any modifications, extensions or renewals of any of this Indebtedness, whether in whole or in part, and as to all of this Indebtedness and modifications, extensions or renewals of it, this Guaranty shall continue effective until the same shall have been fully paid.  The Bank has no duty to give notice of termination by any guarantor(s) to any remaining guarantor(s).  The undersigned shall indemnify the Bank against all claims, damages, costs and expenses, including, without limit, attorney fees, incurred by the Bank in connection with any suit, claim or action against the Bank arising out of any modification or termination of a Borrower loan or any refusal by the Bank to extend additional credit in connection with the termination of this Guaranty.

7.  **REINSTATEMENT:**  Notwithstanding any prior revocation, termination, surrender or discharge of this Guaranty (or of any lien, pledge or security interest securing this Guaranty) in whole or in part, the effectiveness of this Guaranty, and of all liens, pledges and security interests securing this Guaranty, shall automatically continue or be reinstated, as the case may be, in the event that any payment received or credit given by the Bank in respect of the Indebtedness is returned, disgorged or rescinded as a preference, impermissible setoff, fraudulent conveyance, diversion of trust funds or otherwise under any applicable state or federal law, including, without limitation, laws pertaining to bankruptcy or insolvency, in which case this Guaranty, and all liens, pledges and security interests securing this Guaranty, shall be enforceable against the undersigned as if the returned, disgorged or rescinded payment or credit had not been received or given by the Bank, and whether or not the Bank relied upon this payment or credit or changed its position as a consequence of it.  In the event of continuation or reinstatement of this Guaranty and the liens, pledges and security interests securing it, the undersigned agree(s) upon demand by the Bank, to execute and deliver to the Bank those documents which the Bank determines are appropriate to further evidence (in the public records or otherwise) this continuation or reinstatement, although the failure of the undersigned to do so shall not affect in any way the reinstatement or continuation.  If the undersigned do(es) not execute and deliver to the Bank upon demand such documents, the Bank and each Bank officer is irrevocably appointed (which appointment is coupled with an interest) the true and lawful attorney of the undersigned (with full power of substitution) to execute and deliver such documents in the name and on behalf of the undersigned.

8.  **WAIVERS:**  The undersigned, to the extent not expressly prohibited by applicable law,  waive(s) any right to require the Bank to: (a) proceed against any person or property, including, without limit, the Borrower; (b) give notice of the terms, time and place of any public or private sale of personal property security held from the Borrower or any other person, or otherwise comply with the provisions of Section 9-611 or 9-621 of the Texas or other applicable Uniform Commercial Code, as the same may be amended, revised or replaced from time to time; or (c) pursue any other remedy in the Bank's power. The undersigned waive(s) notice of acceptance of this Guaranty and presentment, demand, protest, notice of protest, dishonor, notice of dishonor, notice of default, notice of intent to accelerate or demand payment or notice of acceleration of any Indebtedness, any and all other notices to which the undersigned might otherwise be entitled, and diligence in collecting any Indebtedness, and all rights of a guarantor under Rule 31, Texas Rules of Civil Procedure, Chapter 43 of the Texas Civil Practice and Remedies Code, or Section 17.001 of the Texas Civil Practice and Remedies Code, and agree(s) that the Bank may, once or any number of times, modify the terms of any Indebtedness, compromise, extend, increase, accelerate, renew or forbear to enforce payment of any or all Indebtedness, or permit the Borrower to incur additional Indebtedness, all without notice to the undersigned and without affecting in any manner the unconditional obligation of the undersigned under this Guaranty.

The undersigned unconditionally and irrevocably waive(s) each and every defense and setoff of any nature which, under principles of guaranty or otherwise, would operate to impair or diminish in any way the obligation of the undersigned under this Guaranty, and acknowledge(s) that each such waiver is by this reference incorporated into each security agreement, collateral assignment, pledge and/or other document from the undersigned now or later securing this Guaranty and/or the Indebtedness, and

acknowledge(s) that as of the date of this Guaranty no such defense or setoff exists. The undersigned acknowledge(s) that the effectiveness of this Guaranty is subject to no conditions of any kind.

9.   **WAIVER OF SUBROGATION**:  The undersigned waive(s) any and all rights (whether by subrogation, indemnity, reimbursement, or otherwise) to recover from the Borrower any amounts paid by the undersigned pursuant to this Guaranty until the Indebtedness has been irrevocably paid and discharged in full.

10.   **SALE/ASSIGNMENT**:  The undersigned acknowledge(s) that the Bank has the right to sell, assign, transfer, negotiate, or grant participations in all or any part of the Indebtedness and any related obligations, including, without limit, this Guaranty, without notice to the undersigned.  In connection with that right, the Bank may disclose any documents and information which the Bank now has or later acquires relating to the undersigned, this Guaranty or the Borrower in connection with such sale, assignment, transfer, negotiation, or grant, whether furnished by the Borrower, the undersigned or otherwise. The undersigned further agree(s) that the Bank may disclose these documents and information to the Borrower. The undersigned agree(s) that the Bank may provide information relating to this Guaranty or relating to the undersigned to the Bank's parent, affiliates, subsidiaries and service providers.

11.   **GENERAL**:  This Guaranty constitutes the entire agreement of the undersigned and the Bank with respect to the subject matter of this Guaranty.  No waiver, consent, modification or change of the terms of the Guaranty shall bind any of the undersigned or the Bank unless in writing and signed by the waiving party or an authorized officer of the waiving party, and then this waiver, consent, modification or change shall be effective only in the specific instance and for the specific purpose given.  This Guaranty shall inure to the benefit of the Bank and its successors and assigns and shall be binding on the undersigned and the undersigned's heirs, legal representatives, successors and assigns including, without limit, any debtor in possession or trustee in bankruptcy for any of the undersigned.  The undersigned has (have) knowingly and voluntarily entered into this Guaranty in good faith for the purpose of inducing the Bank to extend credit or make other financial accommodations to the Borrower, and the undersigned acknowledge(s) that the terms of this Guaranty are reasonable.  If any provision of this Guaranty is unenforceable in whole or in part for any reason, the remaining provisions shall continue to be effective.  THIS GUARANTY SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE INTERNAL LAWS OF THE STATE OF TEXAS, WITHOUT REGARD TO CONFLICT OF LAWS PRINCIPLES.

12.   **HEADINGS**:  Headings in this Guaranty are included for the convenience of reference only and shall not constitute a part of this Guaranty for any purpose.

13.   **ADDITIONAL PROVISIONS**:  Notwithstanding anything to the contrary set forth in this Guaranty, the total obligation of the undersigned hereunder shall not exceed an amount equal to fifty percent (50%) of the aggregate unpaid principal amount of the Indebtedness outstanding at the time Bank makes demand for payment upon the undersigned under this Guaranty, without giving effect to any payments or collections received by Bank from Borrower, any other guarantor(s), or from any other person or party, and whether from direct payment or remittance, set off, collection of or foreclosure upon collateral, or otherwise, plus all accrued and unpaid interest thereon and all costs and expenses of collecting the same, including, without limit, reasonable attorney fees.

14.   **JURY TRIAL WAIVER:  THE UNDERSIGNED AND BANK, BY ACCEPTANCE OF THIS GUARANTY, ACKNOWLEDGE THAT THE RIGHT TO TRIAL BY JURY IS A CONSTITUTIONAL ONE, BUT THAT IT MAY BE WAIVED UNDER CERTAIN CIRCUMSTANCES.  TO THE EXTENT PERMITTED BY LAW, EACH PARTY, AFTER CONSULTING (OR HAVING HAD THE OPPORTUNITY TO CONSULT) WITH COUNSEL OF THEIR CHOICE, KNOWINGLY AND VOLUNTARILY, AND FOR THEIR MUTUAL BENEFIT WAIVES ANY RIGHT TO TRIAL BY JURY IN**

THE EVENT OF LITIGATION REGARDING THE PERFORMANCE OR ENFORCEMENT OF, OR IN ANY WAY RELATED TO, THIS GUARANTY OR THE INDEBTEDNESS.

15.     THIS WRITTEN LOAN AGREEMENT (AS DEFINED BY SECTION 26.02 OF THE TEXAS BUSINESS AND COMMERCE CODE) REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.  THERE ARE NO UNWRITTEN OR ORAL AGREEMENTS BETWEEN THE PARTIES.

[Remainder of Page Intentionally Left Blank]

IN WITNESS WHEREOF, the undersigned has (have) signed this Guaranty on March 13, 2020.

WITNESS:                                                  GUARANTOR:

_____                      By: _____
                                                             Allan L. Reagan
Print Name _Alan L. Reagan_


                                                         GUARANTOR'S ADDRESS

KELLY FAHRENKRUG
NOTARY PUBLIC
STATE OF TEXAS
COMM. EXP. 5/3/21
NOTARY ID 13111363-1

                                                         2000 South IH 35, Suite Q-11
                                                         STREET ADDRESS

                                                         Round Rock, Texas 78681-6938
                                                         CITY     STATE     ZIP CODE


STATE OF TEXAS              §
                           §
COUNTY OF _Williamson_     §

    This instrument was acknowledged before me on March _13_, 2020, by Allan L. Reagan.


My Commission Expires: _5/3/21_              _____
                                              Notary Public in and for the State of Texas


[Signature Page to Guaranty (Allan L. Reagan) (16610211)]

# EXHIBIT B

Lesley B. Higginbotham
Vice President
P. O. Box 650282, MC 6209
Dallas, TX  75265-0282
Office:      713-507-7995
lbhigginbotham@comerica.com

**ComericA Bank**
comerica.com

November 2, 2020

Flix Brewhouse Holdco LLC
Attn:  Allan Reagan, President
2000 South IH 35, Suite Q-11
Round Rock, Texas 78681

Re:    FINANCING ARRANGEMENTS AMONG COMERICA BANK ("BANK"), FLIX
       BREWHOUSE HOLDCO LLC ("BORROWER"), AND ALLAN REAGAN, FLIX
       ENTERTAINMENT, LLC, FLIX BREWHOUSE IOWA LLC, FLIX BREWHOUSE
       INDIANA LLC, FLIX BREWHOUSE NM LLC, FLIX BREWHOUSE LLC
       (COLLECTIVELY, "GUARANTORS" AND EACH, A "GUARANTOR")

Dear Mr. Reagan:

Please refer to any and all documents, instruments, and agreements executed in connection with the
financing arrangements from Bank to Borrower (collectively, the "Loan Documents").  All amounts
due from Borrower to Bank, whether now or in the future, contingent, fixed, primary or secondary,
including, but not limited to, principal, interest, inside and outside counsel fees, audit fees, costs,
expenses, and any other charges provided for in the Loan Documents are identified collectively as
the "Liabilities."  For purposes of this letter, "Loan Documents" do not include documents executed
by Borrower in its capacity as guarantor of any other obligations, and "Liabilities" do not include
Borrower's obligations to Bank in its capacity as guarantor.  All capitalized terms not defined in this
letter shall have the meanings set forth in the Loan Documents.

As of November 2, 2020, the Liabilities include, but are not limited to, the following:

| Loans (note amount and date) | Principal | Interest |
|---|---|---|
| **Installment Note** ($6,607,143; March 13, 2020) | $6,406,291.71 | $69,418.30 |

These amounts are exclusive of interest accruing after November 2, 2020, late fees, any letter of
credit reimbursement obligations, obligations with respect to credit cards or treasury management
services, and costs and expenses (including, but not limited to, inside and outside counsel fees).

Without limitation, Borrower is in default under the Loan Documents: (a) for failure to make the
monthly payments due September 1, 2020 and October 1, 2020; (b) for failure to comply with the
financial covenants identified in Sections 3(a), (b) and (c) of the Letter Agreement dated March
13, 2020 for the fiscal quarter ending June 30, 2020; and (c) because Guarantor, Allan Reagan is
the subject of a voluntary proceeding in bankruptcy.  Other defaults may exist.

Due to the defaults, Borrower may not make payment on any debt that is subordinated to Bank, including without limitation, any payments to Flix Entertainment LLC.

Bank's acceptance of any payment of the Liabilities after the date of this letter is not a waiver of any defaults.

Bank anticipates that discussions addressing the Liabilities may take place in the future. During the course of such discussions, Bank, Borrower and Guarantors may touch upon and possibly reach a preliminary understanding on one or more issues prior to concluding negotiations. Notwithstanding this fact and absent an express written waiver by Bank, Bank will not be bound by an agreement on any individual issues unless and until an agreement is reached and reduced to writing and signed by Borrower and Guarantors and Bank.

Bank reserves the right to invoke the default rate of interest as of the first date of default, and all of its other rights and remedies under the Loan Documents and applicable law, any or all of which rights and remedies may be exercised by Bank without further notice.  Bank's failure to exercise any such right or remedy shall not be construed as a waiver or modification of those rights or as an offer of forbearance.  Nothing in this letter shall constitute a waiver of any default.  Bank's forbearance from taking action to collect the Liabilities is from day to day in Bank's sole discretion.

Very truly yours,

COMERICA BANK

cc:    Robert J. Diehl, Jr.
       Flix Entertainment LLC
       Flix Brewhouse LLC
       Flix Brewhouse Indiana LLC
       Flix Brewhouse NM LLC
       Flix Brewhouse Iowa LLC

**Comerica Bank**
comerica.com

Lesley B. Higginbotham
Vice President
P. O. Box 650282, MC 6209
Dallas, TX  75265-0282
Office:      713-507-7995
lbhigginbotham@comerica.com

VIA EMAIL DELIVERY ONLY TO
allan.reagan@flixbrewhouse.com

December 21, 2020

Flix Brewhouse Holdco LLC
Flix Brewhouse LLC
Flix Brewhouse Indiana LLC
Flix Brewhouse NM LLC
Attn:  Allan L. Reagan
2000 South IH 35, Suite Q-11
Round Rock, Texas 78681

Re:     FINANCING ARRANGEMENTS AMONG COMERICA BANK ("BANK"), FLIX BREWHOUSE HOLDCO LLC ("HOLDCO"), FLIX BREWHOUSE LLC ("FLIX BREWHOUSE"), FLIX BREWHOUSE INDIANA LLC ("FLIX INDIANA"), AND FLIX BREWHOUSE NM LLC ("FLIX NM" AND COLLECTIVELY WITH HOLDCO, FLIX BREWHOUSE, AND FLIX INDIANA, "BORROWERS"), AND ALLAN REAGAN, FLIX ENTERTAINMENT LLC, FLIX BREWHOUSE IOWA LLC, FLIX INDIANA, FLIX NM, FLIX BREWHOUSE (EACH IN ITS CAPACITY AS GUARANTOR OF THE OBLIGATIONS OF HOLDCO, COLLECTIVELY, "HOLDCO GUARANTORS"), AND ALLAN REAGAN, FLIX ENTERTAINMENT LLC, FLIX BREWHOUSE, FB CAPITAL LLC, AND HOSPITALITY INVESTORS INC. (EACH IN ITS CAPACITY AS GUARANTOR OF THE OBLIGATIONS OF FLIX INDIANA AND FLIX NM, COLLECTIVELY, "SBA GUARANTORS") AND ALLAN REAGAN, FLIX ENTERTAINMENT LLC, FB CAPITAL LLC, AND HOSPITALITY INVESTORS INC. (EACH IN ITS CAPACITY AS GUARANTOR OF THE OBLIGATIONS OF FLIX BREWHOUSE, "FLIX BREWHOUSE GUARANTORS" AND TOGETHER WITH HOLDCO GUARANTORS AND SBA GUANTORS, "GUARANTORS")

Dear Mr. Reagan:

Please refer to the default letter from Bank dated November 2, 2020 ("Prior Default Letter") and any and all other documents, instruments, and agreements executed in connection with the financing arrangements from Bank to Borrowers (collectively, the "Loan Documents").  All amounts due from Borrowers to Bank, whether now or in the future, contingent, fixed, primary or secondary, including, but not limited to, principal, interest, inside and outside counsel fees, audit fees, costs, expenses, and any other charges provided for in the Loan Documents are identified collectively as the "Liabilities."  All capitalized terms used but not defined in this letter shall have the meanings set forth in the Loan Documents.

Bodman_17350428_4

As of December 16, 2020 the Liabilities include, but are not limited to, the following:

| **Loans** (note amount and date) | **Principal** | **Interest** |
|---|---|---|
| **Holdco Installment Note** ($6,607,143; March 13, 2020) | $6,406,291.71 | $102,695.42 |
| **Flix NM SBA Note** ($2,195,000; December 30, 2016) | $1,589,598.96 | $9,438.24 |
| **Flix Indiana SBA Note** ($2,833,000; January 20, 2015) | $1,454,496.96 | $8,636.07 |
| **Flix Brewhouse Installment Note** ($775,579: March 14, 2019) | $614,007.90 | $1,989.49 |

These amounts are exclusive of interest accruing after December 16, 2020, late fees, any letter of credit reimbursement obligations, obligations with respect to credit cards or treasury management services, and costs and expenses (including, but not limited to, inside and outside counsel fees).

In addition to the defaults identified in the Prior Default Letter, Borrowers are in default of the Loan Documents because: (a) Holdco failed to make principal and interest payments of $108,721.41 each on the Holdco Installment Note due on the first of September,[1] October, November and December 2020; and (b) each of Flix Indiana, Flix NM, and Flix Brewhouse failed to make the principal and interest payments due under the other Notes identified above on December 1, 2020 (in the amounts of $31,100.44, $21,100.44 and $10,954.99, respectively).

Bank demands payment of the past due amounts on or before December 31, 2020. By copy of this letter demand for the past due payments is also made of Guarantors, other than Allan Reagan (no payment is demanded of Mr. Reagan at this time because he has filed for protection under the Bankruptcy Code).

For the reasons outlined above, from the date of this letter, interest shall accrue on the Holdco Installment Note and the Flix Brewhouse Installment Note at the default rate under the Loan Documents.

Bank's acceptance of any payment of the Liabilities after the date of this letter is not a waiver of any defaults.

Bank responded to the proposal from Mr. Reagan with respect to the Liabilities and did not receive an acceptance or a counter-response.  Bank anticipates that discussions addressing the Liabilities may take place in the future. During the course of such discussions, Bank, Borrowers and Guarantors may touch upon and possibly reach a preliminary understanding on one or more issues prior to concluding negotiations. Notwithstanding this fact and absent an express written waiver by Bank, Bank will not be bound by an agreement on any individual issues unless and until an agreement is reached and reduced to writing and signed by Borrowers and Guarantors and Bank.

Please contact me at your earliest convenience to arrange for the payment in full of all of the Liabilities.

---

[1] A partial September 2020 payment was made.

Bodman_17350428_4

Bank reserves all of its rights and remedies under the Loan Documents and applicable law, any or all of which rights and remedies may be exercised by Bank without further notice.  Bank's failure to exercise any such right or remedy shall not be construed as a waiver or modification of those rights or as an offer of forbearance.  Nothing in this letter shall constitute a waiver of any default.  Bank's forbearance from taking action to collect the Liabilities is from day to day in Bank's sole discretion.

COMERICA BANK



_____

Lesley B. Higginbotham
Vice President
Special Assets Group
P.O. Box 650282
Dallas, TX 75265-0282

cc:     Robert J. Diehl, Jr. – VIA EMAIL
        Flix Entertainment LLC – VIA EMAIL TO allan.reagan@flixbrewhouse.com
        Flix Brewhouse Iowa LLC – VIA EMAIL TO allan.reagan@flixbrewhouse.com
        FB Capital LLC – VIA EMAIL TO allan.reagan@flixbrewhouse.com
        Hospitality Investors Inc. – VIA EMAIL TO allan.reagan@flixbrewhouse.com

Bodman_17350428_4