# UNITED STATES BANKRUPTCY COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | Case No. 20-11161-tmd |
| Allan L. Reagan | § | |
| | § | Chapter 11 |

## RESPONSE TO OBJECTION TO CLAIM NO. 10

TO THE HONORABLE TONY M. DAVIS, UNITED STATES BANKRUPTCY JUDGE:

Creditor, Village @ La Orilla LLC ("VLO") hereby responds to the Objection to its Proof of Claim filed by Debtor and in support of such Response would show the Court:

### I. BACKGROUND FACTS

1. VLO is an unsecured creditor in this case. Specifically, VLO is the owner of certain premises located in Albuquerque, New Mexico leased to Flix Brewhouse NM, LLC, a New Mexico limited liability company ("Flix NM") pursuant to a lease dated August 18, 2015 ("Lease"). Flix NM operates a brewpub/restaurant and multi-screen movie theater at the location.

2. Pursuant to a written guaranty ("Guaranty"), attached hereto and to VLO's Proof of Claim as Exhibit 1, Debtor is the personal guarantor of Flix NM's obligations for the first 10 years of the term of the Lease which, following construction and acceptance of the leased premises, commenced December 2016. Both the Lease and the Guaranty are construed in accordance with, and governed by, New Mexico law.

3. Pursuant to New Mexico law, the Guaranty is a primary obligation of Debtor, independent of Flix NM's performance or non-performance of its obligations under the

Lease and is not dependent upon any declaration or notice of default being given to Flix NM (Guaranty at ¶¶ A, C)

4. Over the first three years of the Lease term, Flix NM has submitted operating statements to VLO indicating that approximately two-thirds of its revenue is derived from its food and beverage operations.

5. Beginning in April 2020, Flix NM has failed to pay its rent (except for four payments of $7500 each) or meet any of its other financial obligations under the Lease and, as of mid-March 2020, ceased all business operations at the leased premises and has not conducted any operations of any character since that time.

6. Through November 2021 (the first five years of the Lease term), the monthly base rent plus CAM charges under the Lease is approximately $80,591.07 per month (see Exhibit B attached hereto). For the second five years of the term of the Lease, monthly rent and CAM charges total $84,722.34 (*Id.*). In addition, other amounts were due under the Lease as of the date of Debtor's Petition, for Flix NM's ratable share of IRB costs and the 2019-2020 CAM reconciliation (*Id.*) VLO's Proof of Claim, in the total amount of $6,617,547.79, reflects these amounts net of the $30,000 paid by Flix NM and its security deposit, which was applied to the debt owed by Flix NM after VLO sent Flix NM a notice of default in December 2020.

7. In addition, Flix NM has failed to pay its utility bills, thus exposing the leased premises from damages due to burst water and fire sprinkler pipes. VLO, therefore, has paid these sums which represent additional amounts due under the Lease (*Id.*).

## II. ARGUMENT AND AUTHORITIES

8. As of the Petition date, Flix NM was seven months behind on its rent. Therefore, Debtor's obligation to VLO was not dependent on the occurrence of any future event, and thus, is not considered contingent. See *In re All Media Properties, Inc.*, 5 B.R. 126, 133 (Bankr. S.D. Tex. 1980), aff'd, 646 F.2d 193 (5th Cir. 1981); 2 L. King, *Collier on Bankruptcy* ¶ 109.06[2][b] (15th ed. rev. 1997); *In re Knight*, 55 F.3d at 236; In re Nicholes, 184 B.R. 82, 88 (9th Cir. B.A.P. 1995); *Brockenbrough v. Commissioner*, 61 B.R. 685, 686-687 (W.D. Va. 1986).

9. Flix NM has paid virtually no rent to VLO for the last 13 months and has indicated no present intention of doing so. Neither the frustration of purpose doctrine or principles of force majeure excuse Flix NM (and therefore, Debtor) from payment of rent; they only reduce the amount of rent presently owed. Given that two-thirds of Flix NM's revenue comes from its food and beverage operations and those operations have never been fully prohibited by any order of the New Mexico state government, the majority of the rent and other sums owed under the Lease and Guaranty should have been paid over the course of the last year. *In re Hitz Restaurant Group*, 616 BR 374 (Bankr. N.D. Ill. 2020) Flix NM and Debtor have failed to do so because Debtor believes that such operations will not be profitable, but the performance of Debtor's obligations are not conditioned on profitability.

WHEREFORE, VLO respectfully requests that this Court deny Debtor's objection to its Proof of Claim and enter such other and further relief as the Court deems proper.

/s/ Peter F. Lindborg

Admitted *Pro Hac Vice*

550 N. Brand Blvd., Ste. 1830

Glendale, CA 91203

P: (818) 637-8325

F: (818) 637-8376

plindborg@lmllp.com

## CERTIFICATE OF SERVICE

The signature below certifies that a true and correct copy of the foregoing document has been served through the ECF filing system on the persons shown below this 20th day of April, 2021:

**Mark Curtis Taylor**
Waller Lansden Dortch & Davis LLP
100 Congress Ave, Suite 1800
Austin, TX 78701
(512) 685-6400
Fax : (512) 685-6417
Email: mark.taylor@wallerlaw.com

**Michael G. Colvard**
Martin & Drought, PC
Weston Centre
112 E Pecan St, Suite 1616
San Antonio, TX 78205
(210) 227-7591

/s/ Peter F. Lindborg

Exhibit 1

# EXHIBIT G

## PERSONAL GUARANTY TO LEASE

The undersigned, ALLAN L. REAGAN, whose address is 585 River Run, Leander, Texas 78641, in consideration of the leasing of the leased premises described in that certain Lease dated the 18th day of August, 2015, between Village @ La Orilla, LLC, a Delaware limited liability company, as Landlord, and Flix Brewhouse NM LLC, a New Mexico limited liability company, as Tenant ("Lease"), does hereby covenant and agree as follows:

The undersigned does hereby guarantee the full, faithful and timely payment and performance by Tenant of all Tenant's covenants and obligations under or pursuant to the Lease, to the extent applicable to the period ending on the last day of the tenth "lease year" of the term of the Lease (the "Guaranty Term"). If Tenant shall default at any time in the payment of any rent or the performance of any covenant or obligation applicable to the Guaranty Term (the "Guaranteed Obligations"), then the undersigned, at its expense, shall on demand of Landlord fully and promptly, and well and truly, pay all such Guaranteed Obligations, and in addition shall on Landlord's demand pay to Landlord any and all sums due to Landlord, including (without limitation) all interest on past due Guaranteed Obligations and all expenses (including reasonable attorneys' fees and litigation costs), that may arise in consequence of any such default by Tenant. The undersigned hereby waives all requirements of notice of the acceptance of this Guaranty and all requirements of notice of breach or nonperformance by Tenant.

A. The obligations of the undersigned hereunder are independent of the obligations of Tenant. A separate action or actions may, at Landlord's option, be brought and prosecuted against the undersigned, whether or not any action is first or subsequently brought against Tenant, or whether or not Tenant is joined in any such action, and the undersigned may be joined in any action or proceeding commenced by Landlord against Tenant arising out of, in connection with or based upon the Lease. The undersigned waives any right to require Landlord to proceed against Tenant or pursue any other remedy in Landlord's power whatsoever, any right to complain of delay in the enforcement of Landlord's rights under the Lease, and any demand by Landlord and/or prior action by Landlord of any nature whatsoever against Tenant, or otherwise.

B. This Guaranty shall remain and continue in full force and effect and shall not be discharged in whole or in part notwithstanding (whether prior or subsequent to the execution hereof) any alteration, renewal, extension, modification, amendment or assignment of, or subletting, concession, franchising, licensing or permitting under the Lease, except as set forth in Paragraph F below. The undersigned hereby waives notice of any of the foregoing, and agrees that the liability of the undersigned hereunder shall be based upon the obligations of Tenant set forth in the Lease as the same may be altered, renewed, extended, modified, amended or assigned. For the purpose of this Guaranty and the obligations and liabilities of the undersigned hereunder, "Tenant" shall be deemed to include any and all concessionaires, licensees, franchisees, department operators, assignees, subtenants, permittees or others directly or indirectly operating or conducting a business in or from the leased premises, as fully as if any of the same were the named Tenant under the Lease.

C. The undersigned's obligations hereunder shall remain fully binding although Landlord may have waived one or more defaults by Tenant, extended the time of performance by Tenant, released, returned or misapplied other collateral at any time given as security for Tenant's obligations (including other guaranties) and/or released Tenant from the performance of its obligations under the Lease.

Landlord: _____  83  Guarantor: _____ Tenant: _____

D.  This Guaranty shall remain in full force and effect notwithstanding the institution by or against Tenant, of bankruptcy, reorganization, readjustment, receivership or insolvency proceedings of any nature, or the disaffirmance of the Lease in any such proceedings or otherwise.

E.  Provided that Tenant is not in default in the payment of Guaranteed Obligations upon the last day of the Guaranty Term, Landlord irrevocably agrees that this Guaranty shall terminate in its entirety. In the event that Tenant consummates a Permitted Transfer pursuant to Section 11.4 of the Lease, and provided that an acceptable replacement Guaranty is entered into by a Substitute Guarantor which meets the Release Threshold as established in Section 11.5 of the Lease, this Guaranty shall terminate with respect to all liability under the Lease except to the extent, if any, of Guaranteed Obligations which remain unpaid for the period ending on the day before the effective date of the Permitted Transfer.

F.  This Guaranty shall be applicable to and binding upon the heirs, executors, administrators, representatives, successors and assigns of Landlord, Tenant and the undersigned. Landlord may, without notice, assign this Guaranty in whole or in part.

G.  In the event that Landlord should institute any suit against the undersigned for violation of or to enforce any of the covenants or conditions of this Guaranty or to enforce any right of Landlord hereunder, or should the undersigned institute any suit against Landlord arising out of or in connection with this Guaranty, or should either party institute a suit against the other for a declaration of rights hereunder, or should either party intervene in any suit in which the other is a party to enforce or protect its interest or rights hereunder, the prevailing party in any such suit shall be entitled to the fees of its attorney(s) in the reasonable amount thereof, to be determined by the court and taxed as a part of the costs therein.

H.  It is understood that the Lease and the Exhibits, Addenda and Rider(s), if any, attached thereto, are intended to set forth all the covenants, promises, agreements, conditions and understandings between Landlord and Tenant, and it hereby is expressly acknowledged and agreed that this Guaranty is not executed in reliance on any covenants, promises, agreements, conditions or understandings between Landlord and Tenant, or made to or with the undersigned, either oral or written, other than those contained in the Lease and the Exhibits, Addenda and Rider(s) attached thereto. All capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Lease.

I.  The execution of this Guaranty prior to execution of the Lease shall not invalidate this Guaranty or lessen the obligations of Guarantor(s) hereunder.

J.  This Guaranty is made pursuant to, and shall be interpreted and applied in accordance with, the laws of the State of New Mexico and Guarantor irrevocably submits himself to the jurisdiction of the state and federal courts located in New Mexico for any action involving the enforcement of this Guaranty and further irrevocably waives: (1) any objection he has to the venue of such an action in the state of New Mexico, and (2) the right to trial by jury in such an action.

K.  The undersigned shall furnish to Landlord financial statements and other information reasonably requested by Landlord reflecting Guarantor's current financial condition, within 30 days after the expiration of each calendar year during the Guaranty Term.

Landlord:_____    84    Guarantor:_____
                         Tenant:_____

IN WITNESS WHEREOF, the undersigned has executed this Guaranty this 14 day of August, 2015.

WITNESSES:

_____

_____

_____
ALLAN L. REAGAN

(seperately provided)
Social Security Number

## ACKNOWLEDGMENT

STATE OF Texas        )
                      ) ss.
COUNTY OF Williamson )

On this ___ day of _____, 2015, before me personally appeared Allan L. Reagan, to me known to be the person described in and who executed the foregoing instrument and acknowledged before me that they executed the same as their free act and deed.

Sign Name: S. Jones
Print Name: Sharon Jones
Notary Public, State of Texas
County of Williamson
My Commission Expires: 10/1/2017
Acting in the County of Williamson

SHARON JONES
Notary Public, State of Texas
My Commission Expires
October 01, 2017

Exhibit 2

| Flix Brewhouse Owes | | | |
|---|---|---|---|
| | Monthly Charge | No. of months | Totals |
| Lease Yrs 1-5 remaining mos. | | | |
| Rent - April 2020 to Nov 2021 | $68,854.50 | 20 | $1,377,090.00 |
| CAM - April 2020 to Nov 2021 | $11,736.57 | 20 | $234,731.40 |
| Total Lease Paymts. Remaining | | | $1,611,821.40 |
| Lease Yrs. 6-10 | | | |
| Rent - Dec 2021 to Nov 2026 | $72,985.77 | 60 | $4,379,146.20 |
| CAM - Dec 2021 to Nov 2026 | $11,736.57 | 60 | $704,194.20 |
| Total Lease Paymts. Lease Yrs. 6-10 | | | $5,083,340.40 |
| Total Rent & CAM Due (80 mos.) | | | $6,695,161.80 |
| | | | |
| | Total for CAM 2020 | Total Paid For 2020 | Total CAM Due |
| Total Share of IRB Costs | | | $235,841.61 |
| 2019-20 Net CAM Reconciliation | $96,835.63 | $43,194.35 | $53,641.28 |
| | | | |
| PNC Loan Late Charges | | | |
| May 2020 to April 2021 | | | $51,710.69 |
| | | | |
| Utilities Charges: | | | |
| ABCWUA | as of Apr. 17, 2021 | | $3,474.22 |
| PNM | as of Mar. 15, 2021 | | $5,803.28 |
| | Deposit | | $7,000.00 |