THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| ALLAN L. REAGAN | § | CASE NO. 20-11161-TMD |
| | § | |
| DEBTOR. | § | CHAPTER 11 |

**RESPONSE TO DEBTOR'S BRIEF REGARDING
CONFIRMATION ISSUES [DKT. NO. 132]**

TO THE HONORABLE TONY M. DAVIS,
UNITED STATES BANKRUPTCY JUDGE:

Now comes Michael G. Colvard, Subchapter V Trustee (herein "Sub V Trustee") within the Allan L. Reagan (herein "Reagan" or "Debtor") Small Business Chapter 11 case, to file this Response to Debtor's Brief Regarding Confirmation Issues [Dkt. No. 132], and would show unto the court as follows:

**I.  BACKGROUND/INTRODUCTION**

1.1  Debtor's proposed plan [Dkt. No. 54] and as amended [Dkt. No. 89] (the "Plan") incorporate as Exhibit A, "Financial Projections (the "Projections") reflecting "the Debtor's estimate of future disposable income over the next five years." Debtor's Projections are dependent upon a number of factors and assumptions, subject to significant economic, business and competitive uncertainties. Debtor notes that "ACTUAL RESULTS OR DEVELOPMENTS MAY DIFFER MATERIALLY FROM THE EXPECTATIONS EXPRESSED OR IMPLIED IN THE FORWARD-LOOKING STATEMENTS AND THE DEBTOR UNDERTAKES NO OBLIGATIONS TO UPDATE ANY SUCH STATEMENTS" (Projections, Dkt. No. 54, p. 26). Debtor's Projections for 2021 show: (i) Wages of $140,000.00; (ii) $114,224.00 proceeds from asset sales; (iii) $112,389.00 in income from dividends and interest; and, (iv) $237,383.00 in

distribution from business interest in: (a) Round Rock Business Park, L.P. ("RRBP") - $42,478.00, (b) Southwest Retail Properties, L.P. ("SRP") - $0.00; (c) Prairie Pointe Estates, Inc. ("PPEI") - $0.00; and, (d) 100 Trinity LLC ("Trinity") - $194,905.00. The Projections reveal no disposable income within the post-confirmation payment period derived from Debtor's interest in: (a) Flix Entertainment LLC and its subsidiaries and related entities; (b) 3401 Hoteliers LP; (c) Aramcor Inc.; or (d) other minority non-controlling investments. Debtor's financial projections for 2021 anticipate total income of $599,477.00 ($49,956.42 monthly), total deductible living expenses of $195,204.00 ($16,267.00 monthly). Debtor's projected disposable income over the post-confirmation pay period proposes payments of $3,367,129.00 – with annual amounts of net projected disposable income fluctuating between $404,273.00 in 2021, up to $945,220.0 in year 2024.

1.2 Reagan's current monthly operating report reveals total monthly receipts ranging in amounts from $14,908.00 to $338,453.00 and monthly expenses fluctuating between $15,144.63 and $349,932.20 (MOR – Dkt. No. 133) (Note, the January MOR shows unexplained "other receipts" of $326,559.00 and expenses of $336,549.00, causing what appears to be extraordinary income/expenses in January 2021). In comparison, Debtor's Statement of Financial Affairs show 2020 wages of $102,231.00 – (through date of filing) and wages of $91,724.00 in 2019, and $88,069.00 in 2018 (SoFA No. 4 – Dkt. No. 17), and "other income" in: (i) 2020 (from January to October 2020) $162,822.00 interest and dividends; $251,330.00 in capital gain and $5,000,000.00 in losses from rental – consisting principally of depreciation; and (ii) 2019 - $412,145.00 in interest/dividends, $81,063.00 in capital gain and $828,523.00 in loss from rental (assumes depreciation). Debtor's 2019 tax returns show $▇▇▇▇ in wages, $▇▇▇▇ in taxable interest, $▇▇▇▇ in dividends and $▇▇▇▇ in capital gains (Redacted per

Confidentiality Agreement)[1] (Debtor's § 1116(1) Statement – Dkt. No. 3). An assessment of the aforementioned data and a comparison between the Projections, MORs, Statement of Financial Affairs and 2019 Tax Returns – establish substantial variations, confirming significant fluctuations between projected disposable income and historical financial information, establishing that Projections are uncertain and that disparities between actual income/revenue and projected disposable income will exist, confirming that Projected Disposable Income amounts are difficult to ascertain, and practically impossible to predict.

    1.3    In addition to difficulties in establishing reliable projected disposable income, Debtor has controlling authority over numerous businesses, many involving inter-company relationships between entities within Debtor's control over which significant latitude in expenses and spending appears to exist. For example, RRBP an entity in which Debtor's community interest owns 78.3% - and whose "general partner" ARPROP, Inc. ("ARPROP") is owned 100% by Debtor, is "providing liquidating support to Southwestern Retail Properties III, LP ("SRP3") – a real estate development whose sole tenant is Flix Brewhouse – which is not operating (See, Projections, Dkt. No. 54, p. 25 – and Schedule A/B, Part 4 @ 19 – Dkt. 17, p. 10). RRBP plans to continue post-confirmation support to SRP3 in amounts of $276,000.00 (Projections, RRBP – Dkt. No. 54 @ 25). Notwithstanding substantial projected "liquidating support" of $276,000.00 from RRBP, neither SRB3 nor Flix contemplate contribution to disposable income within the Plan payment period (Projections, Dkt. No. 54, p. 30). Thus the Projections anticipate use for partnership purposes, what could otherwise be disposable income in support of other related non-debtor entities, which entities will not contribute to "disposable income requirements" under the

---

[1] Debtor filed his § 1116(1) Statement containing tax returns with limited access and has entered a confidentiality agreement restricting disclosure of confidential information, requiring reference to confidential data to be limited to authorized personnel, requiring relevant 2020 tax information to be redacted herein.

Plan – but which entities will continue post-confirmation, and potentially result in increases in Debtor's equity interests. Another example is PPEI, which purchased real property from RRBP with $1,175,000.00 of the sale price being seller financed by RRBP (the "PPEI Note") in November 2020 – one month following the Subchapter V case (Projections, Dkt. No. 54, pp. 30-31). In addition to the PPEI Note, PPEI is indebted to Trinity, an entity in which Debtor's community owns 95% interest for a loan in the amount of $500,000.00, and Trinity has commitments to fund up to $1,325,000.00 to PPEI – which loans when repaid to Trinity, are to be "reinvested" by Trinity and not included within Debtor's projected disposable income" (Projections, Dkt. No. 54, pp. 45-46). Debtor's partnership interests also includes two companies holding interest in performing real estate assets: (i) RRBP, an entity which owns the Park West Corporate Center, a 118,000 square-foot business park in Round Rock, Texas – which is 95% occupied; and, (ii) Debtor's interest in Southwestern Retail Properties, L.P. ("SRP") – in which Debtor currently owns a 46.24% interest. SRP owns the Sky Ridge Plaza – 141,000 square-foot rental center in Round Rock – which is 74% occupied (Projections – Dkt. No. 54, pp. 28-29). Both RRBP and SRP are projected to make distributions to Debtor to be used for Plan payment purposes (Projections, Dkt. 54, pp. 35-36) – both also anticipate maintaining reserves for capital improvement – and making significant principle reductions within the Plan payment period. Again potentially enhancing Debtor's equity interests – while not using potentially available funds for Debtor's Plan payments. Debtor's interest in Flix entities is not projected to made any plan contributions within the five year Plan payment period. Understandably Flix's business trends are significantly related to the movie industry which has been devastated by post-COVID economics – but which stands to receive significant government assistance in the term of loans and grants – potentially maximizing recovery prospects.

## II.  ARGUMENTS/AUTHORITIES

**A.  <u>Projected Disposable Income Requirements:</u>**

2.1  Bankruptcy Code 11 U.S.C. § 1191(d) defines disposable income as, "income that is received by the Debtor and that is not reasonably necessary to be expended – (1)(4)(A) maintenance or in support of the Debtor or dependent of the Debtor; or (B) a domestic support obligation that first becomes payable after the date of the filing of the petition; or, (2) the payment of expenditures necessary for the continuation, preservation or operation of the business of the Debtor.  The definition of disposable income is substantially the same as in cases filed under Chapter 11 or Chapter 13, but the manner to determine permitted deductible calculations for disposable income differs materially.  In Chapter 13 cases for example, the means test governs deductions, but under § 1129(a)(15) the, "projectable disposable income of the Debtor" as defined under § 1325(b)(2) is exclusive of the means test requirements under § 1325(b)(3).  Subchapter V cases, § 1191(d) do not incorporate the means test limits, but rather considers reasonable and necessary expenses for maintenance or support of Debtor and spouse, domestic support obligations and expenditures necessary for continuation, preservation or operation of the business of the Debtor from income under § 1191(d)(1) and (2).  *In re Pearl Res., LLC,* 2020 Bankr. LEXIS 2683 \* 70 (Bankr. S.D. Tex. 2020).

2.2  Fair and equitable requirements under § 1191(b) provide, "As of the effective date of the plan, all the projected disposable income of the Debtor. . .will be applied to make payments under the plan; or, (B) the value of the property to be distributed under the plan in a 3-year period or such longer period not to exceed 5 years as the Court may fix. . .is not less than the projected disposable income of the Debtor."  Projected disposable income under § 1191(b)(2) is distinguished from disposable income defined under § 1191(d).  Projected disposable income

constitutes the requisite payment amount needed to satisfy cramdown standards under § 1191(b), essential to meet the fair and equitable test, through payment in amounts to creditors in excess of amounts creditors would otherwise receive in a liquidating process under § 1129(a)(7). The fair and equitable rule is not specifically stated for unsecured creditors under § 1191(c), instead the projected disposable income standards ("best effort test") requires a feasibly finding and requires that a plan provide appropriate remedies upon default, including liquidation. *In re Pearl Res. LLC,* 2020 @ *65.

    2.3    The Supreme Court in *Hamilton v. Lanning,* 560 U.S. 505, 130 S. Ct. 2464, 177 L. Ed. 2d 23 (2010) addressed distinctions between projected disposable income and disposable income, determining that disposable income to be that amount of "current monthly income received by debtor. . .less amounts reasonably necessary to be expended. . .while "projected disposable income" requires a forward looking approach to account for charges, including income or expenses that are known are virtually certain at the time of confirmation, using disposable income as a starting point." *Hamilton* at 130 S. Ct. 2464. Even though *Hamilton* involved a Chapter 13 case – concepts underlying projected disposable income requiring a forward looking approach is required whether in Chapter 13 or Subchapter V cases – since Chapter 13 and Subchapter V cases include post-confirmation assets and earnings as property of the estate under §§ 1306(a) and 1186(a). The Fifth Circuit previously adopted the forward looking approach to "projected disposable income," determining that "debtor's projected disposable income to be received within applicable commitment period is linked to income actually received during the plan, and indicates a forward looking orientation." *Nowlin v. Peake (In re Nowlin),* 576 F.3d 258, 263 (5th Cir. 2009); see also, *In re Hardacre,* 338 B.R. 728, 722 (Bankr. N.D. Tex. 2006), holding "while Congress would not have used phase disposable income. . .it chose not to do so – confirming

an intent for projected disposable income to be different than disposable income. In most cases the forward looking approach requires an analysis of present income applying a multiplier with known adjustments. In *Hamilton* the focus was on the Chapter 13 Debtor's retirement deductions. In complex business situations, involving multiple entities with varying businesses operations, each of which having been affected in different manners while operating within the COVID crisis, a forward looking analysis may be practically impossible to accurately assess. The distinction in the instant case, from Chapter 13 wage earning proceeding and from small mom and pop Subchapter V case involving small business with historical revenues – is that projected disposable income in this case involve distinct non-debtor related entities emerging from a COVID environment, which is significantly more difficult, if not impossible to accurately ascertain. A forward looking approach in this case involving complex business situations including numerous Debtor controlled non-debtor entities, must anticipate mechanisms for future adjustments to confirm that projected disposable income accurately reflects Debtor's best efforts in compliance with good faith requirements.

2.4 Projected disposable income evaluations under § 1191(c)(2)(A), required for cramdown purposes in a nonconsensual plan, must take into account Bankruptcy Code § 1186(a) defining property of the Subchapter V estate to include, in addition to the property specified under § 541: (i) all property of the kind specified within § 541 that the Debtor acquires after the date of the commencement of the case before the case is closed, dismissed or converted; plus, (ii) earnings for services performed by the Debtor after the date of commencement of the case before the case is closed, dismissed or converted. 11 U.S.C. § 1186(a)(1) and (2). When a plan is confirmed under § 1191(b) designating contributions of projected disposable income as a confirmation requisite, excess disposable income will consist of additional disposable income acquired by the

Debtor within the Plan payment period in excess of the projected disposable income from earnings and revenue received by Debtor prior to termination of the payment period. All additional disposable income remains property of the estate, including all earnings of Debtor after the date of confirmation but before the case is closed whether anticipated as projected disposable income – or not. 11 U.S.C. § 1186(a)(2).

2.5     Under § 1123(a)(5), a plan is to provide adequate means for implementation, including provisions requiring transfers of all property of the estate under subsection § 1123(a)(5)(B) and requiring distribution of all or part of any property of the estate among those having an interest in such property under § 1123(a)(5)(D). Where property of the estate under a plan confirmed pursuant to 11 U.S.C. § 1191(b) is earned or acquired within the post-confirmation period in excess of the projected disposable income, §§ 1190(2)(d) and 1123(a)(5) require disposition of that property within the term of the confirmed plan.

2.6     Bankruptcy Code § 1129(a)(3) requires a plan to be proposed in good faith and not by means forbidden by law. The Bankruptcy Code does not specifically define good faith, but the Fifth Circuit determined requirements of good faith are to be viewed in light of the totality of the circumstances surrounding the establishment of a Chapter 11 Plan keeping in mind that the purpose of the Bankruptcy Code is to give Debtors a reasonable opportunity to make a fresh start. *In re Sun Country Dev. Inc.,* 764 F.2d 406, 408 (5th Cir. 1985). Good faith should serve as a backstop against debtors who aggressively manipulate BAPCPA's provisions at the expense of bankruptcy policies, including fairness to unsecured creditors. *In re Smith,* 2010 Bankr. LEXIS 1942, 2010 WL 240065 at *3 (finding that purposeful increases of allowable expenses intended to reduce available disposable income did not meet good faith requirements). Debtor-in-possession administers the bankruptcy estate as a fiduciary for the estate creditors. *In re Patel,* 621 B.R. 245,

254 (Bankr. ED. Cal. 2020), *citing, Baker Botts, LLP v. ASARCO, LLC,* 576 U.S. 121, 135 S. Ct. 2158, 192 L. Ed. 2d 208 (2015) – and is accountable to their creditors for all property received under 11 U.S.C. § 704 (a)(c). Good faith requires Debtor to propose the plan with legitimate and honest purpose, providing for the collection of Debtor's assets and providing a meaningful return to the creditors. *In re Bel Aire Properties, LLC,* 2021 Bankr. LEXIS 937 * 9 (Bankr. Utah, April 8, 2021). A court is to evaluate evidence probative of good faith issues. In re Fall Tree Serv., 2020 Bankr. LEXIS 3386 *6 (Bankr. E.D. Cal., Dec. 3, 2020), citing, FED. R. BANKR. P. 3015(f). Good faith requisites in projected disposable income are to assume forward looking approach including all future disposable income – necessitating verification and recalibration of future revenue and disposable income assuring accuracy within the projected disposable income analysis.

2.7 Upon consideration of Subchapter V plan standards, blending projected disposable income requirements for confirmation of a nonconsensual plan under § 1191(b) with requirements of good faith under § 1129(a)(3), and plan essentials dictating the disposition of all property of the estate under § 1190(2)(d) and § 1123(a)(5) – when considering the totality of the circumstances in a complex business Subchapter V, periodic adjustments to projected disposable income is essential.

2.8 Debtor's reliance upon *In re Sizzler U.S.A. Inc.,* No. 20-30748 (Bankr. N.D. Cal. Jan. 5, 2021) is not dispositive. The *Sizzler* court stated its belief that the analysis was right for that case acknowledging that "we are still developing case law on 1191(c)" (*Sizzler*, TR @ 64-65), and determined that the plan was not required to provide a payment of actual disposable income. There were no consideration of good faith issues or best efforts test. Nor was that case complicated by Debtor ownership and controlling interest in non-debtor entities.

2.9 The Sub V Trustee suggested modifications to the Plan to include requirements for periodic adjustments in projected disposable income, in order to account for uncertainties within the projections and compliance with requirements that the Plan must dispose of all property of the estate to ensure satisfaction of good faith requisites for Subchapter V plan confirmation.

B.  **Liquidation analysis and compliance with § 1129(a)(2):**

2.10 Debtor's proposed Plan attaches a Liquidation Analysis, estimating the liquidation value of Debtor's interest in property of the estate at a low value of $2,223,103.00 and a high value of $2,606,118.00, showing no value for Debtor's interest in: (i) Flix Entertainment, LLC; (ii) 3401 Hoteliers LP; (iii) Aramcor Inc.; (iv) the PIK Note; or, (iv) First stop Health, LLC (Liquidation Analysis, Dkt. No. 54, p. 45). Debtor's liquidation value assumes net liquidation proceeds of community property to be divided between Debtor and spouse (Liquidation Analysis, Dkt. No. 54, p. 40), and are "inherently subject to significant economic, business, regulatory public health and competitive uncertainties (Liquidation Analysis, Dkt. No. 54, p. 45). While the Liquidation Analysis assumes disposition of all property of the estate, including interest in developed income producing retail, business park and residential real estate holdings, there are no appraisals or valuation of those real estate assets, no comparative market sales analysis or income approach valuations in support of the liquidation analysis. Nor is Debtor, who is providing his best judgment, qualified as an interest owner of various partnership entities, to provide testimony of valuation of real estate assets owned by non-debtor entities.

2.11 Debtor's liquidation value differs substantially from the fair market value show within Debtor's Schedules listing $10,941,661.00 in fair market value vs. $2.2-$2.6 liquidation value. What is even more alarming is the value of cash on accounts is approximately $160,000.00, the amount of bonds or mutual funds or stock is $1,535,299.00 for a total scheduled value of

approximately $1,695,299.00 for cash/securities (Amended Schedule A/B, Part 4 ¶¶ 18-19 – Dkt. No. 56), compared to liquidation value of $1,259,520.00 (low) or $1,424,000.00 (high) liquidation value. Also note that Interactive Brokers is designated as a secured creditor with collateral value of $3,037,437.63 in marketable securities raising discrepancies in the value of those securities (Amended Schedule D, Part 1 ¶ 2.2 – Dkt. No. 56). Also those securities values have increased since filing of the Amended Schedules, showing an increase from $1.014 million in the original Schedules to $1.518 million in the Amended Schedules filed in January.

2.12 The proposed projected disposable income to be paid under the Debtor's Plan amount to $3,367,129.00. Following application of the value Debtor's cash/securities of $1,695,292.00 from Debtor's projected disposable income of $3,367,129.00 – only $1,500,000.00 remains to be compensated out of the remaining liquidation value of Debtor's assets scheduled at a fair market value of approximately $8.5 million, for which Debtor's liquidation value attributable only $700,000.00 - $1.2 million. Debtor's liquidation analysis anticipates liquidation of Debtor's interests in RRBP, SRP and PPEI – which includes developed real estate income producing property of only $700,000.00 - $1.2 million.

2.13 Further, Debtor's liquidation analysis removes 50% of the liquidation value for "Division of Community Property," assuming the net proceeds of community property is divided between Debtor and spouse. The community property division neglects to consider 11 U.S.C. § 541(a)(2)(A) and (B) requiring all interests of the debtor and the debtor's spouse under the sole, equal or joint management of the debtor, or liable for an allowed claim against the debtor to constitute property of the estate. While a partnership interest in a business does constitute community property interest under Texas law (*see, Harris v. Harris,* 765 S.W.2d 798, 802 (Tex. App.—Houston [14th Dist.] 1989, writ denied), the entire community asset may be subject to

obligations of a sole managed partnership. TEX. FAM. CODE § 3.202(b) and (c). *Carlton v. Estate of Estes,* 664 S.W.2d 322, 323 (Tex. 1983). Consequently, Debtor's proposed allocation of one half of the liquidation proceeds for the non-debtor spouse, neglects to consider the bankruptcy estate rights to include both spouse's interests in community property where debts are related to spouse's sole managed community assets.

### III.  CONCLUSION

3.1  Where Projected Disposable Income in a complex business relationship involving contribution from Debtor controlled non-debtor entities, involving assumptions and analysis of future events occurring within economic environment arising out of a pandemic crises, making it virtually certain that post-confirmation disposable income will differ from Projected Disposable Income, and where plan requisites specify that all property of the Debtor is to be disposed within a plan, Debtor's good faith obligations, in view of the totality of the circumstances, make it necessary for Projected Disposable Income to include adjustments for future disposable income in excess of Projected Disposable Income. Further, Debtor's liquidation analysis is faulty, lacking in support or analysis and is understated when considering cash/marketable security value and valuations for income producing real estate assets. Also, Debtor's division of liquidation proceeds cannot be substantiated where assets are derived from sole managed community assets and debts were incurred during the course of marriage.

Respectfully Submitted,

**MARTIN & DROUGHT, P.C.**
Weston Centre
112 East Pecan Street, Suite 1616
San Antonio, Texas 78205
Telephone: (210) 227-7591
Facsimile: (210) 227-7924
E-Mail: mcolvard@mdtlaw.com

By: /s/Michael G. Colvard
    Michael G. Colvard
    State Bar No. 04629200

**SUBCHAPTER V TRUSTEE**

**CERTIFICATE OF SERVICE**

I hereby certify that on April 26, 2021, a true and correct copy of the foregoing document was served via the Court's ECF System and on the parties listed on the attached service list via First Class Postage Pre-Paid Regular U.S. Mail.

/s/ Michael G. Colvard
Michael G. Colvard