**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **ALLAN L. REAGAN,** | § | **CASE NO. 20-11161-tmd** |
| | § | |
| Debtor | § | **CHAPTER 11** |

## DEBTOR-IN-POSSESSION'S SECOND AMENDED PROPOSED PLAN OF REORGANIZATION

Allan L. Reagan, the Debtor-in-Possession, ("**Debtor**") hereby submits to his Creditors, as proponent, his Second Amended proposed Plan of Reorganization ("**Plan**") pursuant to Chapter 11 of Title 11, United States Code (hereinafter the "**Bankruptcy Code**" or "**Code**").

### ARTICLE I

### DEFINITIONS

Except as otherwise indicated, the terms used in this Plan have the definitions used in the Bankruptcy Code and applicable Federal Rules of Bankruptcy Procedure and the Local Rules of the United States Bankruptcy Court and the United States District Court for the Western District of Texas (the "**Local Rules**"). In addition, the following terms shall have the following meanings:

1.01.  **Administrative Expense** shall mean those claims entitled to priority under § 507(a)(1), § 503(b) and § 330 of the Code, which include attorney's fees and expenses to the attorneys for Debtor, and shall include, without limitation, any actual and necessary expenses of preserving the Estate of the Debtor, any actual and necessary expenses of operating the business of the Debtor, any fees for Trustee and professionals employed by Trustee, and any indebtedness or obligations incurred or assumed by the Debtor in connection with his conduct of the business of Debtor, or for the acquisition or lease of property or for the obtaining of services to the Debtor, all allowances of compensation or reimbursement of expenses to the extent allowed by the Court

under the Code and any fees or charges assessed against the Estate of the Debtor under Chapter 123, Title 28, United States Code.

    1.02.  **Allowed Claim** shall mean a claim:

    (a)    with respect to which a proof of claim has been filed with the Court within the applicable period of limitation fixed by the Federal Rules of Bankruptcy Procedure, Rule 3003, in a liquidated non-contingent amount as to which no objection has been Filed by Debtor prior to the applicable Claims Objection Deadline and that is evidenced by a Proof of Claim or Interest, as applicable, timely Filed by the applicable Bar Date; or

    (b)    scheduled in the list of Creditors prepared and filed with the Court pursuant to Federal Rules of Bankruptcy Procedure, Rule 1007(b) and is not listed as disputed, contingent, or unliquidated as to amount in the schedules or this plan, and

    (c)    in either case as to (a) and (b), as to which no objection to the allowance thereof has been filed within any applicable period of limitation fixed by Federal Rules of Bankruptcy Procedure, Rule 3007, this Plan or an order of the Court, or as to which any such objection has been determined by a final order or judgment which is no longer subject to appeal and as to which no appeal is pending. An Allowed Claim shall not include unmatured or post-petition interest unless otherwise stated hereafter in the Plan.

    1.03.  **Allowed Secured Claim** shall mean an Allowed Claim secured by a lien, security interest, mortgage or other interest in property in which the Debtor has an interest, or which is subject to set-off under § 553 of the Code, to the extent of the value of such property securing the Allowed Secured Claim pursuant to § 506(a) of the Code or to the extent the amount is subject to said set-off as the case may be. An Allowed Secured Claim may include post-petition interest if permitted under § 506 of the Code.

1.04. **Bankruptcy Code** or the Code shall mean the United States Bankruptcy Code as contained in 11 U.S.C. § 101, et seq., and all amendments thereto.

1.05. **Bankruptcy Rules** shall mean the Federal Rules of Bankruptcy Procedure, as amended and any reference to a Bankruptcy Rule shall refer to the rules of procedure set forth therein.

1.06. **Chapter 11 Case** shall mean the above referenced and captioned Chapter 11 proceeding.

1.07. **Confirmation Date** shall mean the date upon which the Confirmation Order is entered by the Court.

1.08. **Confirmation Order** shall mean the order entered by the Court confirming the Plan in accordance with the provisions of Chapter 11 of the Code.

1.09. **Confirmed Plan** means this Plan together with any modification thereof provided in the Confirmation Order.

1.10. **Court or Bankruptcy Court** shall mean the United States Bankruptcy Court for the Western District of Texas in which the Debtor's Chapter 11 case is pending or the United States District Court for the Western District of Texas together with any court having competent jurisdiction to hear appeals from either the Bankruptcy Court or the United States District Court.

1.11. **Creditor** shall mean any party or entity having a claim against the Debtor, including but not limited to the following: Priority Creditors, Secured Creditors, Trade Creditors and Unsecured Creditors, as herein defined.

1.12. **Debtor** shall mean Allan L. Reagan, the Debtor-in-Possession and proponent of this Plan of Reorganization.

1.13. **Effective Date** shall mean fifteen (15) days from the Confirmation Date.

1.14.   **Estate** shall mean the estate created by § 541 of the Bankruptcy Code.

1.15.   **Plan** shall mean this Chapter 11 Plan of Reorganization, including any modification, amendments or supplements thereto.

1.16.   **Payment Due Date** shall mean the day payments to Creditors are due under the Plan, which shall be (a) the Effective Date, (b) September 30, 2021 and (c) December 31, 2021.

1.17.   **Payment Period** shall mean that period from and after the Effective Date during which payments are being made to Creditors.

1.18.   **Projection Period** shall mean a five-year period commencing on the Effective Date for which the Debtor's projected disposable income is calculated.

1.19.   **Pro Rata** shall mean the proportion that any Allowed Claim in any class bears to the aggregate amount of all Allowed Claims in such class.

1.20.   **Reorganized Debtor** shall mean the Debtor on and after the Effective Date.

1.21.   **Trustee** shall mean the Subchapter V Trustee, Michael G. Colvard, or any successor Trustee.

1.22.   **Unimpaired Claim** shall mean any claim or any class of claims that are not Impaired under the Plan. The term **Impaired** as used in this definition refers to and is governed by the language of § 1124 of the Code.

1.23.   **Unsecured Claim** shall mean any Allowed Claim against the Debtor (such claim being a claim against the Debtor's Excluded; separate; and/or separately managed property) for which the holder has no security for the repayment thereof or the portion of an Allowed Secured Claim for which the security held by the holder of that claim is insufficient to fully satisfy the claim. This category includes all claims deemed unsecured pursuant to § 506(a) of the Code.

## ARTICLE II

## DESCRIPTION AND HISTORY OF THE DEBTOR'S BUSINESS
## DEBTOR'S ESTATE

2.01.    Debtor's business has, for many years, involved making investments in real estate, startup ventures and marketable securities, as well as managing certain operating businesses. Additionally, Debtor is the founder, CEO and a principal owner of "Flix Brewhouse" branded group of dine-in movie theaters ("**Flix**"), which, as of the Petition Date, consisted of ten theaters that had opened and operated for some period of time during 2020 and one under construction. The first Flix began operations in June 2011, and, prior to the onset of the COVID-19 pandemic, the group was a successful movie theater operation concluding an expansion phase.  Initially, in mid-March 2020, all of the Flix theaters (and most movie theaters in the USA) were temporarily closed under a variety of government orders generally intended to "flatten the curve." Concurrently, the major movie studios postponed scheduled feature films or distributed the films through pay-per-view or streaming subscription channels. Both the Debtor and the movie theater industry in general then believed that the effects of the pandemic would ease by Summer, and the feature "Tenet" was rescheduled to release July 7. However, especially after Memorial Day social gatherings, COVID-19 infection, hospitalization and death rates once again spiked, and the major movie studios continued to delay movie releases.  "Tenet" was rescheduled for early September, and the industry adopted a series of protocols called CinemaSafe, designed to welcome back movie-goers. In each reopened auditorium, Flix installed a costly air purification and pathogen-neutralizing system called cold plasma bi-polar ionization.  Despite all these efforts, the restart of the movie theater industry was not successful. "Tenet" woefully underperformed expectations and the studios continued to remove films from exclusive theatrical release. In early October, Regal closed all 536 of its USA theaters. With the exception of two theaters unable to reopen due to

government restrictions, Flix attempted to operate at cash break-even prior to rent expense and debt service, but was unable to do so, depleting its liquid reserves as a result. The combination of the pandemic and the lack of any new releases resulted in an almost negligible revenue stream, and between mid-October and early November 2020 Flix closed all eight reopened theaters for an indefinite period. As of the date of this Amended Plan approximately 53% of the movie theaters in North America are likewise indefinitely closed. Flix, which once employed over 1,200, now has five full-time equivalent employees. Other cinema eatery chains, including CMX, Studio Movie Grill and most recently Alamo Drafthouse, have filed for Chapter 11 protection.

2.02.   As discussed above, in addition to Flix, Debtor has historically made investments in real estate, start-up companies, and marketable securities. One of the real estate investments, made through 3401 Hoteliers LP ("Hoteliers"), was a Wyndham Garden Hotel in Austin, Texas. Similar to Flix, with the onset of the pandemic, the revenues from that hotel disappeared. Hoteliers obtained a so-called "PPP" loan but once those funds were exhausted, and Hoteliers was unsuccessful after months of effort to obtain a debt forbearance, the hotel was closed on October 18, 2020. The secured lender for that property, Wells Fargo (as agent), obtained appointment of a receiver for the property on December 14, 2020 and, along with Hoteliers, has been attempting to market the property. A tentative buyer has been identified, but no contract signed as of the date of this Amended Plan. Were the tentative transaction to close it is unlikely that Hoteliers would receive any proceeds distributable to its owners.

2.03.   The Debtor is also the principal of Aramcor Inc., which provides management services for the Debtor's real estate holdings and related entities. Aramcor has, in the past, paid the Debtor a monthly gross salary of $96,000, which included services provided to Flix. During 2020, Debtor briefly went on the Flix payroll when it was resuming operations, but after the most

recent closure Debtor's salary from Flix has been eliminated, pending the return of Flix's ability to pay.

2.04.    Debtor's other principal business interests include partial ownership and control of the following (list is not complete of all business interests; readers are encouraged to review the Schedules filed in this case and the Liquidation Analysis attached as **Exhibit "B"**):

− Southwestern Retail Properties, L.P., which owns the shop space within the Sky Ridge Plaza shopping center in Round Rock, Texas.

− Southwestern Retail Properties II, LP, which owns the anchor space in Sky Ridge Plaza, of which approximately 70% is leased to the Round Rock, Texas Flix Brewhouse.

− Southwestern Retail Properties, III, LP which owns the single-tenant land and building on which the brand new (opened February 2020) Flix Brewhouse in San Antonio, Texas is located.

− Round Rock Business Park, LP, which owns the Park West Corporate Center in Round Rock, Texas.

− Prairie Pointe Estates, Inc., which owns a tract of land being  developed as a residential subdivision in Burnet County, Texas.

−100 Trinity LLC, which is a private investment entity that has made a variety of both specialty loans and conventional investments since 2008.

− as reflected on the Debtor's schedules, Debtor has small minority investments in certain other entities, including Newser, Inc. and First Stop Health.

2.05.    The Debtor has executed guaranty agreements, for certain lease obligations and loans, as set forth more fully in the Debtor's schedules.  The combined pressures of the loss of revenue to Flix, diminished receipts for the shopping center entities, loss of income from the hotel

property, declared defaults under various loans and leases and creditor pressures regarding the ripening contingent guaranty liabilities resulted in the need for the Debtor to file this case.

## BANKRUPTCY

2.06.   On October 22, 2020 (the "**Petition Date**"), Debtor filed a voluntary petition for relief under Subchapter V of Chapter 11 of the Bankruptcy Code, which commenced the Chapter 11 Case titled *In Re: Allan L. Reagan* and currently pending before this Court and assigned case number 20-11161 case (the "**Chapter 11 Case**"), the lead case for this adversary proceeding. Debtor continues to manage and operate his business as a debtor-in-possession pursuant to Bankruptcy Code § § 1107 and 1108. On October 27, 2020, Michael G. Colvard was appointed Subchapter V trustee.

## DEBTOR'S PLAN

2.07.   The Debtor's plan payment to Class 3 creditors analysis is attached as **Exhibit "A"**. The Plan provides for accelerated payments equal to the entire amount of the Debtor's projected disposable income for the next five years following the Effective Date, totaling $3,020,253. This sum is payable over the remainder of 2021 in three installments as follows:  $1,510,127 on the Effective Date, $755,063 on or before September 30, 2021, and $755,063 on or before December 31, 2021 (herein defined as the "Plan Payments"). The Trustee will make the disbursements from the Plan Payments to all Allowed Class 3 Claimants. Debtor will satisfy Class 1 and 2 from Debtor's deductions from disposable income provided under 11 U.S.C. § 1191(d)(1) or (2) or from other sources. By way of further explanation, the Plan Payments shall be used to satisfy Class 3 Allowed Claims – and authorized administrative or post-confirmation expenses, to the exclusion of payments for Class 1 and Class 2 payments on allowed claims, which will be paid by Reagan, individually, and not from funds earmarked for Plan Payments.

2.08.   The analysis of the five-year projected disposable income of $3,020,253 is set forth in **Exhibit "A"**, and includes all community income. Janet Reagan, the Debtor's non-filing spouse, has persistent medical issues relating to a diagnosis of cervical spondylosis and stenosis with myelopathy. These issues prevent her from performing normal chores and functional activities. As a result, the projected monthly household expenses include reasonable sums for her medical, domestic and household assistance.

2.09.   The percentage distribution to each Class 3 creditor is not yet certain, given that certain of the Claims are the subject of pending objections, and are subject to an allowance and/or estimation process.[1] Attached as **Exhibit "C"** is the current listing of claims filed and scheduled; Debtor believes several of the claims are subject to objection. In particular, certain of the underlying claims on which a guaranty exists are being paid, and others include amounts which are not recoverable under the guaranty and/or the underlying obligation.

### ARTICLE III

### MEANS OF IMPLEMENTATION AND ABILITY TO MAKE PLAN PAYMENTS

3.01.   The means necessary for the execution of the Debtor's Plan includes the continuation of the Debtor's business, except for the limited partnership that owns the Wyndham Garden Hotel, which property is under receivership with a sale under active negotiation between the property's lender and an unrelated prospective purchaser.

3.02.   Continuation of the Debtor's Business. The Debtor, as reorganized, will retain all property of the Estate. The retained property, excepting the interest in the Wyndham Garden, shall be used and employed by the Debtor in the continuance of his business. Of note is Debtor's intent to recast, restart and restore the Flix businesses to sound financial condition in order that their

---

[1] Certain creditors have claims directly against entities that have debt obligations to those creditors which were the subject of the Debtor's guaranty agreements, and may have recoveries directly from those entities.

recast debts and obligations are satisfied by the respective business as same come due. Many of those Flix debts and obligations are the same as were guaranteed by the Debtor and are the basis for unsecured Creditor Claims herein. Potentially enhancing the ability of Flix to meet its general obligations is a federal program called the "Shuttered Venue Operators Grant" ("**SVOG**"), for which Flix is eligible and has applied. If and to the extent Debtor's intent with respect to Flix is realized, Creditors with Flix-related Claims should significantly benefit.

3.03.   Reagan Note. Pursuant to an Order dated May 24, 2021, the Bankruptcy Court approved a loan from the Debtor to Flix Entertainment LLC in the principal amount of $1,000,000.00 (the "Reagan Note"), the source of which is liquidation of marketable securities. The proceeds of the Reagan Note will be utilized by Flix to start the re-opening process described in Section 3.02 above; the funding is necessary because of the uncertain timing of the receipt of funds under the SVOG program. The Reagan Note will be repaid from the second tranche of funds received by Flix under the SVOG program and is due in full (if not paid before) on December 31, 2021. As provided by Section 3.07, funding of Plan Payments is not dependent upon receipt of payments under the Reagan Note.

3.04.   Funding Sources. The Debtor shall fund the accelerated Plan payments to Class 3 Allowed claims from a combination of (a) unsecured borrowings from relatives and family entities, the terms of which loans have been agreed upon; (b) selective dispositions of non-business monetary assets such as marketable securities; (c) payments received on the Reagan Note, and (d) disposable income generated during the Payment Period. Debtor will fund payments for Class 1 and Class 2 secured creditors from sources other than Plan Payments. Debtor will pay all ad valorem tax obligation and will be responsible for any pre-confirmation IRS obligations which Debtor will satisfy from sources other than Plan Payments, as defined herein.

3.05. Advance Payment of Claims. Debtor does not intend to make advance payments on Claims. In the event of confirmation under Code Section 1191(b), all Claims disbursements are to be made by the Trustee as provided in Section 3.07. However, in Debtor's business judgment and discretion, Debtor's businesses (including the Wyndham Garden partnership if and to the extent of any liquidation proceeds) may directly or indirectly make various payments of their obligations, in advance or otherwise, over the balance of the Payment Period. Such payments by businesses or other third parties could result in an adjustment of a Creditor's Pro Rata or Allowable Claim as provided by Section 9.03.

3.06. Consensual Post-confirmation Modification. Notwithstanding any provision set forth in this Plan, the Debtor and any particular Creditor provided for in this Plan may enter into any agreement(s) after confirmation which modifies that Creditor's treatment and payment terms, so long as such agreement is reduced to writing and signed by the Debtor's and consenting Creditor's authorized representatives, does not provide for treatment which provides a pro rata recovery under this Plan better than the creditors in the same class, does not reduce the amount or delay the timing of payments to any other Creditor, and is consented to by the Trustee in the exercise of his reasonable business and legal judgment, in the event of confirmation under Code Section 1191(b). Any such modified agreement shall be deemed to supersede the terms of this Plan.

3.07. If and to the extent necessary to fund Plan Payments in the event of a deficit in amounts necessary to make Plan payments, the Debtor will liquidate investments to provide funding. Additionally, to secure Debtor's payment obligations to Class 3 Claimants due after the Effective Date (initially $1,510,126), a family trust established by the will of the Debtor's late father, the sole beneficiary of which is Debtor's nephew, will pledge two brokerage accounts

holding unencumbered marketable securities having a market value greater than such remaining payments.

3.08.    Payments by Trustee in the event of confirmation pursuant to 11 U.S.C. §1191(b). In the event of confirmation under Section 1191(b), Trustee will act as disbursing agent and Debtor shall remit the Plan payments reflected on **Exhibit "A"** to the Trustee on each Payment Due Date for distribution to creditors.

3.09.    Subchapter V Trustee. The Trustee shall serve as Subchapter V Trustee and as the disbursing agent under the Plan after confirmation under Code Section 1191(b). The Trustee shall perform all those duties provided to the Trustee pursuant to the Confirmed Plan. Distributions to Class 3 Creditors are to be made in accordance with the following procedures:

a.    During the Payment Period, the Trustee shall make all payments of distributions to creditors from the Plan payments. Such remittances shall occur no less frequently than fifteen (15) days after the first day of each month following receipt of a Plan payment from the Reorganized Debtor (a "Dividend Payment"). The Trustee shall make such distributions out from an account to be established by the Trustee at an institution on the approved U.S. Trustee depository list account, which shall be maintained by the Trustee for the duration of the Payment Period until Plan consummation following the final payment required under the Plan (the "Trustee Account").

b.    Disbursements to Allowed Claimants. As soon as is reasonably practicable after the Effective Date, the Trustee shall initiate disbursement of Plan payments from the Trustee Account, less amounts reserved for the Trustee's fees and expenses, to the holders of Allowed Class 3 Claims on a pro rata basis based on the total amount of Allowed Claims. For the avoidance of doubt, the disbursement to holders of Allowed Claims will be reduced in an amount equal to the Trustee's fees and costs incurred as Trustee and allowed in accordance with subparagraph (k) herein. The Reorganized Debtor shall provide a list of claims, including Allowed Claims and disputed claims to the Trustee on or about the same time when funds are delivered directing the Trustee which claims are "allowed claims" entitled to distribution, which claims are unresolved requiring the Trustee to withhold funds as required in subparagraph (e) herein and which claims constitute disallowed claims entitled to no distribution. Trustee shall not make payments on Class 1 or Class 2 allowed claims, or ad valorem tax claims, or any pre-confirmation IRS claim out of Plan Payments as defined herein.

c.     Addresses for Disbursements. Disbursements shall occur by check drawn on the Trustee Account and may be delivered by the Trustee to (i) the address for payment set forth on a proof of claim filed by the Holder or its authorized agent, (ii) at the address set forth in any written notices of change of address delivered to the Trustee at Michael G. Colvard, Martin & Drought, P.C., 112 East Pecan Street, Suite 1616, San Antonio, TX 78205, or (iii) if the Holder has not filed a proof of claim or otherwise provided the Trustee with notice of its address, in the address set forth in the applicable schedule filed by the Reorganized Debtors in this case. If any distribution to a Holder of an Allowed Unsecured Claim is returned to the Trustee as undeliverable, no further distributions shall be made to such Holder unless and until the Trustee is notified in writing of such Holder's then-current address or other necessary information for delivery, at which time all currently due missed distributions shall be made to such Holder as soon as practicable. Undeliverable distributions shall remain in the possession of the Trustee until such time as a distribution becomes deliverable and shall not be supplemented with any interest, dividends or other accruals of any kind. If, despite reasonable effort, the Trustee is unable to obtain the information necessary to deliver a distribution within six months following the return of the undeliverable distribution, the Trustee shall be authorized to treat such Holder's current and future claims as an Unclaimed Distribution (defined below).

d.     No Fractional Disbursements. Notwithstanding anything contained herein to the contrary, payments of fractional dollars will not be made. Whenever any payment of a fraction of a dollar under the Plan would otherwise be called for, the actual payment made will reflect a rounding down of such fractions.

e.     Withholding Requirements. In order to receive a distribution from the post-confirmation estate, a Holder must return to the Trustee an executed W-9 or W-8BEN form, and any other information necessary to comply with any withholding requirements of any governmental unit, as required under the Plan. If a Holder fails to provide such information after two written requests (which requests may be made via electronic mail) and following the expiration of six months from the initial request, such any current and future claims of such Holder to the Class Three Dividend shall be treated as an Unclaimed Distribution (defined below).

f.     Time Bar to Cash Distributions. Holders of Allowed Claims shall have 120 days from the date of issuance to negotiate a check issued by the Trustee on account of distribution. If a Holder fails to negotiate a disbursement check within this 120-day period, the Trustee shall have the right to void the check, and any current and future claims of such Holder to the Dividend shall be treated as an Unclaimed Distribution (defined below).

g.     Unclaimed Distributions and Reversion. Any distribution made by the Subchapter Trustee to a Holder of an Allowed Claim under this paragraph that is undeliverable for more than six months for lack of address, cannot be made on account of such Holder's failure to comply with the Withholding Requirements set forth in

subparagraph (e) above, or has not been negotiated within 120 days from the date of issuance on the distribution check shall become an "Unclaimed Distribution." Unclaimed Distributions shall be deemed unclaimed property under section 347(d) of the Bankruptcy Code and shall revest with the Reorganized Debtors and held by the Trustee within the Trustee Account. The Claim of any Holder or its successors with respect to such property shall be cancelled, discharged, and forever barred notwithstanding any applicable federal or state escheat, abandoned or unclaimed property laws, or any provisions in any document governing the distribution that is an Unclaimed Distribution, to the contrary. Unclaimed Distributions shall be distributed by the Trustee to the remaining Holders of Allowed Claims, which distribution shall be effectuated through the subsequent distributions provided for under the Plan as if the Claim underlying such Unclaimed Distribution had been disallowed.

h.     No Liability.  Following entry of the Confirmation Order, any disbursements made by the Trustee  on account of a Claim are deemed authorized disbursements, and the Trustee shall have no liability for these disbursements. The Trustee's obligations are limited to acting as the disbursement agent under the Plan, and the Trustee shall have no liability to any person in the event that the Reorganized Debtor fails to timely deliver payments to the Trustee, or otherwise fails to perform its obligations under the Plan. The Trustee shall have no obligation to disburse Dividend Payments unless and until he determines that there are adequate funds in the Trustee Account to cover a distribution to Holders, net of the Trustee's fees and costs. The Trustee shall not have any obligations to pursue and/or manage the Reorganized Debtors' pursuit of Causes of Action.

i.     Reporting. The Trustee shall file all reports required by the United States Trustee in the manner prescribed by the United States Trustee Program. Upon the completion of the Plan, the Trustee shall file his final report and seek a discharge of his duties as Trustee.

j.     Notices. The Trustee may limit notice of any and all reports, documents, pleadings or other filings related to this case to those parties directly affected and to those interested parties which have filed a notice of appearance or proofs of claim, as necessary. The Trustee shall be under no obligation to serve parties which are neither affected by any report, document, pleading or other filing or have made no appearance whatsoever before this Court.

k.     Post-Confirmation Fees and Expenses of the Trustee. The Trustee shall be entitled to recoup reasonable fees and costs incurred performing his obligations as Trustee under this paragraph from the Plan Payments by submitting a fee and expense statement to the Reorganized Debtors, the Office of the United States Trustee, and Holders of Allowed Claims (the "Notice Parties"). The Trustee shall be compensated for his post-confirmation duties at his normal hourly rate and shall be paid from the amounts paid by the Debtor for Plan Payments. The amount distributed or reserved to creditors will be net of the amounts remitted by the

Reorganized Debtor to the Trustee. The Trustee's fees and expense shall be disclosed in the quarterly report filed with the Court. All parties in interest will have 21 days after the quarterly report is filed to object to the Trustee's fees and expenses disclosed therein. If no objection is received, the Trustee may disburse his fees and expenses from the Plan Payments without further order of the Court.

l.      Distributions by the Trustee on Disputed Claims. Except as otherwise provided in the Plan, no partial distributions will be made with respect to a Disputed Claim until the resolution of such dispute by settlement or Final Order. Unless otherwise agreed to by the Reorganized Debtors or as otherwise specifically provided in the Plan, a Holder who holds both an Allowed Claim and a Disputed Claim will not receive a distribution until such dispute is resolved by settlement or Final Order. The provisions of this section are not intended to restrict payment of any Allowed Unsecured Claims which are not disputed. Until a disputed claim is resolved, payment distributions to claimants holding disputed claims will be retained by the Trustee subject to a final resolution of the Disputed Claim. Upon resolution in favor of the Allowed Claim the Trustee will distribute withheld funds within the next Payment Period. If the Disputed Claim is disallowed, the Trustee will make withheld funds available to allowed claim holders within the next payment period.

m.      Additional Post-Confirmation Duties of the Trustee. In addition to the duties set forth above and as set forth under 11 U.S.C. § 1183, duties of the Trustee include those relating to:

   i.      Monitoring the collateral value of marketable securities and other assets pledged as security for Plan payments, to the extent of the remaining Plan payments;

   ii.      Review and approval of any process for or in relation to obtaining any post-petition loan (other than the loans to make the Plan Payments) that is secured by a security interest on property of the Estate, if the projected income from the property is required to fund future Plan payments;

   iii.      The right to appear and be heard in any post-confirmation hearing in relation to any issue arising within the post-confirmation affairs of the reorganized Debtor;

   iv.      Right to acquire required bonding, which costs are to be satisfied out of Debtor's Plan Payments under 11 U.S.C. § 1191(d);

   vii.      Other matters reasonably necessary to ensure that the Plan Payments are made on a full and timely basis, and filing of a final report.

## ARTICLE IV

## LIQUIDATION ANALYSIS

4.01.    To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a Chapter 7 liquidation. A liquidation analysis is attached to the Plan as **Exhibit "B"**.  As set forth, the accelerated Plan payments clearly exceed the expected proceeds from liquidation of assets and are highly probable of being fully funded and distributed to Creditors significantly sooner than liquidation proceeds.

## ARTICLE V

## UNCLASSIFIED CLAIMS

5.01.    **Administrative Expenses**. Administrative Expenses shall be paid the full amount of their Allowed Claim(s) on the Effective Date or upon entry of an order allowing the administrative expense or as agreed to between the Debtor, the Trustee, as applicable,  and the holder of such Claim. The deadline for filing a claim for an administrative expense including all professional fee applications shall be 30 days from the date of entry of the Confirmation Order. The estimated Administrative Claims are those which will be owed to Debtor's counsel and to Debtor's financial advisor, HMP Advisory Holdings, LLC dba Harney Partners, and any amounts owed to the Trustee.   Payments on allowed Administrative Claims shall come from funds earmarked for Plan Payments, as defined herein.

5.02.    **Priority Tax Claims**. Debtor is not aware of any threatened or asserted Priority Tax Claims.  To the extent they exist, pre-petition claims held by governmental units of the type described in §507(a)(8) of the Bankruptcy Code will be paid in full, with interest at an annual rate of 12% in equal monthly installments over a period beginning 30 days after the Effective Date of

the Plan and ending five years after the date of the filing of the petition. Notwithstanding the foregoing treatment, any holder of a §507(a)(8) claim may file a written election to be treated on the same basis as any nonpriority unsecured claim. Any such election must be filed in writing not later than 14 days after entry of the order confirming the plan.  All Priority Tax Claims shall be satisfied by Reagan from sources other than Plan Payments, as defined herein.

**ARTICLE VI**

**CLASSIFICATION OF CLAIMS**

6.01.    **Class 1**: The Allowed Secured Claims of Ford Motor Credit and Wells Fargo Auto Finance.

6.02    **Class 2**:  The Allowed Secured Claim of Interactive Brokers, LLC

6.02.    **Class** 3:  All Allowed Unsecured Claims of creditors with claims against the Debtor.

6.03.    **Class 4:** Allowed Claims of Insiders or Affiliates.

**ARTICLE VII**

**TREATMENT OF CLAIMS**

7.01.    **Class 1: Unimpaired**. The Allowed Secured Claims of Ford Motor Credit and Wells Fargo Auto Finance will be paid in full according to the terms of the financing agreement, and the creditor shall retain its lien – with such payments being made by Reagan using sources other than Plan Payments, as defined herein.

7.02.    **Class 2**.  Unimpaired.  The Allowed Secured Claim of Interactive Brokers, LLC will be paid in full according to its terms and the creditor shall retain its lien – with such payments being made by Reagan using sources other than Plan Payments, as defined herein.

7.03.   **Class 3: Impaired**. All Allowed Unsecured Claims shall receive their pro rata share of Plan Payments after deduction for the Trustee's costs and other administrative expenses as allowed herein.

7.04.   **Class 4: Impaired**. No Insiders or Affiliates shall receive Plan Payments.

## ARTICLE VIII

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

8.01.   All executory contracts or unexpired leases, not otherwise explicitly assumed or rejected by the Debtor prior to confirmation of the Plan, are rejected by the Debtor under the Plan as of the Effective Date, except as otherwise provided under "Treatment of Claims" in the Plan. Debtor will file a list of contracts to be assumed prior to the confirmation hearing.

8.02.   A proof of a claim arising from the rejection of an executory contract or unexpired lease must be filed no later than thirty (30) days after the date of the order confirming this Plan.

## ARTICLE IX

## PROCEDURE FOR RESOLVING CONTESTED CLAIMS

9.01.   **Filing Objections**. Debtor shall be responsible for preparing, filing and prosecuting objections to claims or motion(s) to estimate claims for allowance. Objections to claims may be filed with the Bankruptcy Court and served upon each holder of the claims to which objections are filed not later than ninety (90) days after the Confirmation Date unless such time is extended by order of the Court.  No distribution will be made on account of a disputed claim unless and until such claim is allowed.

9.02.   **Prosecution of Objections**. The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

9.03    **Payments by Third Parties**.    Any Claim will be deemed reduced and/or disallowed, as applicable, without a claim objection having to be filed by the Debtor and without any further notice, action or order of the Bankruptcy Court, to the extent that the holder of such Claim (a) receives cumulative payment in full of the Allowable Claim from Debtor and/or a person or entity which is not the Debtor, or any combination thereof, or (b) receives partial payment on account of such Claim from a person or entity which is not the Debtor prior to the date on which the Claim Pro Rata is determined, or (c) receives a written notice of such proposed reduction or disallowance from the Debtor in accordance with the provisions of this paragraph, and does not object in writing to the proposed reduction or disallowance set forth in such notice within twenty (21) days from service of such notice. To the extent a Holder of a Claim receives, on account of such Claim, both a distribution under the Plan and a payment from a person or entity that is not the Debtor on account of such Claim and together such payments exceed the Allowable Claim, the Debtor may serve a notice of such excess or duplicative payment and such Holder must, within 21 days of receipt thereof, either (a) repay or return the distribution received under the Plan to Debtor or to the Trustee if Plan Payment was received on account of such claim, but only to the extent that the Holder of such Claim received payment on account of such Claim in an amount greater than the total amount that the holder of such Claim was owed on account of such Claim (for purposes of this provision, the total amount owed on account of such Claim shall be without regard to any limitations in the Bankruptcy Code and/or statutory cap, such as, for example, the cap provided for under section 502(b)(6) of the Bankruptcy Code), or (b) file and serve on the Debtor an objection setting forth the basis upon which the Holder of such Claim should not be required to return the amounts set forth in the notice received by such Holder. This Section 9.03 shall not limit, reduce, alter or otherwise modify in any way any obligations of any non-Debtor obligor or

guarantor with respect to any payment assurances arising under or relating to executory contracts and unexpired leases, whether or not rejected by Debtor in accordance with Section 8.01 of this Plan.

## ARTICLE X

## MISCELLANEOUS PROVISIONS

10.01. **Vesting of Assets**: On the Effective Date, title to all assets and properties dealt with by the Plan shall remain property of the Estate until such time as all Plan Payments are made, at which time all assets and properties dealt with by the Plan shall vest in the Reorganized Debtor free and clear of all Claims and Interests other than any contractual secured claims granted under any lending agreement.  If the Reorganized Debtor defaults in performing under the provisions of this Plan and this case is converted to a case under chapter 7, all property vested in the Reorganized Debtor and all subsequently acquired property owned as of or after the conversion date shall re-vest and constitute property of the bankruptcy estate in the converted case.

10.02. **Retention of Jurisdiction**: Under Sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Case and this Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

    a.    allow, disallow, determine, subordinate, litigate, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Equity Interest (whether filed before or after the Effective Date and whether or not contingent, Disputed or unliquidated or for contribution, indemnification or reimbursement), including the compromise, settlement and resolution of any request for payment of any Administrative Expense Claim or Priority Claim, the resolution of any Objections to the allowance or priority of Claims or Equity Interests and to hear and determine any other issue presented hereby or arising hereunder, including during the pendency of any appeal relating to any Objection to such Claim or Equity Interest to the extent permitted under applicable law;

b.  grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or this Plan;

c.  hear and determine any and all adversary proceedings (including the Declaratory Action), motions, applications, and contested or litigated matters, including, but not limited to, all causes of action, and consider and act upon the compromise and settlement of any Claim, or cause of action;

d.  determine and resolve any matters related to the assumption, assumption and assignment or rejection of any executory contract or unexpired lease to which the Debtor is or was a party, or with respect to which the Debtor may be liable, and to hear, determine and, if necessary, liquidate any Claims arising therefrom;

e.  ensure that all distributions to holders of Allowed Claims under this Plan and the performance of the provisions of this Plan are accomplished as provided herein and resolve any issues relating to distributions to holders of Allowed Claims pursuant to the provisions of this Plan;

f.  construe, take any action and issue such orders, prior to and following the Confirmation Date and consistent with Section 1142 of the Bankruptcy Code, as may be necessary for the enforcement, implementation, execution and consummation of this Plan and all contracts, instruments, releases, other agreements or documents created in connection with this Plan, including, without limitation, the Confirmation Order, for the maintenance of the integrity of this Plan in accordance with Sections 524 and 1141 of the Bankruptcy Code following the occurrence of the Effective Date;

g.  determine and resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation, implementation or enforcement of this Plan (and all exhibits and schedules to this Plan) or the Confirmation Order, including the indemnification and injunction provisions set forth in and contemplated by this Plan or the Confirmation Order, or any entity's rights arising under or obligations incurred in connection therewith;

h.  modify this Plan before or after the Effective Date pursuant to Section 1127 of the Bankruptcy Code or modify the Confirmation Order or any contract, instrument, release, or other agreement or document created in connection with the Plan or the Confirmation Order, or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, this Plan, the Confirmation Order or any contract, instrument, release, or other agreement or document created in connection with this Plan or the Confirmation Order, in such manner as may be necessary or appropriate to consummate this Plan, to the extent authorized by the Bankruptcy Code and this Plan;

i.  issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any entity with

consummation, implementation or enforcement of this Plan or the Confirmation Order;

j.　　enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

k.　　determine any other matters that may arise in connection with or relating to this Plan and the Confirmation Order or any contract, instrument, release, or other agreement or document created in connection with this Plan or the Confirmation Order;

l.　　determine such other matters and for such other purposes as may be provided in the Confirmation Order;

m.　　hear and determine matters concerning state, local and federal taxes in accordance with Sections 346, 505 and 1146 of the Bankruptcy Code;

n.　　enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Chapter 11 Case;

o.　　determine and resolve controversies related to the Estate or the Debtor from and after the Effective Date;

p.　　hear and determine any other matter relating to this Plan; and

q.　　enter a final decree closing this Chapter 11 Case.

10.03. **Adversary Proceedings** and Retained Claims: The Debtor reserves the right to begin or continue any adversary proceedings permitted under Title 11, United States Code and the applicable Federal Rules of Bankruptcy Procedure. Debtor reserves all claims against any party, including but not limited to preference actions under Section 547 of the Bankruptcy Code, fraudulent conveyance claims under Section 548 of the Bankruptcy Code and applicable state law (including Uniform Fraudulent Conveyance Act claims), setoff and recoupment rights, and federal and state law causes of action

10.04. **Valuation of Secured Claims**: All Secured Claims shall be allowed in an amount as agreed to by the Debtor and the Creditor holding the Secured Claim, as provided by this Plan, or as ordered by the Court pursuant to § 506. The Court shall not be required to determine the amount of a Secured Claim unless a motion to require such determination is filed at least ten (10)

days prior to the first hearing on confirmation by the Debtor or other party in interest. In the event that such a Motion is not filed, the value of the property as set forth in this Plan shall be deemed as the court's finding as to valuation, and, if no value is set forth in this Plan for property against which a Creditor claims a lien, or if such Creditor's claim is treated as unsecured in this Plan, then such Creditor's claim shall be deemed an Unsecured Claim.

10.05. **Modification of Plan**: This Plan may be modified or corrected upon motion of the Debtor pursuant to § 1193 (a) prior to Confirmation. Modifications or corrections may be made without additional disclosure provided that the Court finds that the modifications or corrections do not adversely affect any Claim or Interest or classes of Claims or Interests. After the Confirmation Date, the Debtor, upon order of the Court and in accordance with § 1193(b) may remedy any defect or omission or reconcile any inconsistencies in the Plan in such a manner as may be necessary to carry out the purposes and intent of the Plan.

## ARTICLE XI

## DISCHARGE AND OTHER EFFECTS OF CONFIRMATION

11.01. **Discharge**. If the Debtor's Plan is confirmed under § 1191(a), on the Effective Date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt: (i) imposed by this Plan; or (ii) to the extent provided in § 141(d)(6). If the Debtor's Plan is confirmed under § 1191(b), confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the first five years of this Plan, or as otherwise provided in § 1192 of the Code. The Debtor will not be discharged from any debt: (i) on which the last payment is due after the first five years

of the Plan, or as otherwise provided in § 1192; or (ii) excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

11.02. **Tax Liens**. Tax liens, if any, survive the plan confirmation, a bankruptcy discharge, and dismissal of the case. The liens continue to be enforceable against the Reorganized Debtor's property to the extent, priority, and validity such liens were entitled to as of the Petition Date and under federal law.

11.03. **Plan Creates New Obligations**. The obligations to creditors that the Debtor undertakes in the Confirmed Plan replace those obligations to creditors that existed prior to the Effective Date of the Plan. The Debtor's obligations under the Confirmed Plan constitute a binding contractual promise that, if not satisfied through performance of the Plan, create a basis for an action for breach of contract under Texas law. To the extent a creditor retains a lien under the Plan, that creditor retains all rights provided by such lien under applicable non-Bankruptcy law.

11.04. **Legally Binding Effect**. The provisions of this Plan shall bind all Creditors and Interest Holders, whether or not they accept this Plan. On and after the Effective Date, all holders of Claims shall be precluded and forever enjoined from asserting any (i) Claim against the Debtor based on any transaction or other activity of any kind that occurred prior to the Confirmation Date, except as permitted under the Plan.

11.05. **Injunction**. The entry of the Confirmation Order will operate as a general resolution with prejudice, as of the Effective Date, of all pending Legal Proceedings, if any, against the Debtor and his assets and properties and any proceedings not yet instituted against the Debtor or his assets, except as otherwise provided in the Plan. Except as otherwise expressly provided in the Plan or the Confirmation Order, all Persons who have held, may have held, hold, or may hold Claims against the Debtor are permanently enjoined on and after the Effective Date from (a)

commencing or continuing in any manner any action or other proceeding of any kind against the Debtor or his property, with respect to any such Claim, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order with respect to any such Claim against the Debtor or his property, (c) creating, perfecting, or enforcing any encumbrance of any kind against the Debtor or his property, with respect to such Claim, (d) asserting any right of subrogation of any kind against any obligation due to the Debtor or the property of the Debtor or the Estate with respect to any such Claim and (e) asserting any right of setoff or recoupment against the Debtor or the Estate except as specifically permitted by §553 of the Bankruptcy Code. Unless otherwise provided in the Plan or by order of the Bankruptcy Court, all injunctions or automatic stays provided for in these cases pursuant to §105, if any, or §362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date will remain in full force and effect until the Effective Date.

## ARTICLE XII

### DEFAULT

12.01.  In the event of a non-monetary or monetary default by the Debtor under the Plan, the affected Creditor shall provide written notice of such default to:

> Allan L. Reagan
> 2000 S. Interstate Hwy 35, Ste Q11
> Round Rock, Texas 78681-6942
>
> AND
>
> Mark C. Taylor
> Waller Lansden Dortch & Davis, LLP
> 100 Congress Ave., Ste. 1800
> Austin, Texas 78701

<u>AND</u>

Michael G. Colvard, Trustee
Weston Centre
112 E. Pecan Street, Suite 1616
San Antonio, Texas 78205

by United States certified mail-return receipt requested, and by United States first class mail, postage prepaid, and by e-mail to Mark C. Taylor, mark.taylor@wallerlaw.com, AND Allan Reagan, alr78681@gmail.com, AND mcolvard@mdtlaw.com.

The Debtor shall have thirty (30) days from the earlier to occur of: (i) the date of receipt of the written notice sent by certified mail, or (ii) the date of receipt of the written notice sent by first class mail to cure the default (For the purposes of the written notice by United States first class mail, postage prepaid, such notice will be deemed received five (5) days after depositing the same in the United States mail). In the event the Debtor does not cure the default within the thirty (30) day period provided herein, the affected Creditor or Interest Holder shall be entitled to pursue its state and/or federal law remedies – as limited by the Plan – without further notice or hearing before the Court.

12.02. The Debtor must remain current with respect to all post-petition federal tax liability, including but not limited to making timely federal tax deposits, the timely filing of tax returns and the payment of all tax liabilities as required by applicable law during the term of the Plan. Failure to remain current with respect to one or more post-petition federal tax liabilities shall constitute an event of default under of the plan; however, the Bankruptcy Court shall have no jurisdiction over any tax issues arising after the date of confirmation. There will be no automatic stay or post-confirmation injunction with regard to federal tax liabilities accrued after the petition date, and the IRS shall be free to collect any such liabilities in accordance with the provisions of Title 26 of the United States Code and other applicable law.

12.03. Upon any final and non-curable default of the Plan by Debtor, a Creditor may accelerate its allowed prepetition and post-petition claims, and any future administrative claims, and declare the outstanding amounts of such claims to be immediately due and owing and pursue any and all available state and federal rights and remedies as provided by law without further order of this Court.

12.04. In the event the Plan is confirmed pursuant to 11 U.S.C. § 1191(b), the following default provisions shall apply: Pursuant to 11 U.S.C. § 1191(c)(3), in the event that payments are not made by the Debtor as required by the Plan and Confirmation Order, creditors and parties-in-interest shall have the right to seek dismissal or conversion of the Bankruptcy Case. Creditors holding liens against specific assets of the Debtor shall also have the right to file a motion for relief from the automatic stay. The Bankruptcy Court shall retain jurisdiction to determine all matters related to enforcement of the Plan and Confirmation Order.

Respectfully submitted,

WALLER LANSDEN DORTCH & DAVIS, LLP

By: _/s/ Mark C. Taylor_____
    Mark C. Taylor
    State Bar No. 19713225
    William R. "Trip" Nix
    State Bar No. 24092902
    100 Congress Avenue, Suite 1800
    Austin, Texas 78701
    (512) 685-6400
    (512) 685-6417 (FAX)
    mark.taylor@wallerlaw.com
    trip.nix@wallerlaw.com

ATTORNEY FOR DEBTOR

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served upon the parties listed below electronically via the Court's ECF system on May 24, 2021 and on all persons on the attached service list via first class mail, on May 25, 2021.

**Debtor**
Allan L. Reagan
2000 S. IH−35, Suite Q11
Round Rock, TX 78681−6942

**Trustee (*via ECF*)**
Michael G. Colvard
Weston Center
112 East Pecan Street, Suite 1616
San Antonio, TX 78205

**U.S. Trustee (*via ECF*)**
United States Trustee
903 San Jacinto, Room 322
Austin, TX 78701


*/s/ Mark C. Taylor*
Mark C. Taylor

## SERVICE LIST

**Debtor**
Allan L. Reagan
585 River Run
Leander, TX 78641

**Trustee**
Michael Colvard
Weston Center
112 East Pecan Street, Suite 1616
San Antonio, TX 78205

**Twenty-largest creditors:**
Madison/East Towne LLC
c/o CBL & Associates
2030 Hamilton Place Blvd.
Chattanooga, TN 37421-6000

Village @ La Orilla
Attn:  Philip Lindborg
12809 Donette Court N.E.
Albuquerque, NM 87112

Martin S. Headley
1500 Knobb Hill Lane
Paoli, PA 19301

Comerica Bank
Attn:  Lesley B. Higginbotham, VP
Special Assets Group - Texas Market
P.O. Box 650282
Dallas, TX 75265-0282

Ann E. Headley
1500 Knobb Hill Lane
Paoli, PA 19301

Wyndham Franchisor LLC
22 Sylvan Way
Parssipany, NJ 07054

Spain Family IX LLC
c/o Patrick J. Spain
11809 Oak Branch Dr.
Austin, TX 78737

Bennett Living Trust
Attn:  Michael Bennett
2321 Abbot Kinney Blvd.
Venice, CA 90291

Gary J. Neumayer
2201 Berrywood Lane
Bloomington, IL 61704-2449

Headley Investments, LP
1500 Knobb Hill Lane
Paoli, PA 19301

Frances and Wayne Lee
468 Jade Tree Lane
Monterey Park, CA 91754

Capital One Spark Visa for Business
P.O. Box 30285
Salt Lake City, UT 84130-0285

Chase Ink Card for Business
P.O. Box 15298
Wilmington, DE 19850-5298

Ford Motor Credit Corp.
P.O. Box 105704
Atlanta, GA 30348

Comerica Bank
Dept. #166901
P.O. Box 55000
Detroit, MI 48255-1669

Citicard Advantage Mastercard
Cardmember Services
P.O. Box 6062
Sioux Falls, SD 57117

Discover Card
Billing Inquiries
P.O. Box 30943
Salt Lake City, UT 84130

Chase Visa Mileage Plus
P.O. Box 15298
Wilmington, DE 19850-5298

Comerica Bank
Attn:  J.B. Stueckler, AVP
300 W. Sixth Street
Austin, TX 78701

**Unsecured Creditors/**
**Interested Parties**
3401Hoteliers, LP
Attn: Allan Reagan
2000 S. IH-35, Suite Q11
Round Rock, TX 78681

038540-04298/4839-4773-4992.1

83rd Street Development, LLC
Attn: Trent G. Moore
9000 Cameron Parkway
Oklahoma City, OK 73114

Action Propane
2601 S. Hwy. 183
Leander, TX 78641

ADT
P.O. Box 660418
Dallas, TX 75266

Al Clawson Disposal
P.O. Box 416
Jarrel, TX 76537

AT&T
P.O. Box 5001
Carol Stream, IL 60197

AT&T (DirectTV)
P.O. Box 5014
Carol Stream, IL 60197

Bank of Austin
Attn: David H. Marks, SVP
8611 N. Mopac Exp., Suite 101
Austin, TX 78759

DT Chandler, LLC
Attn: Bret Anderson, Manager
140 E. Rio Salado Parkway, Unit 305
Tempe, AZ 85281

FB Capital, LLC
Attn: Allan Reagan
2000 S. IH-35, Suite Q11
Round Rock, TX 78681

Flix Brewhouse AZ, LLC
Attn: Allan Reagan
2000 S. IH-35, Suite Q11
Round Rock, TX 78681

Flix Brewhouse Holdco, LLC
Attn: Allan Reagan
2000 S. IH-35, Suite Q11
Round Rock, TX 78681

Flix Brewhouse Indiana, LLC
Attn: Allan Reagan
2000 S. IH-35, Suite Q11
Round Rock, TX 78681

Flix Brewhouse Iowa, LLC
Attn: Allan Reagan
2000 S. IH-35, Suite Q11
Round Rock, TX 78681

Flix Brewhouse NM, LLC
Attn: Allan Reagan
2000 S. IH-35, Suite Q11
Round Rock, TX 78681

Flix Brewhouse OK, LLC
Attn: Allan Reagan
2000 S. IH-35, Suite Q11
Round Rock, TX 78681

Flix Brewhouse SAT, LLC
Attn: Allan Reagan
2000 S. IH-35, Suite Q11
Round Rock, TX 78681

Flix Brewhouse III, LLC (Mansfield)
Attn: Allan Reagan
2000 S. IH-35, Suite Q11
Round Rock, TX 78681

Flix Brewhouse Texas IV, LLC
Attn: Allan Reagan
2000 S. IH-35, Suite Q11
Round Rock, TX 78681

Flix Brewhouse Texas V, LLC
Attn: Allan Reagan
2000 S. IH-35, Suite Q11
Round Rock, TX 78681

Flix Brewhouse TX II, LLC
Attn: Allan Reagan
2000 S. IH-35, Suite Q11
Round Rock, TX 78681

Flix Brewhouse TX IV, LLC
Attn: Allan Reagan
2000 S. IH-35, Suite Q11
Round Rock, TX 78681

Flix Brewhouse Wi, LLC
Attn: Allan Reagan
2000 S. IH-35, Suite Q11
Round Rock, TX 78681

Flix Brewhouse, LLC
Attn: Allan Reagan
2000 S. IH-35, Suite Q11
Round Rock, TX 78681

Flix Entertainment, LLC
Attn: Allan Reagan
2000 S. IH-35, Suite Q11
Round Rock, TX 78681

GCRE/TX Main Marketplace LLC
and LCAR Main Market LLC
Attn: Joseph D. Goveia
24855 Del Prado
Dana Point, CA 92629

Hospitality Investors, Inc.
Attn: Allan Reagan
2000 S. IH-35, Suite Q11
Round Rock, TX 78681

Internal Revenue Services
Centralized Insolvency Office
P.O. Box 7346
Philadelphia, PA 19101-7346

Janet L. Reagan
585 River Run
Leander, TX 78641

Kathleen R. McCormick
6801 Greenwood Ave., Unit 210
Seattle, WA 98103

Lone Star National Bank
Attn:  Sergio Gonzalez, 1st VP
2100 Boca Chica Blvd.
Brownsville, TX 78520

Merle Hay Investors LLC
c/o Abbell Credit Corporation
30 N. LaSalle St., Suite 2120
Chicago, IL 60602

Mikeska Monahan & Peckham, P.C.
100 Congress Ave., Suite 990
Austin, TX 78701

Pedernales Electric Company
P.O. Box 1
Johnson City, TX 78636

Poolwerx by Blue Bottom Pool Supply
3021 S. IH35, Suite 140
Round Rock, TX 78664

Prudential Mortgage Capital Company LLC
c/o Prudential
100 Mulberry St., Gateway Center 4
8th Floor
Newark, NJ 07102

ROP Artcraft LLC
Attn: Adam Frank
5678 N. mesa St.
El Paso, TX 79912

Round Rock Business Park, LLC
Attn: Allan Reagan
2000 S. IH-35, Suite Q11
Round Rock, TX 78681

RPT Realty, L.P.
19 W. 44th Street, Suite 1002
New York, NY 10036

Securian/Minnesota Life Insurance Co.
c/o Trinity Real Estate Finance
100 NE Loop 410, Suite 972
San Antonio, TX 78216

Southwestern Retail Properties II, LP
Attn: Allan Reagan
2000 S. IH-35, Suite Q11
Round Rock, TX 78681

Southwestern Retail Properties III, LP
Attn: Allan Reagan
2000 S. IH-35, Suite Q11
Round Rock, TX 78681

Southwestern Retail Properties LP
Attn: Allan Reagan
2000 S. IH-35, Suite Q11
Round Rock, TX 78681

Spectrum
P.O. Box 60074
City of Industry, CA 91716-0074

UBS Real Estate Securities, Inc.
c/o Berkadia Commercial Mortgage LLC
6955 Union Park Center, Suite 450
Midvale, UT 84047

U.S. Trustee
903 San Jacinto, Suite 230
Austin, TX 78701

Wells Fargo Auto
MAC T9017-026
P.O. Box 168-48
Irving, TX 75016-8048

Williamson County Tax Office
904 S. Main Street
Georgetown, TX 78626

038540-04298/4839-4773-4992.1

**Parties Filing Claims**
Discover Bank/Discover Products
PO Box 3025
New Albany, OH 43054-3025

JPMorgan Chase Bank, N.A.
c/o National Bankruptcy Services LLC
P.O. Box 9013
Addison, TX 75001

Capital One Bank (USA) N.A.
By American InfoSource as agent
4515 N. Santa Fe Ave.
Oklahoma City, OK 73118

Madison/East Towne, LLC
Attn: Caleb T. Holzaepfel
736 Georgia Ave., Ste. 300
Chattanooga, TN 37402

**Parties Requesting Notice**
Stephen G. Wilcox
Wilcox Law, PLLC
P.O. Box 201849
Arlington, TX 76006

Shane P. Tobin
Henry G. Hobbs, Jr.
Acting United States Trustee
903 San Jacinto Blvd., Room 230
Austin, TX 78701

Kell C. Mercer
Kell C. Mercer, P.C.
1602 E. Cesar Chavez Street
Austin, TX 78702

Robert J. Diehl, Jr.
Jaimee L. Witten
Noel J. Ravenscroft
Bodman PLC
6th Floor at Ford Field
1901 St. Antoine Street
Detroit, MI 48226

Bruce J. Zabarauskas
Thompson & Knight LLP
1722 Routh Street, Suite 1500
Dallas, TX 75201

Michael Flume
Flume Law Firm, LLP
1020 N.E. Loop 410, Suite 530
San Antonio, TX 78209

David M. Blau
Clark Hill PLC
151 S. Old Woodward Ave., Suite 200
Birmingham, MI 48009

Ross A. Plourde
McAfee & Taft
211 North Robinson, 8th Floor
Oklahoma City, OK 73102-7103

Harrel L. Davis III
Gordon Davis Johnson & Shane P.C.
4695 N. Mesa Street
El Paso, TX 79912

Daniel M. Eliades/David Catuogno/
Caitlin C. Conklin
K&L Gates, LLP
One Newark Center, Tenth Floor
1085 Raymond Boulevard
Newark, NJ 07102

Jack O'Connor
Sugar Felsenthal Grais & Helsinger LLP
30 N. LaSalle St., Suite 3000
Chicago, IL 60602

William T. Peckham
1104 Nueces St., Suite 104
Austin, TX 78701-2106

Stephen K. Lecholop II
Rosenthal Pauerstein
Sandoloski Agather LLP
755 East Mulberry, Suite 200
San Antonio, TX 78212

Peter Lindborg
550 N. Brand Blvd., Suite 1830
Glendale, CA 91203

Louis D. Lopez
Fennemore Craig, P.C.
2394 E. Camelback Rd., Suite 600
Phoenix, AZ 85016

Richard E. Hettinger
Davidson Troilo Ream & Garza, P.C.
601 N.W. Loop 410, Suite 100
San Antonio, TX 78216

Robert P. Franke
Audrey L. Hornisher
Clark Hill Strasburger
901 Main St., Suite 6000
Dallas, TX 75202-3794

038540-04298/4839-4773-4992.1

Stephan A. Roberts
Clark Hill Strasburger
720 Brazos Street, Suite 700
Austin, TX 78701

Tara LeDay
McCreary Veselka Bragg & Allen PC
P.O. Box 1269
Round Rock, TX 78680

# EXHIBIT A

Allan L. Reagan, Debtor
Case #20-11161-tmd
*Exhibit A - Financial Projections*

| Total Projected Disposable Income over 5 Years: | $ 3,020,253 |
|---|---|
| **Payments:** | |
| on Effective Date | 1,510,127 |
| on or before September 30, 2021 | 755,063 |
| on or before December 31, 2021 | 755,063 |
| **Total Payments** | $ 3,020,253 |

| | Year 1 | Year 2 | Year 3 | Year 4 | Year 5 | Total |
|---|---|---|---|---|---|---|
| **INCOME** | | | | | | |
| Gross wages | $ 140,000 | $ 142,800 | $ 145,656 | $ 148,569 | $ 151,541 | $ 728,566 |
| Tax withholdings | (24,500) | (24,990) | (25,490) | (26,000) | (26,520) | (127,499) |
| Retirement contributions | (24,000) | (24,000) | (24,000) | (24,000) | (24,000) | (120,000) |
| Healthcare premiums | (6,000) | (6,300) | (6,615) | (6,946) | (7,293) | (33,154) |
| Net wages | 85,500 | 87,510 | 89,551 | 91,624 | 93,728 | 447,913 |
| Dividends and Interest | 108,965 | 110,896 | 110,896 | 110,896 | 202,996 | 644,649 |
| Distributions | 237,383 | 524,481 | 669,844 | 1,197,665 | 807,427 | 3,436,799 |
| Reimbursements | 1,980 | 2,020 | 2,060 | 2,101 | 2,143 | 10,304 |
| **Total Income** | $ 433,829 | $ 724,906 | $ 872,351 | $ 1,402,286 | $ 1,106,294 | $ 4,539,666 |
| **CHAPTER 11 ADMINISTRATIVE EXPENSES** | | | | | | |
| Chapter 11 professionals | | | | | | |
| Subchapter V Trustee | | | | | | |
| Reserve for Federal Income Tax Liability | - | - | - | (290,552) | (212,454) | (503,006) |
| **Total Chapter 11 Administrative Expenses** | $ - | $ - | $ - | $ (290,552) | $ (212,454) | $ (503,006) |
| **LIVING EXPENSES** | | | | | | |
| Medical/Therapy/Prescriptions | (30,000) | (30,600) | (31,212) | (31,836) | (32,473) | (156,121) |
| Food, meals, personal care items, household supplies | (24,000) | (24,480) | (24,970) | (25,469) | (25,978) | (124,897) |
| Car Payments | (24,144) | (24,144) | (24,144) | (24,144) | (24,144) | (120,720) |
| Vehicle Fuel & Operating Expense | (6,000) | (6,120) | (6,242) | (6,367) | (6,495) | (31,224) |
| Tolls | (3,000) | (3,060) | (3,121) | (3,184) | (3,247) | (15,612) |
| Property Taxes | (17,052) | (17,905) | (18,800) | (19,740) | (20,727) | (94,223) |
| Household & pool maintenance, repairs, parts, HOA | (12,528) | (12,779) | (13,034) | (13,295) | (13,561) | (65,196) |
| Lawn services, tree, fencing and irrigation sys. Maintenance | (12,000) | (12,240) | (12,485) | (12,734) | (12,989) | (62,448) |
| Utilities | (11,760) | (11,995) | (12,235) | (12,480) | (12,729) | (61,200) |
| Cell Phones | (7,200) | (7,344) | (7,491) | (7,641) | (7,794) | (37,469) |
| Telephone, internet, cable, streaming services | (7,200) | (7,344) | (7,491) | (7,641) | (7,794) | (37,469) |
| Clothing, laundry, and dry cleaning | (2,820) | (2,876) | (2,934) | (2,993) | (3,052) | (14,675) |
| Property Insurance | (3,900) | (3,978) | (4,058) | (4,139) | (4,221) | (20,296) |
| Life Insurance | (1,800) | (1,836) | (1,873) | (1,910) | (1,948) | (9,367) |
| Car Insurance | (3,000) | (3,060) | (3,121) | (3,184) | (3,247) | (15,612) |
| Entertainment, recreation, hobbies | (6,000) | (6,120) | (6,242) | (6,367) | (6,495) | (31,224) |
| Pet Costs - Food and Vet Bills | (9,600) | (9,792) | (9,988) | (10,188) | (10,391) | (49,959) |
| Gifts | (1,200) | (1,224) | (1,248) | (1,273) | (1,299) | (6,245) |
| Domestic help for spouse | (12,000) | (12,240) | (12,485) | (12,734) | (12,989) | (62,448) |
| **Total Living Expenses** | $ (195,204) | $ (199,137) | $ (203,174) | $ (207,318) | $ (211,574) | $ (1,016,407) |
| **FUNDS AVAILABLE FOR DISTRIBUTION TO CREDITORS** | $ 238,625 | $ 525,770 | $ 669,178 | $ 904,415 | $ 682,266 | $ 3,020,253 |

**Allan L. Reagan, Debtor**
Case #20-11161-tmd
*Financial Projections*

**ROUND ROCK BUSINESS PARK, LP**

| | Year 1 | Year 2 | Year 3 | Year 4 | Year 5 |
|---|---|---|---|---|---|
| Rental Income | $ 1,492,655 | $ 1,507,582 | $ 1,573,413 | $ 1,604,881 | $ 1,636,979 |
| Other Operating Income | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 |
| **Total Income** | **$ 1,495,655** | **$ 1,510,582** | **$ 1,576,413** | **$ 1,607,881** | **$ 1,639,979** |
| Reimburseable Expenses | | | | | |
|   Property Taxes | 339,321 | 356,287 | 374,101 | 392,806 | 412,447 |
|   Insurance | 32,146 | 32,146 | 32,146 | 32,146 | 32,146 |
|   Water | 23,812 | 23,812 | 23,812 | 23,812 | 23,812 |
|   Expense Reimbursement | (355,751) | (371,021) | (399,955) | (417,351) | (435,617) |
| Net Reimburseable Expenses | 39,528 | 41,225 | 30,104 | 31,414 | 32,788 |
| Electricity | 17,514 | 17,514 | 17,514 | 17,514 | 17,514 |
| Repairs & Maintenance | 135,180 | 135,180 | 135,180 | 135,180 | 135,180 |
| SG&A | 39,490 | 39,490 | 39,490 | 39,490 | 39,490 |
| Management Fees | 52,243 | 52,765 | 55,069 | 56,171 | 57,294 |
| Total Operating Expenses | 283,954 | 286,174 | 277,357 | 279,768 | 282,266 |
| **Net Operating Income** | **$ 1,211,701** | **$ 1,224,408** | **$ 1,299,056** | **$ 1,328,113** | **$ 1,357,712** |
| Other Income | (5,000) | (5,000) | (5,000) | (5,000) | (5,000) |
| Depreciation & Amortization | 212,040 | 212,040 | 212,040 | 212,040 | 212,040 |
| Bad Debt Expense | 24,331 | 14,927 | 15,076 | 15,734 | 16,049 |
| Interest Expense | 489,772 | 489,772 | 489,772 | 489,772 | 489,772 |
| **Net Income** | **$ 490,558** | **$ 512,669** | **$ 587,167** | **$ 615,566** | **$ 644,851** |
| *Plus:* | | | | | |
|   Depreciation & Amortization | 212,040 | 212,040 | 212,040 | 212,040 | 212,040 |
|   Bad Debt Expense | 24,331 | 14,927 | 15,076 | 15,734 | 16,049 |
|   Capital Expenditures | (25,000) | (25,000) | (25,000) | (25,000) | (25,000) |
|   Principal Paydown | (272,584) | (272,584) | (272,584) | (272,584) | (272,584) |
| **Operating Cash Flow** | **$ 429,344** | **$ 442,052** | **$ 516,699** | **$ 545,756** | **$ 575,356** |
|   Balance sheet cash reserve | (100,000) | (100,000) | (100,000) | (100,000) | (100,000) |
|   SRP III | (276,000) | - | - | - | - |
|   Reserve for Income Taxes | - | - | - | - | - |
| **Free Cash Flow Available for Distributions** | **$ 53,344** | **$ 342,052** | **$ 416,699** | **$ 445,756** | **$ 475,356** |
| Allan L Reagan (78.63%) | 41,944 | 268,955 | 327,650 | 350,498 | 373,772 |
| APROP (1.00%) | 533 | 3,421 | 4,167 | 4,458 | 4,754 |
| **TOTAL DISTRIBUTONS TO REAGAN COMMUNITY** | **$ 42,478** | **$ 272,376** | **$ 331,817** | **$ 354,956** | **$ 378,526** |

**Allan L. Reagan, Debtor**
Case #20-11161-tmd
*Financial Projections*

SOUTHWESTERN RETAIL PROPERTIES, LP

| | Year 1 | Year 2 | Year 3 | Year 4 | Year 5 |
|---|---|---|---|---|---|
| Rental Income | $ 1,384,064 | $ 1,535,887 | $ 1,694,772 | $ 1,747,734 | $ 1,860,718 |
| Other Operating Income | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 |
| Total Income | $ 1,387,064 | $ 1,538,887 | $ 1,697,772 | $ 1,750,734 | $ 1,863,718 |
| Reimburseable Expenses | | | | | |
| Property Taxes | 497,133 | 512,047 | 527,409 | 543,231 | 559,528 |
| Insurance | 21,185 | 21,185 | 21,185 | 21,185 | 21,185 |
| Water | 57,905 | 57,905 | 57,905 | 57,905 | 57,905 |
| Expense Reimbursement | (403,356) | (443,352) | (485,198) | (513,414) | (542,825) |
| Net Reimburseable Expenses | 172,867 | 147,784 | 121,300 | 108,906 | 95,793 |
| Electricity | 8,995 | 8,995 | 8,995 | 8,995 | 8,995 |
| Repairs & Maintenance | 142,264 | 142,264 | 142,264 | 142,264 | 142,264 |
| Tenant Improvements | - | - | - | - | - |
| CLIKworks Operating Expenses | - | - | - | - | - |
| SG&A | 18,565 | 18,936 | 19,315 | 19,701 | 20,095 |
| Management Fees | 55,363 | 61,435 | 67,791 | 69,909 | 74,429 |
| Total Operating Expenses | 398,053 | 379,415 | 359,665 | 349,776 | 341,576 |
| Net Operating Income | $ 989,010 | $ 1,159,472 | $ 1,338,107 | $ 1,400,958 | $ 1,522,143 |
| Other Income | (5,000) | (5,000) | (5,000) | (5,000) | (5,000) |
| Depreciation & Amortization | 212,040 | 212,040 | 212,040 | 212,040 | 212,040 |
| Bad Debt Expense | 48,223 | 27,681 | 30,718 | 33,895 | 34,955 |
| Interest Expense | 587,591 | 587,591 | 587,591 | 587,591 | 587,591 |
| Net Income | $ 146,157 | $ 337,160 | $ 512,759 | $ 572,432 | $ 692,557 |
| *Plus:* | | | | | |
| Depreciation & Amortization | 212,040 | 212,040 | 212,040 | 212,040 | 212,040 |
| Capital Expenditures | (75,000) | (100,000) | (100,000) | (100,000) | (100,000) |
| Principal Paydown | (315,799) | (315,799) | (315,799) | (315,799) | (315,799) |
| Operating Cash Flow | $ (32,602) | $ 133,401 | $ 309,000 | $ 368,673 | $ 488,798 |
| Balance sheet cash reserve | (50,000) | (50,000) | (50,000) | (50,000) | (50,000) |
| Financing / Other Cash uses | - | - | - | - | - |
| Free Cash Flow Available for Distributions | $ (82,602) | $ 83,401 | $ 259,000 | $ 318,673 | $ 438,798 |
| Allan L Reagan (46.24%) | - | 38,565 | 119,762 | 147,354 | 202,900 |
| Southwestern Retail Properties, GP (1.00%) | - | 834 | 2,590 | 3,187 | 4,388 |
| TOTAL DISTRIBUTONS TO REAGAN COMMUNITY | $ - | $ 39,399 | $ 122,352 | $ 150,541 | $ 207,288 |

Allan L. Reagan, Debtor
Case #20-11161-tmd
*Financial Projections*

### 100 TRINITY LLC

| | Year 1 | Year 2 | Year 3 | Year 4 | Year 5 |
|---|---|---|---|---|---|
| Interest | $ 2,200 | $ - | $ - | $ - | $ - |
| Dividends | 159,214 | 159,214 | 159,214 | 159,214 | 159,214 |
| Notes Receivable | 43,750 | 64,688 | 67,813 | 70,938 | 74,063 |
| **Total Income Available for Distributions** | **$ 205,163** | **$ 223,901** | **$ 227,026** | **$ 230,151** | **$ 233,276** |
| Allan L Reagan (95%) | 194,905 | 212,706 | 215,675 | 218,644 | 221,613 |
| **TOTAL DISTRIBUTONS TO REAGAN COMMUNITY** | **$ 194,905** | **$ 212,706** | **$ 215,675** | **$ 218,644** | **$ 221,613** |

Allan L. Reagan, Debtor
Case #20-11161-tmd
*Financial Projections*

### PRAIRIE POINT ESTATES, INC.

| | Year 1 | Year 2 | Year 3 | Year 4 | Year 5 |
|---|---|---|---|---|---|
| Gross Revenue | $ 270,000 | $ 1,804,400 | $ 1,867,554 | $ 817,773 | $ - |
| Commissions | (10,800) | (72,176) | (74,702) | (32,711) | - |
| **Net Revenue** | **$ 259,200** | **$ 1,732,224** | **$ 1,792,852** | **$ 785,062** | **$ -** |
| Planning, design and approvals | 288,450 | - | - | - | - |
| Hard construction cost (including amenities) | 685,000 | 425,000 | 325,000 | - | - |
| Management and overhead | 139,200 | 104,400 | 34,800 | 17,400 | - |
| Contingency | 100,000 | 60,000 | 20,000 | 13,050 | - |
| Cash Interest | 43,750 | 62,500 | 12,500 | - | - |
| **Total Project Costs** | **$ 1,256,400** | **$ 651,900** | **$ 392,300** | **$ 30,450** | **$ -** |
| **Net Project Cash Flow** | **$ (997,200)** | **$ 1,080,324** | **$ 1,400,552** | **$ 754,612** | **$ -** |
| *Financing Payments* | | | | | |
| First Mortgage (100 Trinity) | 750,000 | (1,000,000) | (250,000) | - | - |
| PIK Note - Principal (Allan Reagan) | - | - | - | (1,175,000) | - |
| PIK Note - Interest (Allan Reagan) | - | - | - | (257,978) | - |
| Equity - Invested Capital (Allan Reagan) | - | - | - | (360,000) | - |
| Equity - Capital Gains (Allan Reagan) | - | - | - | (215,546) | - |
| Equity - Invested Capital (Duane Davis) | - | - | - | (90,000) | - |
| Equity - Capital Gains (Duane Davis) | - | - | - | (118,956) | - |
| **Ending Cash Balance** | **$ 231,992** | **$ 312,316** | **$ 1,462,868** | **$ -** | **$ -** |

# EXHIBIT B

LIQUIDATION ANALYSIS

### A. Introduction

**NOTHING CONTAINED IN THE FOLLOWING LIQUIDATION ANALYSIS IS INTENDED TO BE OR CONSTITUTES A CONCESSION OR ADMISSION OF THE DEBTOR. THE ESTIMATED AMOUNT OF ALLOWED CLAIMS SET FORTH HEREIN SHOULD NOT BE RELIED UPON FOR ANY OTHER PURPOSE, INCLUDING ANY DETERMINATION OF THE VALUE OF ANY DISTRIBUTION TO BE MADE ON ACCOUNT OF ALLOWED CLAIMS UNDER THE PLAN. THE ACTUAL AMOUNT OF ALLOWED CLAIMS IN THESE CASES COULD DIFFER MATERIALLY FROM THE ESTIMATED AMOUNTS SET FORTH IN THE LIQUIDATION ANALYSIS.**

### B. Assumptions

#### a. Methodology & Limitations

**Dependence on Assumptions -** The Liquidation Analysis depends on a number of estimates and assumptions. Although developed and considered reasonable by the Debtor and the Debtor's professionals, the assumptions are inherently subject to significant economic, business, regulatory, public health, and competitive uncertainties and contingencies beyond the control of the Debtor. The Liquidation Analysis is also based on the Debtor's best judgment of how numerous decisions in the liquidation process would be resolved. Accordingly, there can be no assurance that the values reflected in the Liquidation Analysis would be realized if the Debtor is, in fact, to undergo such a liquidation and actual results could vary materially and adversely from those contained herein.

**Conversion Date –** Liquidation Analysis assumes a Conversion Date of March 31, 2021.

**Chapter 7 Liquidation Costs –** The fees and operating expenses incurred during the chapter 7 process are included in the estimate of Chapter 7 Administrative Claims and chapter 7 trustee professional expenses. In addition, there are liquidation costs associated with most of the Debtor's assets. Costs of liquidation are displayed as a reduction to gross liquidation proceeds.

**Division of Community Property –** Liquidation Analysis assumes the net proceeds of community property is divided between the Debtor and his spouse prior to being made available for distribution to the Debtor's creditors. For the avoidance of doubt, all of the Debtor's assets are considered community assets and the amounts listed in the Assets section of the Liquidation Analysis represent the Debtor's 50% interest in community assets.

### C. Notes on the Liquidation Analysis

1. **Cash on Hand:** Estimated cash on hand as of the Conversion Date includes petty cash and cash in the Debtor's bank accounts, less outstanding checks.

2. **Vehicles:** The Debtor and his spouse own two cars and two trailers. Two of the cars, a 2020 Ford F-250 and a 2020 Ford Explorer were both financed by the Debtor and his spouse and are pledged as collateral for associated loans. In this Liquidation Analysis, it is

assumed that the financed vehicles are sold and proceeds utilized to pay off the associated loans first. Given the amount of financing, it is unlikely that the Debtor has any equity in these two cars.

3. **Marketable Securities:** The Debtor has brokerage accounts at Interactive Brokers and Ameriprise that hold various publicly traded equities, mutual funds, and exchange traded funds as well as cash. The Liquidation Analysis assumes a low and high recovery, representing the potential fluctuations in the public equity markets. In the low scenario, the securities are sold at 95% of the closing price as of February 12, 2021. In the high scenario, the securities are sold at 105% of the closing price as of February 12, 2021. Proceeds of the sale of these securities are used to repay the Debtor's margin loan from Interactive Brokers. Remaining funds are then split pursuant to the interest in community property. [Changes included in this amended plan represent fluctuations in market prices of the securities.]

4. **Investments in and related to Flix Entertainment LLC[1]:** The Debtor holds both direct and indirect (through feeder funds) interests in Flix Entertainment LLC a Texas limited liability company and various related entities and affiliates (together "Flix"), and presently serves as its Board Chair and CEO. Doing business as "Flix Brewhouse," through various affiliates and subsidiaries, Texas-based Flix operates ten dine-in cinemas that offer its own craft beers. An eleventh location was indefinitely postponed construction in March. Flix has been hard hit by the COVID-19 pandemic and has largely suspended operations during much of 2020. Although Flix anticipates additional governmental grants through the Save Our Screens program, there is continued uncertainty about future consumer demand for theatrical movies after the pandemic subsides. Flix is in default of all of its debt and lease obligations. Due to uncertainty of future financial performance and the current financial distress of Flix and its various subsidiaries and affiliates, no value has been ascribed to the Debtor's equity interests in Flix in the Liquidation Analysis.

5. **Investments in Texas LLC and LP entities:** The Debtor owns interests in several limited liability companies ("LLCs") and limited partnerships ("LPs") in addition to his direct and indirect investments in Flix Entertainment LLC. In a liquidation, the Trustee would, at most, be entitled to the economic benefits that would flow to a member or partner. Similarly, under Texas law, the exclusive remedy for a creditor of an individual who is a member or partner of an LLC or LP is a charging order against the individual's membership or partnership interest, directing all distributions owed to the individual to be paid to the individual's creditors (i.e. the holder of the charging order).

In the Liquidation Analysis, it is assumed a Chapter 7 trustee is able to obtain a charging order associated with the Debtor's interests or otherwise obtain the benefit of the economic interests (i.e. distributions or rights upon a sale, which for the purposes of this analysis are not materially different than receipts under a charging order) in the following entities after the Conversion Date. With a charging order in place, there are increased incentives for the Debtor, as a manager of the underlying businesses, to reinvest profits into the businesses,

---

[1] Related entities include Woodward Center Inc., FB Capital LLC, Hospitality Investors, Inc., Southwestern Retail Properties II LP, and Southwestern Retail Properties III LP. Debtor believes his equity interests in these entities have no liquidation value.

rather than make distributions to equity. In the Liquidation Analysis, discount rates of 50% and 60% are utilized in the low and high scenario, respectively, to reflect increased uncertainty and risk of that the timing of distributions to members or partners are significantly delayed into the future:

    a. **100 Trinity LLC:** This entity makes opportunistic loans and investments in both public and private securities. With a charging order in place, it is assumed that profits are reinvested in securities yielding 3.0%.

    b. **Round Rock Business Park LP ("RRBP") and ARPROP Inc.:** owner and general partner of Park West Corporate Center, an office campus in Round Rock, Texas. The Liquidation Analysis utilizes the projected cash flows included in the Financial Projections and discount rates of 50% and 60% to reflect the uncertainty that management would reinvest profits rather than distribute profits to equity.

    c. **Southwestern Retail Properties LP and Southwestern Retail Properties GP:** owner and general partner of Sky Ridge Plaza (lots 1 and 5), a 141,000 square-foot retail center in Round Rock, Texas. The Liquidation Analysis utilizes the projected cash flows included in the Financial Projections and discount rates of 50% and 60% to reflect the uncertainty that management would reinvest profits rather than distribute profits to equity.

6. **Equity interest in 3401 Hoteliers LP:** 3401 Hoteliers LP ("Hoteliers") is an entity that operated a Wyndham Garden hotel in Austin, Texas, subject to a ground lease and a first mortgage on the improvements, both of which are in default. Operations of the hotel ceased in October 2020 and a court-appointed receiver now manages the closed hotel and associated real estate. While the underlying asset is subject to a letter of intent for purchase, subject to the ability to assume Hoteliers' loan and cure its defaults, the Debtor does not project that any proceeds will be available for distribution to equity. Hoteliers has substantial unsecured debts, and penalty loan interest is accruing in the interim. Accordingly, no value has been attributed to this asset in the Liquidation Analysis.

7. **Equity interest in Aramcor Inc:** Aramcor Inc. is a management services organization with approximately 10 employees, including Debtor, who provide various accounting, property management and executive services to operating affiliates. Other than receivables from affiliates, the dollar majority of which are from Flix and Hoteliers, both "out of business" either temporarily or permanently, Aramcor's assets are limited to used office furniture and equipment with *de minimus* value. It also has lease liability for its office premises to Southwestern Retail Properties LP. Without its employees and Debtor's continued leadership and executive management services, and without fee-generating affiliates, Aramcor has minimal value. A sale of its used office fixed assets would not likely exceed its lease liability in liquidation. Accordingly, limited value is attributed to the Debtor's equity interest.

8. **Investments in Prairie Point Estates Inc.:** The Debtor holds two investments in Prairie Pointe Estates Inc. ("PPEI"), including an equity investment of $360,000 and $1,175,000 in the form of a subordinated PIK Note originally payable to RRBP and later distributed to Debtor. The only collateral for the PIK Note is a pledge of PPEI's equity interests. PPEI is in the beginning stages of developing approximately 242 acres of raw land into an

equestrian-themed midscale residential acreage subdivision. The Liquidation Analysis assumes development operations are halted and the raw land is sold expeditiously at a price per acre of $5,500 - $6,000 (low and high scenario, respectively). The net proceeds, after paying commissions and other liquidation costs, are then used to repay the first mortgage and then the PIK Note. At the estimated gross proceeds, no value is attributed to the Debtor's equity interest.

9.  **Minority Investments in Third-party Entities:**

   a.  **Nineteen77 Global Arbitrage Ltd:** The Debtor holds an interest in this Cayman Islands-based hedge fund specializing in merger arbitrage. The fund is managed by UBS O'Connor and holds a reported approximately $126 million of assets under management. The fund requires redemption requests be submitted at least 15 days prior to month end, at which time the holdings are liquidated. Proceeds are distributed approximately 30 days following the month end. Included in the Liquidation Analysis is the Debtor's holdings as of December 31, 2020.

   b.  **First Stop Health, LLC:** an online and telephonic health concierge service for individuals and families that combines 24/7 expert advice and diagnosis, unique symptom and condition information, and resource locators to meet its members' minor and major, urgent and chronic, healthcare needs. This company is still in development mode but has seen increased demand for tele-health as a result of the COVID-19 pandemic. While demand of the company's services are strong, there are many competitors, including four large well-known companies. The Debtor's community property has a 1.0195% interest in this entity. Debtor has no control or influence over this entity.

   c.  **Luft Hefe LLC:** the holding company of a popular brew-pub restaurant in Austin, Texas named "North By Northwest." Luft Hefe LLC ceased operations and liquidated in 2020 due to the COVID-19 global pandemic. No value is attributed to the Debtor's interest in this entity in the Liquidation Analysis.

   d.  **Newser LLC:** internet news site whose editors hand-pick the best stories from hundreds of US and international sources and summarize them into sharply written, easy-to-digest news briefs. Revenues have increased significantly, and the company attained profitability on a GAAP basis in 2019. However, in recent quarters growth has stalled. Debtor has no control or influence over this entity.

   e.  **Select Access 2 Liquidation LLC:** This is a "hedge fund of funds" that has been liquidating illiquid investments in its portfolio since the Great Recession. It has very few assets remaining, and Debtor has no control or influence on this entity. The fund operator sends annual statements of assumed value.

10. **Bonds and Notes Receivable**

   a.  **Flix Entertainment Note Receivable:** The Debtor holds a note receivable in the original principal amount of $150,000, with a current balance of $49,174 plus accrued interest. Because of the distressed financial condition of Flix and its uncertain future,

the Debtor's status as an Insider, and the Debtor's subordination of claims against Flix to that of holders of Flix indebtedness guaranteed by Debtor, an assumed liquidation value of $0.04 - $0.08 cents on the dollar was estimated for the Estate's portion of this asset in the Liquidation Analysis.

**b. Series H United States Savings Bond:** Series H savings bonds are redeemable at face value.

11. **Federal Income Tax Refund:** The Coronavirus Aid, Relief, and Economic Security ("CARES") Act, P.L. 116-136, signed into law by President Donald Trump on March 27, 2020, temporarily reinstated allowed carryback periods for Net Operating Losses ("NOLs") generated in tax years 2018, 2019, and 2020. Analysis to calculate or estimate the actual value of the Debtor's tax attributes is dependent on Debtor's ability to engage the CPA firm that prepared his federal tax returns for the past five years. Said CPA firm is currently preparing an engagement letter for this assignment and is also a pre-petition creditor. Based on an oral discussion with the applicable CPA firm partner, Debtor has been advised that the CARES Act carryback when and if prepared, filed and approved by the IRS could result in a refund of as much as an estimated $700,000, limited by the amount of federal taxes paid. The Debtor's Estate would have a 50% interest in any such potential refund as the refund would be community property. For the purposes of the Liquidation Analysis, the Debtor has included a range of $200,000 to $350,000 for the Estate's interest in the refund, which incorporates the estimated cost of a CPA to restate several years of tax returns and the uncertainty in the final allowed NOL carryback amount.

12. **Administrative Expenses**

    **a. Chapter 11 Professionals:** The Debtor has included an estimate of $50,000 to $100,000 for professional fees incurred prior to the Conversion Date.

    **b. Subchapter V Trustee:** The Debtor estimates approximately $10,000 to $20,000 of fees for the Subchapter V Trustee prior to the Conversion Date.

    **c. Chapter 7 Trustee and Professionals:** Chapter 7 Trustee fees are calculated based upon 3% of available funds to distribute to creditors and administrative expenses. Additionally, the Debtor has included an estimate of $50,000 to $150,000 for professionals that would likely need to be retained to assist the Chapter 7 Trustee evaluate and liquidate the Debtor's assets, including the need to pursue a charging order related to the Debtor's interests in various LLCs and LPs.

13. **Claims**

As of this date, a total of 17 proofs of claim totaling $33,774,144.79 in unsecured claims have been filed, most of which consists of purported guaranty liability for post-petition lease acceleration claims. As the Proof of Claim deadline has not passed, it is not possible to state the amount of claims that will be filed. Additionally, the Debtor expects that a number of the claims will be subject to objection and/or estimation.

**Allan L. Reagan, Debtor**
Case #20-11161-tmd
*Liquidation Analysis*
Assumed Conversion on March 31, 2021

| Assets (excluding exempt property): | Notes | Estimated Liquidation Value | |
|---|---|---|---|
| | | Low | High |
| Cash | 1 | $ 155,000 | $ 165,000 |
| Vehicles | 2 | 500 | 2,000 |
| Marketable Securities | 3 | 1,104,000 | 1,257,000 |
| Investments in/related to Flix Entertainment, LLC | 4 | - | - |
| Investments in Texas LLC and LP Entities | | | |
|     100 Trinity LLC | 5a | 57,000 | 92,000 |
|     Round Rock Business Park LP / ARPROP | 5b | 230,000 | 286,000 |
|     Southwestern Retail Properties LP / GP | 5c | 76,000 | 101,000 |
| Investments in 3401 Hoteliers LP | 6 | - | - |
| Investments in Aramcor Inc. | 7 | - | 1,500 |
| Investments in Prairie Pointe Estates, Inc. | | | |
|     PIK Note | 8 | 381,000 | 438,000 |
|     Equity | 8 | - | - |
| Minority Investments in 3rd Party Entities: | | | |
|     1977 Global Merger Arbitrage LLC | 9a | 192,000 | 214,000 |
|     First Stop Health, LLC | 9b | - | 25,000 |
|     Luft Hefe LLC | 9c | - | - |
|     Newser LLC | 9d | - | 10,000 |
|     Select Access 2 Liquidation LLC | 9e | - | 2,500 |
| Bonds / Notes Receivable | | | |
|     Flix Entertainment Note Receivable | 10a | 1,000 | 2,000 |
|     Series H Savings Bond | 10b | 3,000 | 3,000 |
| Tax Refund | 11 | 200,000 | 350,000 |
| Life Insurance Policy | | 11,250 | 11,250 |
| Inherited IRA | | 4,820 | 4,820 |
| **Total Assets** | | **$ 2,415,570** | **$ 2,965,070** |
| | | | |
| ***Administrative Expenses:*** | | | |
| Chapter 11 Professionals | | 50,000 | 75,000 |
| Subchapter V Trustee | | 10,000 | 20,000 |
| Chapter 7 Trustee | | 72,467 | 88,952 |
| Chapter 7 Professionals | | 50,000 | 150,000 |
| Other Administrative Expenses | | 10,000 | 25,000 |
| **Total Administrative Expenses** | | **$ 192,467** | **$ 358,952** |
| | | | |
| **Available for Distribution to Creditors** | | **$ 2,223,103** | **$ 2,606,118** |

## FINANCIAL PROJECTIONS

| PRAIRIE POINTE ESTATES, INC. | Year 1 | Year 2 | Year 3 | Year 4 | Year 5 |
|---|---|---|---|---|---|
| Gross Revenue | $ 270,000 | $ 1,804,400 | $ 1,867,554 | $ 817,773 | $ - |
| Commissions | (10,800) | (72,176) | (74,702) | (32,711) | - |
| **Net Revenue** | **$ 259,200** | **$ 1,732,224** | **$ 1,792,852** | **$ 785,062** | **$ -** |
| | | | | | |
| Planning, design and approvals | 288,450 | - | - | - | - |
| Hard construction cost (including amenities) | 685,000 | 425,000 | 325,000 | - | - |
| Management and overhead | 139,200 | 104,400 | 34,800 | 17,400 | - |
| Contingency | 100,000 | 60,000 | 20,000 | 13,050 | - |
| Cash Interest | 43,750 | 62,500 | 12,500 | - | - |
| **Total Project Costs** | **$ 1,256,400** | **$ 651,900** | **$ 392,300** | **$ 30,450** | **$ -** |
| | | | | | |
| **Net Project Cash Flow** | **$ (997,200)** | **$ 1,080,324** | **$ 1,400,552** | **$ 754,612** | **$ -** |
| *Financing Payments* | | | | | |
| First Mortgage (100 Trinity) | 750,000 | (1,000,000) | (250,000) | - | - |
| PIK Note - Principal (Allan Reagan) | - | - | - | (1,175,000) | - |
| PIK Note - Interest (Allan Reagan)** | - | - | - | (257,978) | - |
| Equity - Invested Capital (Allan Reagan) | - | - | - | (360,000) | - |
| Equity - Capital Gains (Allan Reagan)** | - | - | - | (215,546) | - |
| Equity - Invested Capital (Duane Davis) | - | - | - | (90,000) | - |
| Equity - Capital Gains (Duane Davis) | - | - | - | (118,956) | - |
| **Ending Cash Balance** | **$ 231,992** | **$ 312,316** | **$ 1,462,868** | **$ -** | **$ -** |

*\*\* Included in Funds Available for Distribution to Creditors*

# EXHIBIT C

**Allan L. Reagan, Debtor**
Case #20-11161-tmd
*Exhibit C - Filed and Scheduled Claims\*\**

| Creditor | Proof of Claim # | Proof of Claim Amount | Scheduled Amount | Class | User Class | C/U/D* | Collateral | Nature of Consideration | Objection Pending |
|---|---|---|---|---|---|---|---|---|---|
| Ford Motor Credit Corp. | 17 | $60,782.63 | $60,782.63 | SE | Secured | | Ford Explorer | Automobile loan | |
| Wells Fargo Auto | | | $64,679.34 | SE | Secured | | Ford F-250 | Automobile Loan | |
| Interactive Brokers | | | $1,007,526.69 | SE | Secured | | Investments | Margin Loan | |
| Williamson County Tax Office | 15 | $17,906.94 | | PR | Priority | | | Real Property Tax | |
| 83rd Street Development LLC | 20 | $2,536,460.22 | | GU | Unsecured | C/U | | Guarantee | Docket #110 |
| Ann E. Headley | 6 | $219,495.97 | $210,062.64 | GU | Unsecured | | | Guarantee | |
| Bank of Austin | 9 | $1,795,087.90 | | GU | Unsecured | C | | Guarantee | Docket #113 |
| Bennett Living Trust | | | $91,460.92 | GU | Unsecured | | | Guarantee | |
| Capital One Spark Visa for Business | 8 | $8,956.91 | $8,838.59 | GU | Unsecured | | | Credit Card | |
| Chase Ink Card for Business | 3 | $8,699.17 | $8,343.35 | GU | Unsecured | | | Credit Card | |
| Chase VISA Mileage Plus | 2 | $9,021.09 | $9,034.22 | GU | Unsecured | | | Credit Card | |
| Citicard Aadvantage Mastercard | | | $169.28 | GU | Unsecured | | | Credit Card | |
| Comerica Bank | | | $217,442.28 | GU | Unsecured | C | | Guarantee | |
| Comerica Bank | | | $3,543.70 | GU | Unsecured | | | Credit Card | |
| Comerica Bank | 14 | $5,041,966.78 | $0.00 | GU | Unsecured | C | | Guarantee | Docket #105 |
| Discover Card | 1 | $230.76 | $400.00 | GU | Unsecured | | | Credit Card | |
| DT Chandler LLC | 13 | $15,253,566.52 | | GU | Unsecured | C/U | | Guarantee | Docket #107 |
| Frances and Wayne Lee | | | $9,142.40 | GU | Unsecured | | | Guarantee | |
| Gary J. Neumayer | 4 | $36,569.57 | $36,569.57 | GU | Unsecured | | | Guarantee | |
| Headley Investments LP | 7 | $27,357.57 | $27,438.28 | GU | Unsecured | | | Guarantee | |
| Kathleen R. McCormick | | | $17,948.39 | GU | Unsecured | | | Guarantee | |
| Lone Star National Bank | 19 | $9,918,969.31 | | GU | Unsecured | C | | Guarantee | Docket #114 |
| Madison/East Towne LLC | 12 | $426,750.00 | $426,750.00 | GU | Unsecured | C/U/D | | Guarantee | |
| Martin S. Headley | 5 | $291,407.05 | $292,179.14 | GU | Unsecured | | | Guarantee | |
| Merle Hay Investors LLC | 21 | $361,556.12 | $0.00 | GU | Unsecured | C/U | | Guarantee | |
| Mikeska Monahan & Peckham, P.C. | | | $9,535.00 | GU | Unsecured | | | Services | |
| ROP Artcraft LLC | 11 | $3,750,801.80 | $0.00 | GU | Unsecured | C/U | | Guarantee | Docket #108 |
| RPT Realty, L.P. | | | $15,518.66 | GU | Unsecured | C/U | | Guarantee | |
| Spain Family IX LLC | | | $91,460.93 | GU | Unsecured | | | Guarantee | |
| UBS Real Estate Securities Inc. | 18 | $13,617,453.28 | | GU | Unsecured | C/U | | Guarantee | Docket #115 |
| Village @ La Orilla | 10 | $6,617,549.79 | $392,970.75 | GU | Unsecured | C/U/D | | Guarantee | Docket #106 |
| Wyndham Franchisor LLC | 16 | $207,994.34 | $199,437.44 | GU | Unsecured | | | Franchise agreement | |
| **TOTAL** | | **$60,208,583.72** | **$3,201,234.20** | | | | | | |

*SCHEDULED AS UNKNOWN/$0 AND DID NOT FILE PROOF OF CLAIM*

| Creditor | Proof of Claim # | Proof of Claim Amount | Scheduled Amount | Class | User Class | C/U/D* | Collateral | Nature of Consideration | Objection Pending |
|---|---|---|---|---|---|---|---|---|---|
| Action Propane | | | | GU | Unsecured | | | Services | |
| ADT | | | | GU | Unsecured | | | Services | |
| Al Clawson Disposal | | | | GU | Unsecured | | | Services | |
| AT&T | | | | GU | Unsecured | | | Services | |
| AT&T(DirecTV) | | | | GU | Unsecured | | | Services | |
| Comerica Bank | | | | GU | Unsecured | C | | Guarantee | |
| Comerica Bank | | | $0.00 | GU | Unsecured | C | | Guarantee | |
| Flix Brewhouse Texas IV, LLC | | | | GU | Unsecured | C/U | | Guarantee | |
| GCRE/TX Main Marketplace LLC | | | | GU | Unsecured | C/U | | Guarantee | |
| Lone Star National Bank | | | | GU | Unsecured | C | | Guarantee | |
| Pedernales Electric Company | | | | GU | Unsecured | | | Utilities | |
| Poolwerx by Blue Bottom Pool Supply | | | | GU | Unsecured | | | Services | |
| Prudential Mortgage Capital Company LLC | | | | GU | Unsecured | C/U | | Guarantee | |
| Securian/Minnesota Life Insurance Co. | | | | GU | Unsecured | C/U | | Guarantee | |
| Southwestern Retail Properties II L.P. | | | | GU | Unsecured | C/U | | Guarantee | |
| Spectrum | | | | GU | Unsecured | | | Services | |

*\* C = Contingent, U = Unliquidated, D = Disputed*

*\*\*The Objections listed above are non-exclusive, and the lack of an Objection as of this date does not constitute an admission that the Claim is not subject to Objection*